IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WILLIAM LYON HOMES, *et al.*,[1] | ) | Case No. 11-14019 (____) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### MOTION OF THE DEBTORS FOR ORDER: (A) SCHEDULING COMBINED HEARING TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT AND PREPACKAGED PLAN; (B) ESTABLISHING DEADLINES AND PROCEDURES TO OBJECT TO SAME; (C) APPROVING SOLICITATION PROCEDURES AND SOLICITATION PACKAGE; (D) APPROVING FORM AND MANNER OF NOTICE OF PLAN CONFIRMATION HEARING COMMENCEMENT OF CASES; AND (E) GRANTING RELATED RELIEF

William Lyon Homes, a Delaware corporation ("DE Lyon"), and its affiliated debtors and

debtors in possession (collectively, the "Debtors" or the "Company") file this motion (the

"Motion") for entry of an order to: (i) schedule a combined hearing (the "Confirmation

Hearing") to consider approval of: (a) the *Disclosure Statement For The Prepackaged Joint Plan*

*Of Reorganization For William Lyon Homes, et al.* (the "Disclosure Statement")[2] and (b) the

*Prepackaged Joint Chapter 11 Plan of Reorganization for William Lyon Homes, et al.* (the

"Plan"), (ii) establish deadlines and procedures to object to the same; (iii) approve the prepetition

---

[1] The debtors and debtors in possession in these cases and the last four digits of their respective taxpayer identification numbers are as follows: William Lyon Homes (4902); William Lyon Homes, Inc., (3855); Mountain Falls Golf Course, LLC (3291); Mountain Falls, LLC (9631); Circle G at the Church Farm North Joint Venture, LLC (1322); Presley CMR, Inc. (3862); William Lyon Southwest, Inc. (8474); Sycamore CC, Inc. (1307); PH-LP Ventures (9119); PH Ventures – San Jose (5089); HSP, Inc. (6045); PH Rielly Ventures (7710); Lyon Waterfront, LLC (1928); Lyon East Garrison Company I, LLC (5692); WLH Enterprises (3333); Duxford Financial, Inc. (0824); California Equity Funding, Inc. (0016); Laguna Big Horn, LLC (2590); Presley Homes (5035); Cerro Plata Associates, LLC (5090); Whitney Ranch Village 5, LLC (5256); and Duxford Insurance Services, LLC (8232). The Debtors' mailing address is 4490 Von Karman Avenue, Newport Beach, CA 92660.

[2] A copy of the Disclosure Statement and Plan have been filed contemporaneously herewith on the Court's docket. Any capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan.

solicitation procedures (the "Solicitation Procedures") and Solicitation Package (as defined below), including the Ballots and a solicitation letter; (iv) approve the form and manner of notice of the confirmation hearing on the Plan and the commencement of these chapter 11 cases (the "Confirmation Hearing Notice"); and (vi) grant any related relief.  In support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief requested herein are sections 105(a), 502, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 3003, 3016, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3017-1 of the Local Rules (the "Local Rules") for the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

## Background

### A.      General Background

3.      On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have requested joint administration of the above captioned cases.

4.     The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     No request has been made for the appointment of a trustee or an examiner in this case, and no official committee has yet been appointed by the Office of the United States Trustee.

6.     The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, are set forth in detail in the *Declaration of Matthew R. Zaist, Executive Vice President of William Lyon Homes, in Support of First Day Motions* (the "Zaist Declaration") filed concurrently herewith and incorporated herein by reference. The Debtors are homebuilders with operations in Northern and Southern California, Arizona and Nevada.

7.     On the Petition Date, the Debtors filed the *Prepackaged Joint Plan of Reorganization for William Lyon Homes, et al.* dated November 17, 2011 (the "Plan") and related disclosure statement (the "Disclosure Statement"). The Plan represents a significant milestone for the Company and embodies the agreement reached with their major debt holders. If confirmed, the Plan will reduce the Company's leverage by approximately $182 million in funded note indebtedness, restructure the Company's primary secured credit facility, and provide for new equity capital investments of $85 million in the aggregate. Based on a prepetition solicitation of the Plan, the Plan has been overwhelmingly approved by those voting classes of creditors who are impaired under the Plan – (i) the Prepetition Secured Term Loan Agreement;

3

and (ii) the Old Notes. Significantly, other than the holders of Prepetition Secured Term Loan

Agreement Claims, Old Notes Claims, and equity holders of DE Lyon (whose interests are being

cancelled), the Plan provides for the Debtors' remaining creditors to be unimpaired, which may

not have been possible absent the agreements reached under the Plan. The Plan will allow the

Company to improve its liquidity position from its operations and be well-positioned going

forward.

**B.**     **Significant Prepetition Indebtedness**

8.       As of September 30, 2011, the majority of the Debtors' outstanding funded

indebtedness was on account of: (i) $206 million of secured indebtedness owing to their

prepetition secured lenders under their Prepetition Secured Loan Agreement (discussed below);

and (ii) $283.2 million of unsecured indebtedness on account of three series of note issuances

(the "Old Notes").

**a.        The Prepetition Secured Loan**

9.       William Lyon Homes, Inc., a California corporation, ("CA Lyon") is a borrower

under the Senior Secured Term Loan Agreement, dated October 20, 2009, as amended from time

to time (the "Prepetition Secured Loan Agreement"), by and among CA Lyon, ColFin WLH

Funding, LLC, as Administrative Agent, Initial Lender and Lead Arranger (in such capacity, the

"Administrative Agent"), and the other lenders party thereto (the "Prepetition Secured Lenders").

10.       The Prepetition Secured Loan Agreement governs a secured term loan in the

aggregate principal amount of $206,000,000, bearing interest at 14% per annum, payable

monthly. Immediately prior to the Petition Date, the scheduled maturity date for the Prepetition

Secured Loans was October 20, 2014 and the outstanding principal amount was $206,000,000. Based on such outstanding balance of the Prepetition Secured Loan, interest payments were approximately $28.8 million annually.

11.    DE Lyon guaranteed absolutely, irrevocably and unconditionally, as a guarantee of payment and not merely of collection, prompt payment in full when due, whether at stated maturity, of any and all Obligations upon acceleration or otherwise, amounts due under the Prepetition Secured Loan Agreement.

### b.    The Old Notes

12.    Also prior to the Petition Date, CA Lyon issued three series of unsecured notes prepetition (the "Old Notes"). The first series was issued in an aggregate principal amount of $150 million in 2004, bears a 7 ⅝% interest rate, and is due on December 15, 2012 (the "7 ⅝% Senior Notes"); the second was issued in an aggregate principal amount of $250 million in 2003, bears a 10 ¾% interest rate, and is due on April 1, 2013 (the "10 ¾% Senior Notes"); the third was issued in an aggregate principal amount of $150 million in 2004, bears a 7 ½% interest rate, and is due on February 15, 2014 (the "7 ½% Senior Notes" and, together with the 7 ⅝% Senior Notes and the 10 ¾% Senior Notes, the "Old Notes"). Interest on the Old Notes is payable semi-annually.

13.    The Old Notes are unconditionally guaranteed on a senior unsecured basis by the following Debtors (the "Prepetition Guarantors"): DE Lyon; California Equity Funding, Inc.; PH-LP Ventures; Duxford Financial, Inc.; Sycamore CC, Inc.; Presley CMR, Inc.; William Lyon Southwest, Inc.; PH-Reilly Ventures; HSP, Inc.; PH Ventures-San Jose; WLH Enterprises,

formerly Carmel Mountain Ranch; Lyon Waterfront, LLC; and Lyon East Garrison Company I, LLC.

14.    As a result of previous redemptions in 2010, the 7 ⅝% Senior Notes have a current outstanding balance of approximately $66.7 million; the 10 ¾% Senior Notes, approximately $138.7 million; and the 7 ½% Senior Notes, approximately $77.8 million.  Each of the series of Old Notes is governed by an indenture (each, a "Prepetition Indenture," and collectively, the "Prepetition Indentures") by and among CA Lyon as issuer, DE Lyon and the other Prepetition Guarantors, and U.S. Bank National Association, as Trustee (the "Prepetition Indenture Trustee").  The Old Notes now have an aggregate outstanding amount of $283.2 million in principal and approximately $299.5 million in the aggregate after including interest and fees.  The outstanding balance of the Old Notes per the Company's financial statements changes monthly due to the amortization of Original Interest Discount on account of the 10 ¾% Senior Notes.

15.    In early 2011, an ad hoc group of entities holding Old Notes (the "Ad Hoc Noteholders Group") was formed.  As of November 10, 2011, the members of the Ad Hoc Noteholders Group who are parties to the Noteholders RSA hold an aggregate of approximately 63.5% in principal of the Old Notes.

C.    **The Prepetition Restructuring**

16.    After several weeks of active and arm's-length negotiations, the Debtors, in consultation with their advisors, reached prepetition agreements in principle with their Prepetition Secured Lenders and the Ad Hoc Noteholders Group holding 63.5% in principal

amount of the holders of claims arising from the Old Notes (the "Old Notes Claims"), on a prepackaged restructuring plan, including the key terms of the restructured Prepetition Secured Loan Agreement, distributions under the Plan to holders of Old Notes Claims, and the treatment of general unsecured claims.

17.    As of September 30, 2011, the Debtors had outstanding total funded indebtedness in the principal amount of approximately $509.8 million.  Upon emergence from chapter 11, pursuant to the Plan, the Debtors expect to reduce such debt to approximately $327.8 million. Accordingly, the Reorganized Debtors will have an improved balance sheet and more appropriate capital structure.  In addition to the reduction of indebtedness of the Debtors upon emergence from chapter 11, the Debtors also expect to benefit from an annual decrease in cash interest obligations of approximately $24.6 million, comprised of $19.9 million annual reduction associated with the conversion to equity of a portion of the Old Notes and $4.7 million annual reduction resulting from the reduction in interest rate from 14% under the Prepetition Secured Loan Agreement to 10¼% under the Restructured First Lien Loan Agreement.

18.    Other than the Holders of Old Notes and the Prepetition Secured Loan Agreement Claims whose claims are the subject of the proposed restructuring under the Plan, and old equity, whose interests are being cancelled under the Plan, all of the Debtors' other creditors, including general unsecured creditors, are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and deemed to vote in favor of the Plan pursuant to section 1126(f) of the Bankruptcy Code.

19.    The Company believes that the prepackaged restructuring Plan is the best restructuring alternative reasonably available to the Company.  In order to effect the provisions of the Plan, the Company has succeeded in securing commitments for new equity capital investments aggregating $85 million, in two separate private placements:  (a) a commitment to backstop the entire proposed Rights Offering in the amount of $60 million in cash on the terms set forth in the Backstop Commitment Agreement should the Rights Offering not otherwise by fully subscribed, and (b) an additional commitment for $25 million pursuant to Class B Common Stock Purchase Commitment Agreement, in the form of cash or a combination of cash and membership interests in certain limited liability companies that hold real property, to be provided by the Company's current equity owners.  The Company plans to utilize the proceeds of these investments to fund its working capital requirements, and to make certain distributions under the Plan.  After extensive efforts to seek new equity capital, the Company believes that the Rights Offering (inclusive of the Backstop Commitment Agreement) and the Class B Common Stock Commitment Agreement represent the best terms for equity financing available to the Company in this market.

20.    The Plan represents a significant achievement for the Company and should greatly enhance the Company's ability to reorganize successfully and expeditiously through the addition of $85 million of new equity capital pursuant to the Rights Offering and Class B Common Stock Purchase Commitment Agreement.  The Plan will also provide an efficient restructuring through the prepackaged process, designed to minimize disruption to the Company's business endeavors, stabilize the Company's balance sheet, and provide a platform

for future success.  Through confirmation of the Plan implementing the terms of the pre-packaged restructuring, the Company will restructure and substantially deleverage its balance sheet; reduce its cash interest expense to a level that is aligned with its expected future cash flows; retain additional flexibility to invest in growth initiatives to maximize enterprise value; and maintain favorable pricing to the Company under the Prepetition Secured Loan Agreement. The Company also will improve its liquidity position.  For all of these reasons and the proposed DIP financing (described in greater detail in the Zaist Declaration and the concurrently filed motion for DIP financing), the Company believes that it will have sufficient liquidity during the course of the Chapter 11 Cases and will be well-positioned going forward.

**D.**     **Solicitation of the Prepackaged Plan**

21.     Prior to the Petition Date, beginning on November 17, 2011 through December 16, 2011, the Debtors solicited votes to accept or reject the Plan (the "Solicitation").  All claim holders entitled to vote under the Plan (i.e., Class 4 – Prepetition Secured Loan Agreement Claims and Class 7 – Old Notes Claims) (the "Voting Classes") voted overwhelmingly to accept the Plan, thus satisfying the statutory percentages specified in section 1126(c) of the Bankruptcy Code.

22.     The Solicitation Packages, including the ballots on the Plan, were distributed by the Debtors' voting and solicitation agent, Kurtzman Carson Consultants LLC ("KCC") on November 17, 2011 to those holders of Claims in the Voting Classes.  The Voting Deadline was established as December 16, 2011, or 29 days from the start of the Solicitation period.  Votes received by the Voting Deadline that complied with the voting instructions were then tabulated

9

by KCC.  A more detailed declaration of the voting tabulation is set forth in the *Declaration of Peter Walsh of Kurtzman Carson Consultants LLC Regarding the Mailing, Voting and Tabulation of Ballots Accepting and Rejecting Prepackaged Joint Chapter 11 Plan of Reorganization for William Lyon Homes, et al.* (the "Voting Declaration"), filed concurrently herewith.

## Relief Requested

23.     By this Motion, the Debtors respectfully request entry of an order (the "Scheduling Order"):  (i) scheduling the Confirmation Hearing to consider approval of the Disclosure Statement and Plan, (ii) establishing deadlines and procedures to object to the same; (iii) approving the Solicitation Procedures and the Solicitation Package; and (iv) approving the form and manner notice of the Confirmation Hearing Notice.

24.     Under the related Plan agreements, the Debtors are required to conclude the Confirmation Hearing no later than the 58th day after the Petition Date, contingent upon timely approval of the *Motion for Order Approving Certain Rights Offering Procedures and Forms in Connection Therewith* (the "Rights Offering Approval Order"), filed concurrently herewith. Below is a table highlighting the dates relevant to the proposed confirmation timeline and related deadlines under which the Debtors would propose to hold the Confirmation Hearing on the 56th day after the Petition Date.  The Debtors believe that this timeline will allow them to complete their Rights Offering and provide 38 days' notice of the Confirmation Hearing based on a requested outside noticing date of January 6, 2012:

| PROPOSED TIMETABLE | |
|---|---|
| Record Date for Voting on Plan | November 10, 2011 |
| Commencement of Solicitation | November 17, 2011 |
| Voting Deadline | December 16, 2011 at 5:00 p.m. Eastern Time |
| Petition Date | December 19, 2011 |
| Completion of Mailing of Confirmation Hearing Notice | January 6, 2012 |
| Publication Deadline | January 13, 2012 |
| Objection Deadline and Deadline to File Plan Supplement | February 3, 2012 |
| Reply Deadline and Deadline to File Confirmation Brief | February 9, 2012 |
| Requested Disclosure Statement and Confirmation Hearing | February 13, 2012 |

**Basis for Relief**

25.     As described above, prior to the Petition Date, the Debtors solicited votes on the

Plan from Class 4 (Prepetition Secured Loan Agreement) and Class 7 (Old Notes), the only

Voting Classes of creditors entitled to vote under the Plan.  The Plan was overwhelmingly

accepted by the Voting Classes.  As discussed in the Voting Declaration, 100% of creditors in

Class 4 who voted on the Plan cast votes to accept the Plan and 93.5% in number and 97.2% in

amount of creditors in Class 7 who voted on the Plan cast votes to accept the Plan.  All holders

of claims or interests in non-voting classes did not need to be solicited because either:  (a) such

holders are unimpaired under the Plan and are conclusively presumed to accept the Plan pursuant

to Bankruptcy Code section 1126(f); or (b) such holders will not receive any distribution under

the Plan and conclusively presumed to reject the Plan pursuant to Bankruptcy Code section

1126(g).  Consequently, the Debtors respectfully submit that no additional solicitation is

required.

**B.      Scheduling the Confirmation Hearing and Setting Plan Objection Deadline**

26.      Pursuant to Bankruptcy Code sections 1128(a) and 105(d)(2)(B)(vi), the Debtors

request that the Court set a hearing to consider confirmation of the Plan.  The Debtors have

successfully solicited the acceptance of the Plan in accordance with Bankruptcy Code section

1126(c) from the Voting Classes as reflected in the Voting Declaration, filed contemporaneously

herewith.  As a result, the Debtors request a single combined hearing (i.e., the Confirmation

Hearing), to seek the Court's approval of the Disclosure Statement and confirmation of the Plan.

*See* 11 U.S.C. § 1128(a) (providing that, after notice, the Court shall hold a hearing on

confirmation); 11 U.S.C. § 105(d)(2)(B)(vi) (authorizing the Court to combine hearing on

approval of the Disclosure Statement with the Confirmation Hearing).

27.      The Debtors respectfully request that the Court (a) set the Confirmation Hearing

at a time convenient for the Court, but preferably on February 13, 2012, and (b) set February 3,

2012 at 4:00 p.m. (prevailing Eastern Time), or 10 days prior to the proposed Confirmation

Hearing, as the time by which any objections to the Plan must be filed (the "Objection

Deadline").  Setting the Objection Deadline on February 3, 2012 will provide parties in interest

with 28 days' notice of the Objection Deadline pursuant to Bankruptcy Rule 2002.  The Debtors

further request that the Court set February 9, 2012 at 4:00 pm. (prevailing Eastern Time) as the

deadline for the Debtors to file a reply to any objections should they elect to do so and to file any

brief in support of confirmation of the Plan.

C.    **Approval of Form and Manner of Notice of Confirmation Hearing and Case
      Commencement**

28.    The Debtors request approval of the notice of the Case Commencement and

Confirmation Hearing substantially in the form of Exhibit A annexed hereto (the "Confirmation

Hearing Notice").

29.    The Debtors propose to set November 10, 2011 as the record date for purposes of

determining which holders of claims were entitled to vote to accept or reject the Plan for

purposes of serving the Confirmation Hearing Notice.  Pursuant to Bankruptcy Rules 2002 and

3017(d), the Confirmation Hearing Notice contains: (a) the date of the commencement of these

chapter 11 cases, (b) notice of implementation of the automatic stay pursuant to section 362 of

the Bankruptcy Code, (c) the date of the Confirmation Hearing; (d) a brief summary of the Plan;

(e) the date and time the Objection Deadline and the procedures for objecting to the Disclosure

Statement and the Plan, and (f) directions on how to obtain copies of those documents upon

request by any parties in interest, including the Voting Agent's website where parties may

download the Plan and Disclosure Statement free of charge.

30.    The Confirmation Hearing Notice will be served upon:  (a) the Office of the

United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the Debtors' known

creditors on their creditor matrix, including, among others, all of their trade creditors, taxing

authorities, any governmental authority with whom the company conducts business, bonding

companies, banks, UCC-1 lien holders, other secured creditors, litigants, counterparties to

contracts; (c) counsel to holders of claims under the Prepetition Secured Loan Agreement; (d)

counsel to holders of Ad Hoc Noteholders Group; (e) counsel to the Indenture Trustee for the

13

Old Notes; (f) counsel to the Backstop Investors; (g) the Securities and Exchange Commission; (h) the Internal Revenue Service; (i) counsel to the holders of equity interest; and (j) any part requesting special notice pursuant to Bankruptcy Rule 2002.  Notwithstanding the foregoing, the Debtors request authority to not serve their homeowners with the Confirmation Hearing Notice to avoid undue confusion amongst their homeowners given the unimpaired nature of their claims and for the reasons more fully set forth in the *Motion for Entry of Order (a) Providing Extension of Time to File Schedules and Statements of Financial Affairs; (b) Waiver of Requirement to File Same if Plan Becomes Effective Prior to Expiration of Such Extension; (c) Waiver of Requirement to Convene Section 341(a) Meeting of Creditors if Plan Becomes Effective Prior to Expiration of Such Extension; and (d) Limiting Notices Required under Rule 2002 to be Provided in These Cases.*

31.     In addition, Bankruptcy Rule 2002(l) permits the Bankruptcy Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement notice." Fed. R. Bankr. P. 2002(l).  The Debtors seek authority to publish the Confirmation Hearing Notice in the national edition of <u>USA Today</u>, or a similar nationally circulated publication by January 13, 2012.  In addition, the Confirmation Hearing Notice will be available on the Voting Agent's website at www.kccllc.net/lyonhomes.

**D.      Procedures for Filing Objections to the Disclosure Statement and Confirmation of the Plan**

32.     The Debtors request that the Court direct the manner in which objections to confirmation of the Plan (including objections to the Disclosure Statement), if any, must be made.

33.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).  The Debtors request that the Court direct that all objections to the Plan be filed by the Objection Deadline as provided herein (unless otherwise agreed to by the Debtors in their sole discretion). Assuming that the Debtors' proposed timeline is approved and the Rights Offering Approval Order is approved before January 6, 2012, the Debtors' proposed schedule would provide entities 28 days' notice of the Objection Deadline, which is the time period required under Bankruptcy Rule 2002(b), and 36 days' notice of the Confirmation Hearing date.

34.     In addition, the Debtors request that the Court require that objections to the Disclosure Statement and confirmation of the Plan or proposed modifications to the Plan, if any, must:

(i)     be in writing;

(ii)    comply with the Bankruptcy Rules and the Local Rules;

(iii)   state the name and address of the objecting party and the amount and nature of the claim or equity interest beneficially owned by such entity;

(iv)    state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objection;

(v)     be filed with the Clerk of the Court with proof of service thereof and served upon:  (i) counsel for the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel for the Prepetition Secured Lenders and proposed DIP Lender; (iv) counsel for the Ad Hoc Noteholders Group; (v) counsel for the Backstop Investors; (vi) counsel for the Indenture Trustee; (vii) counsel for any statutory committee appointed in these cases; and (viii) those parties who have a filed a request for special notice in these Chapter 11 Cases.

35.    The Debtors believe that the proposed timing for filing and service of objections and proposed modifications, if any, will afford the Court, the Debtors and other parties-in-interest sufficient time to consider objections and proposed modifications, if any, prior to the Confirmation Hearing.

**E.    Approval of Solicitation Procedures**

36.    As described herein, by the Solicitation, the Debtors distributed the Disclosure Statement and solicited approval of the Plan prior to the commencement of the Cases. Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for the purpose of soliciting their votes to accept or reject a plan of reorganization.  Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by Bankruptcy Rule 3017(d) to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of such procedures and enter such orders as the court deems appropriate."  As set forth herein, the Solicitation Procedures are in compliance with the Bankruptcy Rules and the Bankruptcy Code.

**a.    Record Date**

37.    Bankruptcy Rule 3018(b) provides that the "holders of record of the applicable security" in the Debtors entitled to receive ballots and the related solicitation materials are determined "on the date specified in the solicitation."  The Solicitation Package (as defined herein) clearly identified November 10, 2011 as the record date (the "Record Date") for determining which holders of claims and equity interests were entitled to vote to accept or reject

the Plan. Accordingly, the Debtors' designation of the Record Date conforms to the appropriate

Bankruptcy Rules.

       **b.**     **Approval of Voting Deadline**

38.     Bankruptcy Rule 3018(b) provides that prepetition acceptances or rejections of a

plan are valid only if the plan was transmitted to substantially all the holders of claims or equity

interests in each solicited class and the time for voting was not unreasonably short. The Debtors

commenced the Solicitation of votes for approval of the Plan on November 17, 2011. The

Debtors established December 16, 2011 at 5:00 p.m. eastern as the deadline to submit ballots to

accept or reject the Plan (the "Voting Deadline") or 29 days from November 17, 2011. The

Ballots (as defined herein) stated in clear and conspicuous language that all Ballots must be

properly executed, completed, and delivered to the Voting Agent (or Nominee, as applicable), so

that they were actually received no later than the Voting Deadline.

39.     The Debtors respectfully submit that each holder of a claim entitled to vote to

accept or reject the Plan, i.e., holders of claims in Classes 4 and 7, had adequate time to consider

the Plan and Disclosure Statement. In addition, the Plan and Disclosure Statement were subject

to extensive review and comment by the respective counsel to the holders of Prepetition Secured

Loan Agreement Claims and the Ad Hoc Noteholders Group holding 63.5% in principal amount

of the Old Notes during the course of arm's length negotiations with the Debtors. Therefore, the

Debtors submit that the voting period provided by the Solicitation Procedures was reasonable

and sufficient under the facts and circumstances of the Cases and should be approved.

**F.    Approval of Solicitation Package and Transmittal**

40.    The Debtors caused a solicitation package (the "Solicitation Package") containing

the Disclosure Statement, the Plan (attached as Exhibit A to the Disclosure Statement), Ballots

(as defined herein), a cover letter, and a pre-addressed return envelope, to be transmitted to

holders of the Voting Class claims on November 17, 2011.

41.    Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which

substantially conforms to Official Form No. 14, only to "creditors and equity security holders

entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtors distributed to creditors, as

applicable, the ballots or master ballots in the form of Exhibit B annexed hereto (the "Ballots").

The form for the Ballot is based on Official Form No. 14, but has been modified to address the

particular circumstances of the cases and to include certain additional information that the

Debtors believe to be relevant and appropriate to the Voting Classes to vote to accept or reject

the Plan. *See* Fed. R. Bankr. P. 3017(d).

42.    The Solicitation Package was transmitted by the Debtors to the Voting Agent

who, in turn, forwarded sufficient copies of the Solicitation Package by courier, overnight

courier and electronic mail to the record holder, brokers, dealers, commercial banks, trust

companies or other nominee (each, a "Nominee") of the Voting Class claims on November 17,

2011. Such Nominees, or their agent, were instructed to forward the Solicitation Package to each

underlying holder of claims in the Voting Classes as of the record date. Holders were instructed

to return their Ballots pursuant to the voting instructions contained in the Ballots. All of the

other holders of claims or equity interests were not provided with a Solicitation Package because

either: (a) such holders are unimpaired under the Plan and are conclusively presumed to accept

18

the Plan pursuant to Bankruptcy Code section 1126(f); or (b) such holders will not receive any

distribution under the Plan and conclusively presumed to reject the Plan pursuant to Bankruptcy

Code section 1126(g).

**G.     Notice of Non-Voting Status**

43.     Classes 1 (Priority Claims), 2 (Other Secured Claims), 3 (Secured Tax Claims), 5

(Project Loan Claims), 6 (General Unsecured Claims), 8 (Intercompany Claims), and 10 (Equity

Interest in Subsidiaries) are unimpaired under the Plan and therefore are deemed to have

accepted the plan under section 1126(f) of the Bankruptcy Code.  Class 9 (Parent Equity

Interests) will receive no distributions under the Plan and therefore is deemed to reject the Plan

under section 1126(g) of the Bankruptcy Code.  Therefore, the Debtors request that they not be

required to solicit the foregoing Classes (the "Non-Voting Classes") and no ballots have been

proposed for, or sent to, Holders of Claims or Interests in these classes.

44.     Bankruptcy Rule 3017(d) provides, in relevant part, as follows:

> If the court orders that the disclosure statement and the plan or a
> summary of the plan shall not be mailed to any unimpaired class,
> notice that the class is designated in the plan as unimpaired and
> notice of the name and address of the person from whom the plan
> or summary of the plan and disclosure statement may be obtained
> upon request and at the plan proponent's expense, shall be mailed
> to members of the unimpaired class together with the notice of the
> time fixed for filing objections to and the hearing on confirmation.

Fed. R. Bankr. P. 3017(d).  The Debtors request approval to serve a Notice of Non-Voting Status

to those Holders of Claims in the Non-Voting Classes in the form attached hereto as Exhibit C.

This notice will also contain all of the same information contained in the Confirmation Hearing

Notice and will also advise Holders of Claims in the Non-Voting Classes of their non-voting

status.

**H.    Approval of Procedures for Vote Tabulation**

45.    The Debtors respectfully request that the Bankruptcy Court approve the voting

and tabulation procedures described herein in accordance with Bankruptcy Code § 1126(c) and

Bankruptcy Rule 3018(a).

46.    Bankruptcy Code § 1126(c) provides:

> A class of claims has accepted a plan if such plan has been
> accepted by creditors, other than any entity designated under
> subsection (e) of this section, that hold at least two thirds in
> amount and more than one half in number of the allowed claims of
> such class held by creditors, other than any entity designated under
> subsection (e) of this section, that have accepted or rejected such
> plan.

11 U.S.C. § 1126(c).  Further, Bankruptcy Rule 3018(a) provides that the "court after notice and

hearing may temporarily allow [a] claim or interest in an amount which the court deems proper

for the purpose of accepting or rejecting a plan."  Fed. R. Bankr. P. 3018(a).

47.    The Debtors request that the Court approve the vote tabulation methodology as

more fully set forth in the voting instructions on the Ballots utilized by the Debtors.  The Debtors

did not count or consider for any purpose in determining whether the Plan has been accepted or

rejected the following Ballots:  (a) any Ballot that is received after the Voting Deadline; (b) any

Ballot that is illegible or contains insufficient information to permit the identification of the

Holder; (c) any Ballot cast by a Person or Entity that does not hold a Claim or Interest in a Class

that is entitled to vote on the Plan; (d) any unsigned Ballot; (e) any Ballot not marked to accept

or reject the Plan, or marked both to accept and reject the Plan; (f) any Ballot that was not

accompanied by an original signature; and (g) any Ballot submitted by a party not entitled to cast

a vote with respect to the Plan. A summary of the Ballots received and tabulated pursuant to the

above methodology is more fully set forth in the Voting Declaration.

48.     The foregoing Solicitation Procedures or those substantially similar have been

approved in other prepackaged chapter 11 cases in this district and others. *See, e.g., In re PTL*

*Holdings LLC*, Case No. 11-12676 (Bankr. D. Del. August 25, 2011); *In re Affiliated Media,*

*Inc.*, Case No. 10-10202 (KJC) (Bankr. D. Del January 26, 2010); *In re Latham International,*

*Inc., et al.*, Case No. 09-14490 (CSS) (Bankr. D. Del. Dec. 23, 2009); *In re NTK Holdings, Inc.,*

*et al.*, Case No. 09-13611 (KJC) (Bankr. D. Del October 23, 2009); *In re Source Interlink*

*Companies, Inc.*, Case No. 09-11424 (Bankr. D. Del. April 29, 2009); *In re Portola Packaging,*

*Inc.*, Case No. 08-12001 (CSS) (Bankr. D. Del. August 29, 2008); *In re ACG Holdings, Inc.*,

Case No. 08 11467 (CSS) (Bankr. D. Del. July 16, 2008); *In re Vertis Holdings, Inc.*, Case No.

08 11460 (CSS) (Bankr. D. Del. July 16, 2008); *In re Hilex Poly Co. LLC*, Case No. 08 10890

(KJC) (Bankr. D. Del. May 7, 2008).

**I.      The Debtors' Prepetition Solicitation Was Exempt From Registration and
         Disclosure Requirements Otherwise Applicable Under Nonbankruptcy Law**

49.     Section 1126(b) of the Bankruptcy Code provides that:

> [A] holder of a claim or interest that has accepted or rejected the
> plan before the commencement of the case under this title is
> deemed to have accepted or rejected such plan, as the case may be,
> if — (1) the solicitation of such acceptance or rejection was in
> compliance with any applicable nonbankruptcy law, rule, or
> regulation governing the adequacy of disclosure in connection with
> such solicitation; or (2) if there is not any such law, rule, or
> regulation, such acceptance or rejection was solicited after
> disclosure to such holder of adequate information, as defined in
> section 1125(a) of this title.

11 U.S.C. § 1126(b). Thus, prepetition solicitation must comply with either generally applicable

federal or state securities laws and regulations (including the registration and disclosure

requirements thereof) or, if such laws and regulations do not apply, the solicited holders must

receive "adequate information" under Section 1125 of the Bankruptcy Code. *See* 7 Alan N.

Resnick & Henry J. Sommer, eds., Collier on Bankruptcy ¶ 1126.03[2][d] (15th rev. ed.).

50.     The Debtors respectfully submit that their prepetition solicitation was exempt

from registration under  the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa (as amended from

time to time, the "Securities Act"), conducted in reliance on Section 3(a)(9) of the Securities Act.

Section 3(a)(9) provides an exemption from registration when an issuer issues new securities in

exchange for its own outstanding securities.  This exemption is available when (i) the new and

outstanding securities are issued by the same issuer, (ii) the exchange offer is made only to

existing security holders, (iii) no compensation is paid for solicitation in connection with the

exchange offer and (iv) no cash or property may be required to be paid by security holders to

participate in the exchange offer.

51.     With respect to the "same issuer" requirement, the SEC has granted no-action

relief in the case where a parent guarantor issues new stock in exchange for the securities of its

wholly-owned subsidiary, treating the issuance of the stock by the parties a separate exchange

for the parent's guaranty.  Accordingly, for securities law purposes, the issuance by DE Lyon of

the Class A Common Stock in exchange for the Old Notes (issued by CA Lyon) should be

deemed as an issuance by DE Lyon of Class A Common Shares in exchange for its guaranty, in

compliance with Section 3(a)(9).  (Notwithstanding this deemed treatment for the Solicitation,

the Class A Common Shares when actually issued will be issued in reliance not upon section

3(a)(9) of the Securities Act, but rather, upon section 1145 of the Bankruptcy Code, and DE

Lyon will first contribute the Class A Common Shares to CA Lyon, then CA Lyon will deliver to

the appropriate Distribution Agent for distribution to the Holders of the Old Notes Claims.)  The

prepetition solicitation of Class 4 – Prepetition Secured Loan Agreement Claims did not involve

the solicitation of current holders of the Debtors' securities and thus, no exemption from the

registration requirements of the Securities Act is required.

52.    With respect to the no cash requirement, no Cash will be paid for any securities

distributed on account of any Claims.  Accordingly, the Debtors are relying on Section 3(a)(9)

for an exemption from the registration and disclosure requirements of the Securities Act, and do

not believe that the pre-petition solicitation constituted a public offering. As such, the

requirements under Section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtors'

prepetition Solicitation.  As discussed more fully, below, the Debtors will seek a determination

from the Court at the Confirmation Hearing that all solicited holders of Voting Class claims

received "adequate information" as defined by Section 1125(a) of the Bankruptcy Code in

accordance with Section 1126(b)(2) of the Bankruptcy Code

**J.**    **Approval of the Disclosure Statement at the Confirmation Hearing**

53.    At the Confirmation Hearing, the Debtors will request that the Court find that the

Disclosure Statement contains adequate information as defined in Section 1125 of the

Bankruptcy Code.

54.    Section 1125(a) of the Bankruptcy Code defines "adequate information" as

> [I]nformation of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records,
> including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the debtor,
> and a hypothetical investor typical of the holders of claims or
> interests in the case, that would enable such a hypothetical investor
> of the relevant class to make an informed judgment about the plan .
> . ..

11 U.S.C. § 1125(a)(1). The Debtors submit that the Disclosure Statement contains adequate

information within the meaning of Section 1125(a) of the Bankruptcy Code.

55.     The Disclosure Statement is extensive and comprehensive.  It contains

descriptions and summaries of, among other things, (a) the Plan; (b) the pertinent events

preceding the commencement of the Cases; (c) the claims asserted against the Debtors' estates;

(d) transactions to be effectuated and securities to be issued under the Plan; (e) risk factors

affecting the Plan; (f) a liquidation analysis setting forth the estimated return that holders of

claims and equity interests would receive in a hypothetical chapter 7 case; (g) financial

information that would be relevant to creditors' determinations of whether to accept or reject the

Plan; and (h) securities law and federal tax law consequences of the Plan.

56.     In addition, the Disclosure Statement was the subject of review and comment by,

among others, legal and financial advisors to certain holders of claims in the Voting Classes.  As

discussed above, the Voting Agent mailed the Solicitation Package to holders of claims in the

Voting Classes.  Accordingly, the Debtors submit that the Disclosure Statement contains

adequate information within the meaning of Section 1125(a) of the Bankruptcy Code and should

be approved.

## **Waiver of Bankruptcy Rule 6004(a)**

57.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a).

## **Notice**

58.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Prepetition Secured Lenders and proposed DIP Lender; (iii) counsel to the Ad Hoc Noteholders Group; and (iv) counsel to the Backstop Investors.   As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of an order (i) granting the relief

requested herein and (ii) granting the Debtors such other and further relief as the Court deems

just and proper.

Dated: December 19, 2011

PACHULSKI STANG ZIEHL & JONES LLP

By: _____

Richard M. Pachulski (CA Bar No. 90073)
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joshua M. Fried (CA Bar No. 181541)
Shirley S. Cho (CA Bar No. 192616)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
e-mail:     rpachulski@pszjlaw.com
            ljones@pszjlaw.com
            dbertenthal@pszjlaw.com
            jfried@pszjlaw.com
            scho@pszjlaw.com
            tcairns@pszjlaw.com

[Proposed] Counsel for the Debtors and Debtors in
Possession