# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WILLIAM LYON HOMES, *et al.*,[1] | ) | Case No. 11-14019 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 507 AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364 AND 507, AND (III) MODIFYING THE AUTOMATIC STAY, AND (V) SCHEDULING A FINAL HEARING**

Upon the motion (the "Motion"),[2] dated December 19, 2011, of William Lyon Homes,

Inc. ("WLH"), as debtor and debtor in possession, and its affiliated debtors and debtors in

possession (collectively with WLH, the "Debtors") in the above-captioned chapter 11 cases

(each, a "Chapter 11 Case" and, collectively, the "Chapter 11 Cases"), pursuant to sections 105,

361, 362, 363(b)(1), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11

of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 4001

and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules

2002-1(b) and 4001-2 of the Local Bankruptcy Rules for the District of Delaware (the "Delaware

Rules"), for interim and final orders seeking, among other things:

---

[1] The debtors and debtors in possession in these cases and the last four digits of their respective taxpayer identification numbers are as follows: William Lyon Homes (4902); William Lyon Homes, Inc., (3855); Mountain Falls Golf Course, LLC (3291); Mountain Falls, LLC (9631); Circle G at the Church Farm North Joint Venture, LLC (1322); Presley CMR, Inc. (3862); William Lyon Southwest, Inc. (8474); Sycamore CC, Inc. (1307); PH-LP Ventures (9119); PH Ventures – San Jose (5089); HSP, Inc. (6045); PH Rielly Ventures (7710); Lyon Waterfront, LLC (1928); Lyon East Garrison Company I, LLC (5692); WLH Enterprises (3333); Duxford Financial, Inc. (0824); California Equity Funding, Inc. (0016); Laguna Big Horn, LLC (2590); Presley Homes (5035); Cerro Plata Associates, LLC (5090); Whitney Ranch Village 5, LLC (5256); and Duxford Insurance Services, LLC (8232). The Debtors' mailing address is 4490 Von Karman Avenue, Newport Beach, CA 92660.

[2] Capitalized terms used, but otherwise undefined herein shall have the meaning ascribed to them in the Motion.

(a) authorization for WLH to obtain post-petition financing (the "DIP Financing"), and for certain of the other Debtors[3] (collectively, the "DIP Guarantors") to guaranty WLH's obligations in connection with the DIP Financing in an aggregate principal amount of up to $30,000,000, of which up to $15,000,000 shall be available upon entry of this Interim Order (subject to the terms and conditions set forth in the DIP Loan Documents (as defined below)), from ColFin WLH Funding, LLC, as Administrative Agent (in such capacity, the "DIP Agent), for itself and the lenders from time to time party (the "DIP Lenders") to the DIP Loan Agreement (as defined below);

(b) authorization for the Debtors to enter into the DIP Loan Documents and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

(c) the granting of adequate protection to the Prepetition Secured Parties (as defined below) whose liens under or in connection with the following instruments (collectively, the "Prepetition Loan Documents") are being primed solely by the DIP Liens (as defined below) and the Adequate Protection Liens (as defined below), each subject to the Carve-Out (as defined below):

    i.     the Senior Secured Term Loan Agreement dated as of October 20, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Loan Agreement"), among WLH, as borrower, ColFin WLH Funding, LLC, as administrative agent, initial lender and lead arranger (the "Prepetition Agent"), and the lenders from time to time party thereto (the "Prepetition Lenders" and collectively with the Prepetition Agent, the "Prepetition Secured Parties"), pursuant to which WLH

---

[3] Mountain Falls, LLC, which is a Debtor, is not guaranteeing the DIP Financing.

incurred indebtedness to the Prepetition Lenders (the "Prepetition Debt");

   ii.  the Unconditional Guaranty (as defined in the Prepetition Loan Agreement) made by each Guarantor (as defined in the Prepetition Loan Agreement) in favor of the Prepetition Secured Parties, pursuant to which each Guarantor, among other things and as more fully described in such Unconditional Guaranty, unconditionally guaranteed prompt payment in full of the Obligations (as defined in the Prepetition Loan Agreement) and any and all other existing and future indebtedness and liabilities to the Prepetition Secured Parties arising under the Prepetition Loan Agreement and the other "Loan Documents" (as such term is defined in the Prepetition Loan Agreement);

   iii.  the Security Agreement (as defined in the Prepetition Loan Agreement) made by and among WLH, the Guarantors and the Prepetition Agent on behalf of the Prepetition Secured Parties, pursuant to which WLH and each Guarantor, among other things and as more fully described in such Security Agreement, granted a security interest in the "Collateral" (as defined in the Security Agreement) as security for the prompt payment in full of the "Secured Obligations" (as defined in the Security Agreement);

   iv.  the Pledge Agreement (as defined in the Prepetition Loan Agreement) made by and among WLH, William Lyon Homes, a Delaware corporation ("Parent") and the other entities from time to time identified as Pledgors on Schedule I thereto in favor of Prepetition Agent, pursuant to which WLH, Parent and each Pledgor, among other things and as more fully described in such Pledge Agreement, granted a security interest the "Pledged Collateral" (as defined in the Pledge Agreement) as security for the prompt payment in full of the Secured Obligations;

v.      any and all Deeds of Trust (as defined in the Prepetition Loan Agreement) executed by WLH, as trustor, Title Company (as defined in the Prepetition Loan Agreement), as trustee, and naming Prepetition Agent as beneficiary for itself and the Prepetition Lenders, pursuant to which WLH, among other things and as more fully described in the applicable Deed of Trust, created a first priority lien on the Borrower Real Property (as defined in the Prepetition Loan Agreement) and the Collateral situated thereon, and all rights and easements appurtenant thereto as security for the prompt payment in full of the Secured Obligations; and

vi.      any and all other Loan Documents (as defined in the Prepetition Loan Agreement);

(d) authorization for the Debtors to grant the DIP Liens;

(e) authorization for the Debtors to use Cash Collateral (as defined below), subject to the terms and conditions of this Interim Order, and the granting of certain adequate protection to the Prepetition Secured Parties against the diminution in the value of the Prepetition Collateral (as defined below), on account of the use, sale or lease of the Prepetition Collateral, or the imposition of the automatic stay pursuant to Bankruptcy Code section 362;

(f) approval, pursuant to Bankruptcy Code sections 105, 361, 362, 363 and 507, of the form and manner of adequate protection being granted to the Prepetition Secured Parties, who have been granted Prepetition Liens (as defined below) and security interests under the Prepetition Loan Documents;

(g) this Court's scheduling an interim hearing (the "Interim Hearing") pursuant to Bankruptcy Rule 4001(a), (b) and (d) and Delaware Rule 4001-2 to consider the entry of an interim order in the form hereof (this "Interim Order");

(h) this Court's modification of the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms of this Interim Order;

(i) this Court's scheduling, pursuant to Bankruptcy Rule 4001(a), (b) and (d), a hearing (the "Final Hearing") to consider entry of a final order (the "Final Order"), which, among other things, shall authorize the Debtors to obtain DIP Financing and use the Cash Collateral and grant adequate protection to the Prepetition Secured Parties; and

(j) this Court's finding, pursuant to Bankruptcy Rules 2002 and 4001(b)(1) and Delaware Rules 4001-2 and 2002-1(b), that notice of the Interim Hearing is sufficient having been given to (i) the Office of the United States Trustee (the "U.S. Trustee"), (ii) each secured creditor of record and, to the extent known to the Debtors, its counsel, (iii) counsel to the Prepetition Agent, (iv) the Prepetition Lenders, (v) counsel for the Ad Hoc Noteholders Group, (vi) counsel for the indenture trustee of the Old Notes, (vii) the thirty (30) largest unsecured creditors of each of the Debtors, (vi) any known party asserting a lien against, or other interests in, any of the Debtors' assets, and (vii) the Internal Revenue Service (collectively, the "Notice Parties"); and such notice being sufficient and adequate, and no other or further notice being required.

The Interim Hearing having been held on December [20], 2011; and based upon all of the pleadings filed with this Court, the evidence presented at the Interim Hearing and the entire record herein; and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and this Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion, as modified herein on an interim basis, is necessary to avoid immediate and irreparable harm to the Debtors' estates prior to a final hearing, and otherwise is fair and reasonable, and in the best interests of the Debtors, their

estates, and their creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS HEREBY FOUND (FINDINGS OF FACT AND CONCLUSIONS OF LAW):[4]**

1.    **Disposition**.   The Motion is granted on an interim basis in accordance with the terms of this Interim Order.   Any objections to the Motion with respect to the entry of the Interim Order that have not been withdrawn, waived or settled, and all reservation of rights included therein, are hereby denied and overruled.

2.    **Petition Date**.   On December 19, 2011 (the "Petition Date"), each of the Debtors commenced a Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.   No trustee, examiner has been appointed in any of the Chapter 11 Cases.

3.    **Jurisdiction; Venue**.   This Court has jurisdiction over each of the Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. §§157(b)(2)(D) and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D).   Venue for each of the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

4.    **Statutory Committee**.   As of the date herein, the U.S. Trustee has not appointed a committee of unsecured creditors or any other committee pursuant to Bankruptcy Code section 1102 (a "Committee").

5.    **Prepetition Liens**.   To secure the Prepetition Loan Obligations (as defined below) under the Prepetition Loan Agreement and the other Prepetition Loan Documents, each

---

[4] This Order constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any and all findings of fact shall constitute findings of fact even if stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if stated as findings of fact.

of WLH and the Guarantors granted the Prepetition Agent, on behalf of the Prepetition Secured Parties, valid first priority liens (the "Prepetition Liens") upon and in substantially all of the assets of each of WLH and the Guarantors (other than (I) cash, cash equivalents and deposit accounts used by WLH (a) for payroll, payroll taxes and other employee wage and benefit payments, (b) to collateralize obligations under letter of credit applications, or (c) in its Core Business (as defined in the Prepetition Loan Agreement), (II) investments in Joint Ventures and Subsidiaries (each as defined in the Prepetition Loan Agreement), (III) certain lease, license, contract, property rights or agreements (A) to which the Guarantors are party, and their respective rights or interests thereunder if, and for so long as, granting of a lien thereon shall constitute or result in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract, property rights or agreement or the violation of any applicable law other than to the extent that any such term would be rendered ineffective pursuant to sections 9406, 9407, 9408 or 9409 of the Uniform Commercial Code or any successor provision or provisions of any relevant jurisdiction or any other applicable law (including the Bankruptcy Code) or principles of equity; provided, however, that the foregoing exclusion shall not apply at such time as the condition causing such breach or termination shall be remedied and to the extent severable, or (B) that is a lease for office space used in the Guarantors' business, (IV) intellectual property, (V) any licenses or permits issued by government authorities not assignable by their terms, (VI) equity interests in WLH, (VII) certain furniture, fixtures and equipment in the Guarantors' offices, and (VIII) rights to initiate, defend or prosecute legal claims and proceedings; provided that (x) the value of all assets described in (I) above shall not exceed $3,500,000 in the aggregate at any one time and (y) the value of investments described in (II) above shall not exceed $16,500,000 in the aggregate at any one time, and in each of clauses (I)

through (VIII), only to the extent specifically set forth in the Prepetition Loan Agreement and Prepetition Loan Documents), and all proceeds, products, offspring and profits of the foregoing (the "Prepetition Collateral").

6.    **Debtors' Stipulations.**    Subject to paragraph 36 of this Interim Order, after consultation with its legal, financial and other professional advisors, each of the Debtors acknowledges, admits, represents, stipulates, and agrees that:

(a) As of the Petition Date, each of WLH and the Guarantors was liable to the Prepetition Secured Parties in respect of obligations under the Prepetition Loan Documents for (i) the aggregate principal amount of not less than $206,000,000, (ii) subject to the reservation of rights in the proviso below, the Make Whole Amount (as defined in the Prepetition Loan Agreement), (iii) subject to the reservation of rights in the proviso below, the Exit Fee (as defined in the Prepetition Loan Agreement), (iv) any accrued and unpaid interest, and (v) any unpaid fees, costs, expenses, disbursements, indemnifications, obligations, covenants, liabilities, duties, and charges or claims of whatever nature, whether or not contingent, whenever arising, due or owing under the Prepetition Loan Documents or applicable law or otherwise (collectively, the "Prepetition Loan Obligations"). The Prepetition Secured Parties assert that the Make Whole Amount due and owing is not less than $69,000,000 and that the Exit Fee due and owing is not less than $12,900,000. However, the Debtors are not stipulating to any such amounts and the Debtors and all parties in interest reserve any and all rights as to the Make Whole Amount (as defined in the Prepetition Loan Agreement) and the Exit Fee (as defined in the Prepetition Loan Agreement).

(b) As of the Petition Date, all of the Prepetition Loan Obligations (except as noted above with reference to the reservation of rights concerning the Make Whole Amount and the

Exit Fee) are unconditionally due and owing by WLH to the Prepetition Secured Parties.

(c) As of the Petition Date, all claims in respect of the Prepetition Loan Obligations (except as noted above with reference to the reservation of rights concerning the Make Whole Amount and the Exit Fee) (i) constitute legal, valid, binding and non-avoidable obligations of each of the Debtors and (ii) are not, and shall not be, subject to any avoidance, disallowance, disgorgement, reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or any other challenge of any kind or nature under the Bankruptcy Code or any other applicable law or regulation, by any of the Debtors, any Committee or by or any other person, party or entity.

(d) The Prepetition Liens (i) constitute valid, binding, enforceable, non-avoidable, and properly perfected liens on the Prepetition Collateral that, prior to the entry of this Interim Order, were senior in priority over any and all other liens on the Prepetition Collateral, subject only to those liens explicitly permitted by the Prepetition Loan Documents (to the extent any such Permitted Liens were valid, properly perfected, non-avoidable liens senior in priority to the Prepetition Liens on the Petition Date) (the "Permitted Priority Liens"), if any; (ii) are not, and shall not be, subject to avoidance, reduction, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or any other challenge under the Bankruptcy Code or any other applicable law or regulation by any of the Debtors, any Committee or by any other person, party, or entity; and (iii) are subject and subordinate only to Permitted Priority Liens, if any.

(e) None of the Prepetition Secured Parties are or shall be deemed to be control persons or insiders of any of the Debtors solely by virtue of any of the actions taken by such parties in respect of or in connection with the Prepetition Loan Obligations or the Prepetition

Loan Documents.

(f) As of the Petition Date, none of the Debtors has brought, is aware of, or has any

Potential Claims and Defenses (as defined below).

(g) As of the Petition Date, the aggregate value of the Prepetition Collateral exceeds

the aggregate amount of the Prepetition Loan Obligations.

(h) As of the Petition Date, there were no other perfected liens on or security interests

in the Prepetition Collateral, except for the Prepetition Liens and the Permitted Priority Liens.

7.    **Findings Regarding the DIP Financing**.

(a) The Debtors have an immediate need to obtain the DIP Financing and use Cash

Collateral to permit, among other things, the orderly continuation of the operation of their

businesses, to maintain business relationships with vendors, suppliers and customers, to make

payroll, to make capital expenditures, to satisfy other working capital and operational needs, and

to fund the costs of the Chapter 11 Cases. The access of the Debtors to sufficient working

capital and liquidity is vital to the preservation and maintenance of the going concern values of

the Debtors and to a successful reorganization of the Debtors.

(b) The Debtors have used diligent efforts to seek, but have been unable to obtain,

financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan

Documents and have been unable to obtain adequate unsecured credit allowable under section

503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors also have been

unable to obtain credit under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code

on terms more favorable to the Debtors than the DIP Financing. The Debtors have not been able

to find any lender who was willing to make loans on terms more favorable to the Debtors than

the DIP Financing on a first lien basis under section 364(d) of the Bankruptcy Code, priming the

Prepetition Liens. The DIP Agent and the DIP Lenders are willing to provide DIP Financing but only if (i) the Debtors grant to the DIP Agent and the DIP Lenders, subject to the Carve-Out as provided for herein, the DIP Liens and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Interim Order and in the DIP Loan Documents, and the other rights and benefits provided to them by this Interim Order and the DIP Loan Documents, and (ii) the Prepetition Secured Parties consent to the priming of the Prepetition Liens.

(c) The terms of the DIP Financing and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d) The DIP Financing has been negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Financing and the DIP Loan Documents, including (i) all loans made to the Debtors pursuant to the DIP Loan Documents, and (ii) any other Obligations (as defined in the DIP Loan Agreement (all of the foregoing in clauses (i) and (ii) collectively, the "DIP Obligations")), shall be deemed to have been extended by the DIP Agent and the DIP Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

8.    **Findings Regarding Cash Collateral**.

(a) For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in Bankruptcy Code section 363, in which the Prepetition

Secured Parties have a lien, security interest or other interest (including any adequate protection liens or security interests), in each case whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise. Each of the Debtors represents and stipulates that all of the Debtors' cash, cash equivalents, negotiable instruments, documents of title, deposit accounts, investment property and securities, including the cash, cash equivalents, negotiable instruments, investment property and securities in its deposit accounts, including the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of the Bankruptcy Code, wherever any of the foregoing is located, constitutes the Cash Collateral (or part of the Prepetition Collateral) of the Prepetition Secured Parties (other than cash and cash equivalents, not in excess of $3,500,000, that (i) WLH has specifically identified as an "Excluded Asset" in its most recent report delivered to the Prepetition Agent pursuant to Section 6.02(b)(vi) of the Prepetition Loan Agreement and (ii) is not held or on deposit in a deposit account subject to a perfected security interest in favor or the Prepetition Agent).

(b) <u>Use of Cash Collateral</u>. The Debtors have an immediate and critical need to use the Cash Collateral to operate their businesses and effectuate a reorganization of their businesses, which Cash Collateral will be used strictly in accordance with the terms of this Interim Order and the DIP Loan Documents. Without the use of Cash Collateral, the Debtors will not have sufficient liquidity to be able to continue to operate their businesses. The adequate protection provided herein and other benefits and privileges contained herein, including those inuring to their benefit as DIP Agent and DIP Lenders, are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain the consent of the Prepetition Secured

Parties and to adequately protect such parties' interests in the Prepetition Collateral.

(c) <u>Sections 506(c) and 552(b)</u>.  In light of the Prepetition Secured Parties' agreement to subordinate their liens and claims to the Carve-Out, to permit the use of the Prepetition Collateral and to permit the use of their Cash Collateral for payments made strictly in accordance with the terms of this Interim Order and the DIP Loan Documents, subject to and effective only upon the entry of the Final Order, each of the Prepetition Secured Parties is entitled to (i) a waiver of any "equities of the case" claims under Bankruptcy Code section 552(b) and (ii) a waiver of the provisions of Bankruptcy Code section 506(c).

(d) <u>Consent to Use of Cash Collateral</u>.  The Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral solely on the terms and conditions set forth in this Interim Order and the DIP Loan Documents.

9.      **Restructuring Support Agreements**.  The Debtors, the Prepetition Agent, and the Prepetition Lenders have entered into that certain Restructuring Support Agreement, dated November 4, 2011 (the "<u>Colony RSA</u>"), which contains certain agreements and undertakings of the parties thereto with respect to the Debtors' restructuring.  In addition, the Debtors and certain holders of (i) the 7½% Senior Notes due 2014 issued by the Company, (ii) the 10¾% Senior Notes due 2013 issued by the Company, and (iii) the 75/8% Senior Notes due 2012 issued by the Company (the "<u>Ad Hoc Noteholders Group</u>") have entered into that certain Noteholder Restructuring Support Agreement, dated November 4, 2011 (the "<u>Noteholders RSA</u>"), which contains certain agreements and undertakings of the parties thereto with respect to the Debtors' restructuring.

10.      **Immediate Entry of Interim Order**.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The Motion and this

Interim Order comply with Delaware Rule 4001-2. The permission granted herein to obtain DIP Financing and use Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Interim Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for access to the liquidity necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing business and further enhance the Debtors' prospects for a successful restructuring. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

11.    **Motion Granted**. The Motion is granted on an interim basis, subject to the terms set forth herein. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits. This Interim Order shall be valid, binding on all parties in interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

12.    **Authorization to Obtain DIP Financing**.

(a) The Debtors are hereby authorized to enter into the DIP Loan Documents. WLH is hereby authorized to borrow money pursuant to the DIP Loan Agreement, and the DIP Guarantors are hereby authorized to guaranty such borrowings, in an aggregate principal or face amount of up to $15,000,000 pending entry of the Final Order, in accordance with the terms of this Interim Order and the DIP Loan Documents, which may be used for all purposes under the budget attached hereto as **Exhibit 1** (as such budget may be amended in accordance with the DIP Loan Documents, the "Budget") not prohibited under this Interim Order and the DIP Loan

Documents, including to provide working capital for WLH and the DIP Guarantors, to pay interest, fees and expenses in accordance with this Interim Order and the DIP Loan Documents and to make adequate protection payments and any other payments permitted to be made by the Court and strictly in accordance with the DIP Loan Agreement and the other DIP Loan Documents. Any amendments to the Budget shall be provided to (i) counsel to the Ad Hoc Noteholders Group, (ii) counsel for the Indenture Trustee, (iii) counsel for any Committee, (iv) counsel for the Backstop Investors, and (v) the U.S. Trustee.

(b) In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including the execution or recordation of security agreements, mortgages, deeds of trust, and financing statements), and to pay all fees in accordance with the DIP Loan Documents and take such actions, in each case as may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Financing (it being understood for the avoidance of doubt that the recording of mortgages or deeds of trust and the payment of fees in connection therewith shall be subject to the terms of the DIP Loan Documents), including:

i.    the execution, delivery and performance of the Loan Documents (as defined in the Senior Secured Super Priority Debtor-in-Possession Term Loan Agreement substantially in the form that was filed with the Court on December 19, 2011, as Exhibit B to the Motion (the "DIP Loan Agreement")) and any exhibits attached thereto, including the DIP Loan Agreement, the Security Agreement, the Pledge Agreement, and the Unconditional Guaranty (each as defined in the DIP Loan Agreement), and any mortgages or deeds of trust contemplated thereby (collectively, and together with the letter agreements referred to in clause (iii) below, the "DIP Loan Documents"),

ii.        subject to the terms of the DIP Loan Agreement, the execution, delivery

and performance of one or more amendments to the DIP Loan Agreement for any purpose,

including to add additional financial institutions as DIP Lenders and reallocate the commitments

for the DIP Financing among the DIP Lenders, in each case in such form as the Debtors, the DIP

Agent and the requisite DIP Lenders may agree, provided that approval of the Court shall be

required for amendments to the DIP Loan Agreement that (A) shorten the maturity of the

extensions of credit thereunder or (B) increase the commitments or the rate of interest payable

thereunder,

iii.        the non-refundable payment to the DIP Agent or the DIP Lenders, as the

case may be, of the fees referred to in the DIP Loan Agreement (and in any separate letter

agreements between them in connection with the DIP Financing) and reasonable costs and

expenses as may be due from time to time, including fees and expenses of the counsel and other

professional advisors retained by the DIP Agent, as provided for in the DIP Loan Documents in

conformance with the procedures set forth in Paragraph 21(a) regarding fees, costs and expenses

of the Prepetition Agent Professionals, and

iv.        the performance of all other acts required under or in connection with the

DIP Loan Documents.

(c) Upon execution and delivery of the DIP Loan Documents, the DIP Loan

Documents shall constitute valid and binding obligations of the Debtors, enforceable against

each Debtor party thereto in accordance with the terms of the DIP Loan Documents.  No

obligation, payment, transfer or grant of security under the DIP Loan Documents or this Interim

Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code

or under any applicable law (including under section 502(d) of the Bankruptcy Code), or subject

to any disallowance, disgorgement, recharacterization, subordination (whether equitable, contractual or otherwise) defense, reduction, setoff, offset, recoupment, counterclaim, cross-claim or challenge of any kind or nature.

13.    **Superpriority Claims**.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve-Out; provided, however; (i) the DIP Lenders shall use their reasonable best efforts to satisfy the Superpriority Claims from DIP Collateral (as defined below) or the proceeds of DIP Collateral prior to seeking to utilize proceeds of avoidance actions under Chapter 5 of the Bankruptcy Code (other than the proceeds of avoidance actions under section 549 of the Bankruptcy Code, which proceeds the DIP Lenders may use to satisfy their Superpriority Claims without such delay) to satisfy Superpriority Claims and (ii) the DIP Lenders' ability to utilize

avoidance actions and the proceeds thereof to satisfy such Superpriority Claims shall be subject to entry of the Final Order.

14.   **DIP Liens**.   As security for the DIP Obligations, effective and perfected upon the date of entry of this Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, deeds of trust, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by any DIP Agent or DIP Lender of, or over, any DIP Collateral, the following security interests and liens are hereby granted (which grant is made with the power of sale under applicable state law with respect to any and all real property or leasehold interests, which power may be exercised by (i) DIP Agent as trustee for the benefit of DIP Agent and the DIP Lenders or (ii) such trustee as may be nominated or substituted by DIP Agent as trustee for the benefit of DIP Agent and the DIP Lenders) to the DIP Agent for its own benefit and the benefit of the DIP Lenders (and with respect to the grant with the power of sale under applicable state law, such grant is deemed made to DIP Agent as trustee for the benefit of DIP Agent and the DIP Lenders) (all property identified in clauses (a), (b) and (c) below (excluding tangible and intangible property described in clause (d)) being collectively referred to as the "DIP Collateral"), subject to the Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Interim Order and the DIP Loan Documents, the "DIP Liens"):

(a) First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtors (other than the Excluded Assets (as defined below)), whether existing on the Petition Date or thereafter

acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens, including all cash of the Debtors (whether maintained with the DIP Agent or otherwise) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, commercial tort claims, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, equity interests of subsidiaries and the proceeds of all the foregoing.

(b) Liens Priming Prepetition Secured Parties' Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (other than the Excluded Assets), including Cash Collateral and all other cash (if any), inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, commercial tort claims, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, equity interests of subsidiaries, and the proceeds of all the foregoing, whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Prepetition Debt. Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties (including the Adequate Protection Liens (as defined below)), but shall not be senior to any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, if such liens were senior to the liens of the Prepetition Secured Parties.

(c) Liens Junior to Certain Other Liens. Pursuant to section 364(c)(3) of the

Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all pre- and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 14, as to which the liens and security interests in favor of the DIP Agent on behalf of itself and the DIP Lenders will be as described in such clauses, and other than Excluded Assets), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent on behalf of itself and the DIP Lenders are junior to such valid, perfected and unavoidable liens.

(d) Excluded Assets. The following are "Excluded Assets": (i) customer deposits and other third party funds held by the Debtors in escrow that are refundable to such customers or third parties at the request of such customers or third parties under the terms of any written agreement between such customers or third parties and the Debtors governing such funds (it being understood and agreed that the Debtors' respective interests in such deposits or funds shall not constitute Excluded Assets) and products and proceeds thereof, (ii) equity interests in any of the Debtors' direct foreign subsidiaries in excess of 65% of their voting equity interests, (iii) assets that the Debtors may not pledge as a result of any valid, enforceable and non-avoidable contractual prohibition after giving effect to the provisions of Paragraph 33(d) hereof, (iv) estate causes of action under chapter 5 of the Bankruptcy Code or applicable state avoidance law and the proceeds thereof, except, in each case, avoidance actions under section 549 of the Bankruptcy Code, and (v) the assets of Circle G at the Church Farm North Joint Venture, LLC.

(e) Liens Senior to Certain Other Liens. The DIP Liens and the Adequate Protection

Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, unless expressly permitted to be senior under the DIP Loan Agreement or is a statutory lien that arises under applicable non-bankruptcy law and is determined by the Court to be senior to the DIP Liens and/or the Adequate Protection Liens.

15.    **Protection of DIP Lenders' Rights**.

(a) Subject to Paragraphs 15(b) herein, so long as there are any borrowings or other amounts or obligations outstanding, or the DIP Lenders have any Commitment (as defined in the DIP Loan Agreement), under the DIP Loan Agreement, the Prepetition Secured Parties shall (i) take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Loan Documents or this Interim Order, or otherwise exercise remedies against any DIP Collateral, (ii) be deemed to have consented to any release of DIP Collateral authorized under the DIP Loan Documents or this Interim Order and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (iii), the DIP Agent or DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date.

(b) The automatic stay provisions of section 362 of the Bankruptcy Code are vacated

and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (i) upon the occurrence and during the continuance of a DIP Order Event of Default, (ii) after the giving of fifteen (15) business days prior written notice (to the extent provided for in, and subject to the terms of, the DIP Loan Agreement) (the "Notice Period") to the Debtors and to (a) counsel to any Committee, (b) the U.S. Trustee, (c) counsel to the Ad Hoc Noteholders Group, (d) counsel to the indenture trustee (the "Indenture Trustee") for the Notes (as defined in the Noteholders RSA), and (e) the investors (the "Backstop Investors") party to the Backstop Commitment (as defined in the Colony RSA), and (iii) after occurrence of the Funding Termination Date (as defined below), all rights and remedies against the DIP Collateral provided for in the DIP Loan Documents (including the right to set off against accounts maintained by the Debtors with any DIP Agent or DIP Lender or any affiliate thereof, or otherwise subject to the control of the DIP Agent or any DIP Lender). After the Funding Termination Date, the automatic stay shall be vacated and modified automatically and the DIP Agent, the DIP Lenders or the Prepetition Secured Parties may pursue all rights and remedies against the DIP Collateral or the Prepetition Collateral in such manner as they shall agree upon in conformance with applicable law, this Interim Order and, if any, the Final Order. In any hearing after giving effect of the aforementioned notice regarding any exercise of rights or remedies, the only issues that may be raised by any party in opposition thereto shall be (1) whether, in fact, a DIP Order Event of Default has occurred and is continuing; or (2) whether to approve a Junior DIP Facility (as defined below), the proceeds of which are to be used to repay in full in cash all obligations (other than contingent indemnity obligations for which no claim has been made by the DIP Agent (whether on its own behalf or on behalf of the DIP Lenders) or other similar contingent obligations) arising under the DIP Financing. The Debtors and the Prepetition Secured Parties

hereby waive their right to seek relief, including under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of either DIP Agent or the DIP Lenders set forth in this Interim Order or the DIP Loan Documents. In no event shall the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral and the Prepetition Collateral.

16. **Events of Default**.

(a) The following shall constitute an event of default under this Interim Order, unless waived in writing by the DIP Agent and the DIP Lenders under the DIP Loan Documents (each a "DIP Order Event of Default"):

      i.     the occurrence of an "Event of Default" under the DIP Loan Agreement, as set forth therein; or

      ii.    any material breach or default by any of the Debtors of the terms and provisions of this Interim Order.

17. **Notice of DIP Order Event of Default**. Promptly upon the Debtors becoming aware of a DIP Order Event of Default, the Debtors shall notify the DIP Agent, the Prepetition Agent, counsel to any Committee, the U.S. Trustee, counsel to the Ad Hoc Noteholders Group, counsel to the Indenture Trustee, and the Backstop Investors.

18. **Junior DIP Facility**.

(a) A postpetition debtor in possession financing facility (a "Junior DIP Facility") may be incurred after the commencement of the Notice Period and prior to the Funding Termination Date pursuant to section 364(c) of the Bankruptcy Code that is secured by a lien on, and security interest upon, all of the DIP Collateral (subject to the Carve-Out) (the "Junior DIP Collateral"); provided, however, that such lien and security interest shall be junior to each and all of the liens and security interests of the Prepetition Agent in such collateral and the Adequate

Protection Liens.  The obligations of the Junior DIP Facility shall have superpriority administrative expense status under sections 503(b) and 507(b) of the Bankruptcy Code (the "Junior DIP Superpriority Claim") (subject to the Carve-Out); provided, however, that such Junior DIP Superpriority Claim shall be junior to the Adequate Protection Claim.  Any order approving the Junior DIP Facility shall provide for, and not be inconsistent with, all the adequate protection and other benefits granted to the Prepetition Secured Parties in this Order and the Final Order and otherwise be consistent in all material respects with the description of the Junior DIP Facility in the DIP Loan Documents and the Interim Order.

(b) If the agent (the "Junior DIP Agent") or any lender (collectively, the "Junior DIP Lenders") under the Junior DIP Facility is an affiliate of the Debtors, a signatory to the Noteholders RSA or an affiliate of a signatory to the Noteholders RSA, then, in that instance, the Junior DIP Facility Motion must establish, and, subject to the Court's determination, the Court's order approving the Junior DIP Facility must find that the economic terms of the Junior DIP Facility are market terms.

(c) Upon the occurrence and during the continuance of an event of default under the Junior DIP Facility that is not waived by the Junior DIP Facility Lender or cured within any applicable cure period and, to the extent that such event of default requires a declaration, is declared as an event of default under the Junior DIP Facility (a "Junior DIP Event of Default"), in each case prior to the expiration of the Junior DIP Notice Period (as defined below) and, to the extent that the Junior DIP Agent or any Junior DIP Lender has provided any required notice to the Borrower regarding the exercise of remedies (the "Junior DIP Notice Period"), then upon the expiration of such notice period (unless such event of default is cured or waived prior to the expiration of such notice period), the automatic stay shall be vacated and modified automatically

and the Prepetition Secured Parties, Junior DIP Agent and Junior DIP Lenders may pursue remedies against any of the Junior DIP Collateral or the Prepetition Collateral in conformance with applicable law and this Interim Order and, if any, the Final Order; provided, that, the Prepetition Agent, on behalf of itself and the Prepetition Lenders, shall have the exclusive right to enforce remedies against the Junior DIP Collateral or the Prepetition Collateral until the Prepetition Loan Agreement has been indefeasibly paid in full in cash; provided further, for the avoidance of doubt, in no event may the Junior DIP Agent or any Junior DIP Lender be granted relief from the automatic stay without the Prepetition Secured Parties receiving comparable relief.

(d) If (i) an event of default under the Junior DIP Facility has occurred and is continuing, (ii) the Junior DIP Agent or the Junior DIP Lender has failed or refused to declare a Junior DIP Event of Default, (iii) there remains borrowing availability under the Junior DIP Facility, (iv) WLH has failed or refused to make a borrowing request under the Junior DIP Facility and (v) the Debtors have failed to make material expenditures contemplated in the Budget or consistent with past practice during the Chapter 11 Cases, then, upon five (5) business days advance written notice from the Prepetition Agent to WLH, the automatic stay shall be vacated and modified automatically and the Prepetition Secured Parties may pursue remedies against any of the Junior DIP Collateral or the Prepetition Collateral in conformance with applicable law, this Interim Order and, if any, the Final Order.

(e) In addition to the foregoing, if after the approval of the Junior DIP Facility, the Debtors fail to make payment in respect of or otherwise perform any adequate protection, including any obligation to provide the Adequate Protection Obligation, to the Prepetition Secured Parties and such failure continues for five (5) business days after written notice thereof

from the Prepetition Agent to the Debtors, then the automatic stay shall be vacated and modified automatically and the Prepetition Secured Parties may pursue remedies against any of the Junior DIP Collateral or the Prepetition Collateral in conformance with applicable law, and the Interim Order and, if any, the Final Order.

(f) Each of the DIP Agent, DIP Lenders and Prepetition Secured Parties retains the right to object to any proposed Junior DIP Facility in all respects.

19.    **Limitation on Charging Expenses Against Collateral**.  Except to the extent of the Carve-Out and subject to, and effective only upon, the entry of the Final Order, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the DIP Agent or the Prepetition Agent, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties.

20.    **Authorization to Use Cash Collateral**.

(a) Subject to the terms of this Interim Order, upon entry of this Interim Order, the Debtors are authorized to use Cash Collateral in which the Prepetition Secured Parties may have an interest, strictly in accordance with the terms, conditions, and limitations set forth in the Budget, the DIP Loan Documents and this Interim Order, without further approval by this Court. Any dispute in connection with the use of Cash Collateral shall be heard by this Court. Unless waived by the DIP Lenders in their sole discretion, the Debtors' right to use Cash Collateral shall terminate upon the occurrence of the Funding Termination Date unless the Interim Junior DIP

Order (as defined below) has been entered by the Court and the DIP Financing has been indefeasibly repaid in full in cash (other than contingent indemnity obligations for which no claim has been made by DIP Agent (whether on its own behalf or on behalf of the DIP Lenders) or other similar contingent obligations) arising under the DIP Financing) prior to such date; provided, however, any ordinary payroll items paid in accordance with the Budget where checks have been issued but not cashed (and, for avoidance of doubt, any trust fund tax payments due and owing, the non-payment of which would give rise to personal liability of officers or directors) shall be honored.

(b) Notwithstanding anything herein, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties under this Interim Order shall survive the Funding Termination Date.

21.    **Adequate Protection**.  Each Prepetition Lender is entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection for and equal in amount to the aggregate net diminution in the value of such Prepetition Lender 's interests in the Prepetition Collateral, including the Cash Collateral, including any such net diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition Agent's security interests and liens in the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Loan Documents and this Interim Order and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (each such aggregate net diminution for each Prepetition Lender, a "Diminution in Value").  As adequate protection, Prepetition Secured Parties are hereby granted the following (collectively, the "Adequate Protection Obligations"):

27

(a) <u>Fees and Expenses</u>.  The Debtors are authorized and directed to pay, upon presentation of invoices and without regard to whether such fees and expenses were incurred prepetition or postpetition, the fees and expenses incurred by:  (i) the Prepetition Agent, (ii) Akin Gump Strauss Hauer & Feld LLP, as counsel to the Prepetition Agent; (iii) Pepper Hamilton LLP, as Delaware counsel to the Prepetition Agent; (iv) FTI Consulting, Inc., as advisor to the Prepetition Agent; and (v) such other professional advisors, consultants, or appraisers, including additional legal counsel or financial advisors, retained by the Prepetition Agent (each of the professionals in (i) through (v) being the "<u>Prepetition Agent Professionals</u>"), in each case in connection with (a) evaluating, protecting, preserving, enforcing the rights and interests of the Prepetition Secured Parties, or (b) otherwise in connection with the Chapter 11 Cases.  The Debtors are hereby authorized and directed to pay all fees, costs, and expenses in accordance with the terms of this Interim Order, without the Prepetition Agent having to file any further application with this Court for approval or payment of such fees, costs or expenses, <u>provided</u> that the Prepetition Agent Professionals shall deliver all bills to the U.S. Trustee and counsel to any Committee contemporaneously with delivery to the Debtors (which delivery may, in each such case, be accomplished by electronic mail).  Any such fees, costs and expenses incurred by the Prepetition Agent Professionals shall be paid within ten (10) calendar days of delivery to the parties noted above unless an objection is asserted prior to such payment.  Any such objection shall be in writing and shall state the specific portions of such bills that are objectionable and the basis therefor, and the Debtors shall be required to pay any undisputed amounts within the foregoing ten (10) calendar day period.  Any disputes regarding such fees, costs and expenses that are not resolved may be brought before the Court, but, otherwise, no further court approval shall be required.  The Prepetition Agent Professionals' bills shall not be required to adhere to

the U.S. Trustee Guidelines or any other rules applicable to the fees of professionals retained pursuant to an order of the Court.  All amounts paid as adequate protection are deemed permitted uses of Cash Collateral.

(b) <u>Current Payment of Interest</u>.  The Debtors are authorized and directed to pay to the Prepetition Agent, for the benefit of the Prepetition Lenders, current interest on all Prepetition Loan Obligations, calculated at the non-default interest rate, in the manner and at the times provided in the Prepetition Loan Documents.  The first payment to the Prepetition Agent under this paragraph 21(b) shall include any and all accrued but unpaid interest as of the Petition Date plus any and all interest that would have accrued from the Petition Date through and including the date of such first payment.

(c) <u>Adequate Protection Liens</u>.  To the extent of any Diminution in Value, the Prepetition Agent (for itself and for the benefit of the Prepetition Lenders) is hereby granted (effective and perfected upon the date of entry of this Interim Order and without the necessity of the execution by the Debtors of mortgages, deeds of trust, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all the DIP Collateral, subject and subordinate only to (i) the security interests and liens granted to the DIP Agent for the benefit of itself and the DIP Lenders in this Interim Order and pursuant to the DIP Loan Documents, (ii) all valid, enforceable, perfected and unavoidable liens on all of the Debtors' assets and property in existence as of the Petition Date or duly perfected after Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case solely to the extent senior to the Prepetition Liens and (iii) the Carve-Out (the "<u>Adequate Protection Liens</u>").

(d) <u>Section 507(b) Claim</u>.  To the extent of any Diminution in Value, the Prepetition Secured Parties are hereby granted, against the Debtors as provided for in section 507(b) of the Bankruptcy Code, a superpriority claim, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, including, subject only to the payment of the Carve-Out and immediately junior to the claims under section 364(c)(1) of the Bankruptcy Code held by the DIP Agent and the DIP Lenders, <u>provided, however,</u> that the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the superpriority claims under section 507(b) of the Bankruptcy Code granted hereunder or under the Prepetition Loan Documents unless and until the DIP Obligations have indefeasibly been paid in cash in full, the (the "<u>Adequate Protection Claim</u>").  The DIP Lenders shall use their reasonable best efforts to satisfy such superpriority administrative expense claims from DIP Collateral or the proceeds of DIP Collateral prior to seeking to utilize proceeds of avoidance actions (other than the proceeds of avoidance actions under section 549 of the Bankruptcy Code, which proceeds the Prepetition Lenders may use to satisfy their superpriority claims without such delay) to satisfy such claims, and agree that the Prepetition Secured Parties' ability to utilize avoidance actions and the proceeds thereof to satisfy such superpriority administrative expense claims shall be subject to entry of the Final Order.

(e) <u>Information</u>.  The Debtors shall (i) provide the Prepetition Agent with any written financial information or periodic reporting that is provided to, or required to be provided to, the

DIP Agent or the DIP Lenders, (ii) without duplication of the financial information or periodic reporting that is provided pursuant to clause (i), shall continue to provide the Prepetition Agent with financial and other reporting substantially in compliance with the Prepetition Loan Documents, (iii) reasonably in advance of filing to permit review (and, at the option of Prepetition Agent, comment) by the Prepetition Agent, any motions, replies, objections, memoranda or other pleadings to be filed with the Court (or any other court) in, or in connection with, the Chapter 11 Cases, (iv) weekly sales reports customarily prepared by the Debtors prior to the Petition Date, (v) any financial and other information provided to any Committee or to the Ad Hoc Noteholders Group, contemporaneously with the delivery to such Committee or the Ad Hoc Noteholders Group, as the case may be; and (vi) such other financial and other information as may otherwise be reasonably requested by the Prepetition Agent from time to time during the Chapter 11 Cases, in each case as promptly as practicable under the circumstances; provided, however, that the Debtors shall not be required to deliver any privileged information provided to any Committee or any noteholder group but (a) the Debtors shall provide (1) notice to the Prepetition Agent that privileged information has been delivered to any Committee or any noteholder group and (2) copies of any privileged information provided to any Committee or any noteholder group if such information is no longer privileged for any reason whatsoever (including due to any waiver resulting from delivery to any such recipient).

22.  **Compliance with Prepetition Loan Documents**.  The Debtors shall comply with the Prepetition Loan Documents in all material respects other than as modified herein or as prohibited by the Bankruptcy Code.

23.  **Carve-Out**.

(a) "Carve-Out" means (i) the unpaid fees of the Clerk of the Court and the U.S.
Trustee pursuant to 28 U.S.C. §1930(a)(6); (ii) fees, disbursements, costs and expenses which are
incurred before the Funding Termination Date and after the Petition Date in an amount not to
exceed the amounts set forth in the Budget, on a cumulative basis, for each Professional (as
defined below), less any amount actually paid to each such Professional retained by the Debtors,
any Committee pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1102
(collectively, the "Professionals"), to the extent allowed at any time by this Court, whether by
interim order, procedural order or otherwise, and owed pursuant to such Professionals' respective
engagement letters; (iii) the fees, disbursements, costs and expenses, that are incurred but unpaid
before the Funding Termination Date, of the Ad Hoc Noteholder Group and of the Backstop
Investors in an amount not to exceed $535,000 for the Ad Hoc Noteholder Group and $200,000
for the Backstop Investors, respectively, for the 30 days prior to the Funding Termination Date;
and (iv) fees and expenses of the Debtors' Professionals in an aggregate amount not to exceed
$500,000 that are incurred after the Funding Termination Date, to the extent such fees and
expenses are ultimately allowed by this Court, each subject to the rights of any party in interest
to object to the allowance of any such fees and expenses sought by Professionals in clauses (ii)
and (iv) hereof.

(b) The "Funding Termination Date" means the earliest to occur of (x) the expiration
of the Notice Period, if the Debtors have not filed a motion (the "Junior DIP Facility Motion")
seeking approval of the Junior DIP Facility before the end of the Notice Period, (y) five (5)
business days after the date of the filing of such Junior DIP Facility Motion, if the Court has not
entered an order, consistent in all material respects with the terms hereof, authorizing the Debtors

to incur indebtedness under the Junior DIP Facility in an amount sufficient to indefeasibly repay in full in cash the DIP Financing (the "Interim Junior DIP Order") and (z) two (2) business days after the entry of such Interim Junior DIP Order, if the DIP Financing has not been indefeasibly repaid in full in cash (other than contingent indemnity obligations for which no claim has been made by DIP Agent (whether on its own behalf or on behalf of the DIP Lenders) or other similar contingent obligations) arising under the DIP Financing.  For the avoidance of doubt, each of the DIP Agent, DIP Lenders and Prepetition Secured Parties retains the right to object to the Junior DIP Facility Motion and any other motion relating to the Junior DIP Facility.

24.  **Release**.  Subject to the rights set forth in paragraph 36 of this Interim Order and effective only upon, and subject to the entry of a Final Order, each of the Debtors, on behalf of itself and its estate (including any successor trustee or other estate representative in any the Chapter 11 Cases or successor cases) and any party acting by, through, or under any of the Debtors or its estate, forever and irrevocably (i) release, discharge, waive, and acquit the Prepetition Secured Parties, the DIP Agent, the DIP Lenders, their participants and each of their respective affiliates, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Released Parties") of and from the following ("Potential Claims and Defenses"): any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including any so-called "lender liability" claims, equitable subordination claims or defenses, or causes of actions under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law (including under section 502(d) of the Bankruptcy Code), existing as of the Petition Date, with respect to or relating to the Prepetition

Loan Obligations, the Prepetition Liens, the Prepetition Loan Documents, the DIP Obligations, the DIP Loan Documents, the DIP Financing; and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Prepetition Secured Parties, the DIP Agent or the DIP Lenders; and (ii) waive any and all defenses (including offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability of the Prepetition Loan Obligations, the Prepetition Liens, the DIP Obligations or the DIP Liens.

25.    **Indemnification.**   The Debtors shall indemnify, pay and hold harmless the DIP Agent and the DIP Lenders and their affiliates (and their respective directors, officers, employees, agents and advisors) against any loss, liability, cost or expense incurred in respect of the DIP Financing or the use or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party), including the costs and expenses incurred by the DIP Agent and each DIP Lender and in connection with the negotiation, documentation and administration of the DIP Financing (including fees and expenses of counsel and other advisors), and costs and expenses incurred by the DIP Agent and any DIP Lender in connection with any default in respect of the DIP Financing, any exercise of remedies in respect thereof or otherwise in connection with the DIP Financing.

26.    **Cash Management.**   None of Debtors may seek approval of any cash management system without the prior approval of the DIP Agent and the Prepetition Agent, and any order approving such cash management system shall be acceptable to the DIP Agent and the Prepetition Agent.

27.    **Equities of the Case**.   Subject to and effective upon entry of the Final Order and in light of the subordination of their liens to the Carve-Out, (a) the Prepetition Secured Parties

shall be entitled to all benefits of Bankruptcy Code section 552(b) and (b) the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to such parties with respect to the proceeds, product, offspring, or profits of any of their collateral.

       28.   **Collateral Rights**.

       (a)    The Debtors may not, outside of the ordinary course of business, sell, lease, transfer or otherwise dispose of their interest in Prepetition Collateral or DIP Collateral having a value in excess of $1 million in the aggregate during the Chapter 11 Cases, or seek authority of this Court to do any of the foregoing, without the prior written consent of the DIP Agent and the Prepetition Agent (and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders).  Without limiting the foregoing, in the event of any such sale, lease, transfer, license, or other disposition of property of any Debtor that constitutes Prepetition Collateral or DIP Collateral outside the ordinary course of business (to the extent permitted by the DIP Loan Documents, the Prepetition Loan Documents and this Interim Order), the Debtors are authorized and directed, without further notice or order of this Court, to immediately pay to the DIP Agent, for the benefit of itself and the DIP Lenders, until the DIP Obligations are indefeasibly paid in full and thereafter to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, 100% of the net cash proceeds resulting therefrom following receipt of such proceeds.

       (b)    In the event of any casualty, condemnation, or similar event with respect to property that constitutes DIP Collateral or Prepetition Collateral, the Debtors are authorized and directed to pay to the DIP Agent for the benefit of the DIP Agent and the DIP Lenders, until the DIP Obligations are indefeasibly paid in full and thereafter to the Prepetition Agent, for the

benefit of the Prepetition Secured Parties, 100% of any insurance proceeds, condemnation award, or similar payment following receipt of payment by the Debtors.

29.   **Credit Bid Rights**.  The DIP Agent and the DIP Lenders on account of the DIP Obligations and, to the extent that any bid by the Prepetition Secured Parties provides for the indefeasible payment of the DIP Obligations in full in cash, the Prepetition Secured Parties on account of the Prepetition Loan Obligations, shall have the right to "credit bid" during any sale of any of the DIP Collateral or the Prepetition Collateral whether such sale  occurs pursuant to Bankruptcy Code section 363, as part of any plan subject to confirmation under Bankruptcy Code section 1129, or under applicable state law with respect to any judicial foreclosure or foreclosure by the power of sale granted under Paragraph 14 above.

30.   **Reservation of Rights of Prepetition Secured Parties**.   Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly (i) the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of any of the Debtors, including the right to seek additional adequate protection, (ii) any of the rights of the Prepetition Secured Parties under the Bankruptcy Code or under applicable nonbankruptcy law, including (a) the right to request modification of the automatic stay, (b) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with or without expanded powers, or (c) to propose, subject to the provisions of Bankruptcy Code section 1121, a chapter 11 plan of reorganization or liquidation. Nothing contained herein shall be deemed a finding by the Court or an acknowledgement by the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Parties against any diminution in value of their interests in the

Prepetition Collateral.

31.    **No Waiver**.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

32.    **No Waiver by Failure to Seek Relief**.  The delay or failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the Prepetition Secured Parties.

33.    **Automatic Perfection of DIP Liens and Adequate Protection Liens**.

(a)  Subject to the provisions of Paragraphs 14 and 21 above, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien and similar instruments in any jurisdiction, or take possession of or control over, or take any other action, in each case to the extent necessary or reasonably required by the DIP Agent to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent on behalf of itself and the DIP Lenders or the Prepetition Agent on behalf of itself and the Prepetition Lenders shall, in their sole discretion, file such financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien and similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time and on the date of entry of this Interim Order, and without

limitation of the foregoing, the DIP Agent shall have the right to cause the DIP Liens to be foreclosed judicially or by power of sale under applicable state law and all other rights of a secured party under the applicable Uniform Commercial Code.  Upon the request of the DIP Agent, the Prepetition Secured Parties, without any further consent of any party, are authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens.

(b) A certified copy of this Interim Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien and similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

(c) The DIP Agent and the DIP Lenders shall be entitled, pursuant to paragraph 14, to the benefit of any financing statements, mortgages, deeds of trust, notices of lien and similar instruments filed by the Prepetition Agent on behalf of the Prepetition Secured Parties, and the possession of or control over any property of the Debtors by any Prepetition Secured Party, for purposes of validating and perfecting the liens and security interests granted to the DIP Agent and the DIP Lenders hereunder and placing third parties on notice of the encumbrance of the property subject to such liens and security interests, irrespective of whether the liens and security interests of the Prepetition Secured Parties are subsequently avoided, subordinated or invalidated.

34.    **Preservation of Rights Granted Under the Interim Order**.

(a) Other than as expressly permitted by the DIP Loan Documents, (i) no lien, deed of trust, or mortgage shall be granted or allowed on any property of the Debtors and no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Agent and the DIP Lenders or to the Prepetition Secured Parties shall be granted or allowed while any portion of the DIP Financing (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations or the Adequate Protection Obligations remain outstanding and (ii) the DIP Liens and the Adequate Protection Liens shall not be (A) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (B) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b) Unless all DIP Obligations shall have been indefeasibly paid in full and the Adequate Protection Obligations shall have been indefeasibly paid in full, the Debtors shall not seek, and it shall constitute a DIP Order Event of Default if: (i) any order is entered (a) modifying, reversing, staying or amending, in any material respect, or (b) revoking, rescinding or vacating the Interim Order or the Final Order without the express prior written consent of the DIP Lenders in their sole discretion; (ii) any Debtor shall attempt to vacate or modify the Interim Order or the Final Order over the objection of the DIP Lenders; (iii) any order is entered appointing an examiner with expanded powers in any of the Chapter 11 Cases (other than the Chapter 11 Cases solely relating to Non-Material Subsidiaries (as defined in the DIP Loan Agreement)) without the consent of the DIP Agent and the DIP Lenders, or (iv) any order is entered converting or dismissing any of the Chapter 11 Cases (other than the conversion or dismissal of any Chapter 11 Case solely relating to a Non-Material Subsidiary).

(c) If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the DIP Agent and the DIP Lenders and, as applicable, the Prepetition Secured Parties, pursuant to this Interim Order shall continue in full force and effect in accordance with the terms hereof and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

(d) If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or Prepetition Agent, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Agreement with respect to any DIP Obligations or Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties prior to the actual receipt of written notice by the DIP Agent and Prepetition Agent of the effective date of such reversal, stay, modification or vacatur shall be

governed in all respects by the original provisions of this Interim Order, and the DIP Agent, DIP Lenders, and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Loan Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(e) Except as expressly provided in this Interim Order or in the DIP Loan Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Agent and the DIP Lenders granted by the provisions of this Interim Order and the DIP Loan Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Interim Order and the DIP Loan Documents shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Agent and the DIP Lenders granted by the provisions of this Interim Order and the DIP Loan Documents shall continue in full force and effect.

35.    **Limitation on Use of DIP Financing Proceeds and Cash Collateral**. Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, Cash Collateral, Prepetition Collateral, DIP Collateral or the Carve-Out may be used for any of the following purposes (each, a "<u>Lender Claim</u>"): (a) object, contest or raise any

defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Loan Documents or the Prepetition Loan Documents, or the liens or claims granted under this Interim Order, the DIP Loan Documents or the Prepetition Loan Documents, (b) assert any Potential Claim and Defense, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Loan Documents, the Prepetition Loan Documents or this Interim Order, (d) assert or prosecute any action for preferences, fraudulent conveyances, other avoidance power claims or any other any claims, counterclaims or causes of action, objections, contests or defenses against the Prepetition Secured Parties or their affiliates, representatives, attorneys or advisors in connection with matters related to the Prepetition Loan Documents, the Prepetition Debt or the Prepetition Collateral or other Potential Claims and Defenses, or (e) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties hereunder or under the DIP Loan Documents or the Prepetition Loan Documents, in each of the foregoing cases without such party's prior written consent, provided that up to $50,000 in the aggregate may be used to reimburse any Committee for fees and out-of-pocket expenses incurred in connection with the investigation (including discovery proceedings) of the validity, perfection and/or priority of the liens securing the Prepetition Loan Agreement, and provided further that motions or proceedings by the Debtors to enforce the terms of this Interim Order or any provision of any DIP Document, or to prosecute any other right not limited, released or modified by or otherwise inconsistent with any provision of this Interim Order (including the stipulations and acknowledgements hereof) or any provision of any DIP Document, shall not be considered a Lender Claim.

36. **Effect of Stipulations on Third Parties**. Each finding, stipulation and acknowledgment contained in this Interim Order, including in Paragraphs 5 and 6 of this Interim Order, shall be binding upon the Debtors and any successor thereto (including any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances.

(a) Each finding, stipulation and acknowledgement contained in this Interim Order, including in Paragraphs 5 and 6 of this Interim Order, shall be binding upon all other parties in interest, including each Committee, except to the extent that (i) a party in interest has, subject to the limitations contained in this Interim Order, timely filed an adversary proceeding or contested matter asserting a Lender Claim with respect to such stipulation or admission by no later than the date that is the earliest of (A) 10 days before the first date scheduled for the confirmation hearing on the Plan and (B) 60 days (or such later date as has been agreed to, in writing, by the Prepetition Agent in its sole discretion) after the initial selection of counsel by the Committee, and (C) 75 days after the Petition Date in the event no Committee is appointed; and (ii) there is a final order in favor of the plaintiff sustaining any such Lender Claim, provided that, as to the Debtors, all Lender Claims and Potential Claims and Defenses are hereby irrevocably waived and relinquished as of the date hereof.

(b) The success of any particular Lender Claim shall not alter the binding effect on each party in interest of any stipulation or acknowledgement not subject to such Lender Claim. Except to the extent (but only to the extent) a timely filed adversary proceeding or contested matter asserting a Lender Claim is successful, (i) the Prepetition Debt shall constitute allowed claims, not subject to any disallowance, disgorgement, reduction, counterclaim, cross-claim, offset, setoff, subordination, recharacterization, defense, avoidance, or any other challenge of any kind or nature, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases,

(ii) the Prepetition Secured Parties' liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to reduction, counterclaim, cross-claim, defense, recharacterization, subordination, avoidance or any other challenge and (iii) the Prepetition Debt, the Prepetition Liens on the Prepetition Collateral and the Prepetition Secured Parties shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including any successor thereto (including any chapter 7 or 11 trustee appointed or elected for any of the Debtors), provided that the Debtors and all parties in interest reserve any and all rights as to the Make Whole Amount and Exit Fee.

(c) Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any Potential Claims and Defenses, Lender Claims or any cause of action belonging to the Debtors or their estates against the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or any other Released Party, including Lender Claims with respect to the Prepetition Loan Documents or the Prepetition Debt.

37.    **Priorities Among Prepetition Secured Parties**.  Notwithstanding anything to the contrary herein or in any other order of this Court, in determining the relative priorities and rights of the Prepetition Secured Parties (including the relative priorities and rights of the Prepetition Secured Parties with respect to the Adequate Protection Obligations granted hereunder), such priorities and rights shall continue to be governed by the Prepetition Loan Documents.

38.    **Administrative Agent**.  To the extent Colfin WLH Funding, LLC, in its role as Prepetition Agent under the Prepetition Loan Documents, is the secured party under any account

control agreements, is the mortgagee under any mortgage, is the beneficiary under any deed of trust, is listed as loss payee under the Debtors' insurance policies as required under the Prepetition Loan Documents or is the secured party under any other existing agreement, Colfin WLH Funding, LLC, in its role as DIP Agent under the DIP Loan Agreement, is also deemed to be the secured party under such account control agreements, the mortgagee under any mortgage, the beneficiary under any deed of trust, loss payee under the Debtors' insurance policies and the secured party under any other existing agreement and shall act in that capacity and distribute any proceeds recovered or received <u>first,</u> for the benefit of the DIP Lenders in accordance with the DIP Loan Agreement and <u>second,</u> subsequent to indefeasible payment in full of all DIP Obligations, for the benefit of the Prepetition Secured Parties under the Prepetition Loan Documents.

39.     **Interim Order Governs**.    In the event of any inconsistency between the provisions of this Interim Order and the DIP Loan Documents, the provisions of this Interim Order shall govern.

40.     **Binding Effect; Successors and Assigns**.    The DIP Loan Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Parties, any Committee appointed in the Chapter 11 Cases, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Parties and the Debtors and their respective successors and assigns, <u>provided, however,</u> that the DIP Agent and the DIP Lenders shall have no obligation to extend any financing to any chapter 7

trustee or chapter 11 trustee or any other party, except as otherwise provided in this Interim Order.

41. **Final Hearing Date**. The Final Hearing to consider the entry of the Final Order approving the relief sought in the Motion shall be held on _____, 2012 at __:__ _.m. (as the same may be adjourned or continued by this Court) before The Honorable _____, at the United States Bankruptcy Court for the District of Delaware.

42. **Adequate Notice**. The Debtors shall promptly mail copies of this Interim Order, proposed Final Order and notice of the Final Hearing to the Notice Parties, any known party effected by the terms of the Final Order, and any other party requesting notice after the entry of this Interim Order. Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with this Court and served so as to be actually received no later than five business (5) days prior to the Final Hearing by the following: (i) Pachulski, Stang, Ziehl & Jones, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn: Laura D. Jones, Esq., as counsel to the Debtors; (ii) Akin Gump Strauss Hauer & Feld LLP, 2029 Century Park East, Ste. 2400, Los Angeles, CA 90067, Attn: David P. Simonds, Esq., and Pepper Hamilton LLP, 1313 Market Street, P.O. Box 1709, Wilmington, DE 19899-1709, Attn: David B. Stratton, Esq., as counsel to the DIP Agent and to the Prepetition Agent; (iii) Milbank Tweed, Hadley & McCloy, 601 South Figueroa Street, 30th Floor, Los Angeles, CA 90017, Attn: Mark Shinderman, Esq., Neil Wertlieb, Esq., and Robert Shenfeld, Esq., as counsel to the Ad Hoc Noteholders Group; (iv) counsel to any Committee, and (v) the Office of the U.S. Trustee, J. 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19081 (Attn: _____ (_____@usdoj.gov)).

43.    **Retention of Jurisdiction**.  This Court shall retain jurisdiction overall all matters pertaining to the implementation, interpretation and enforcement of this Interim Order, including after any dismissal of any of the Chapter 11 Cases.

44.    **Rules of Construction**.  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Interim Order.  Any right or requirement in this Interim Order involving the direction, discretion, consent, acceptance or approval of any of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders shall be exercised in the sole and absolute discretion of such party.

45.    **Waiver of Requirement to File Proofs of Claim**.  Neither the DIP Agent, the DIP Lenders, nor any of the Prepetition Secured Parties shall be required to file proofs of claim with respect to any of the DIP Obligations or Prepetition Loan Obligations

Dated: _____, 2011
      Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

**William Lyon Homes**
**Cash Flow Forecast through March 18th, 2012 (Excluding Emergence)**
In $000s, unless otherwise stated or unit data

| Week Ending | Dec-25 | Jan-01 | Jan-08 | Jan-15 | Jan-22 | Jan-29 | Feb-05 | Feb-12 | Feb-19 | Feb-26 | Mar-04 | Mar-11 | Mar-18 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | |
| Units Closed | 0 | 12 | 9 | 11 | 6 | 9 | 3 | 6 | 11 | 5 | 2 | 2 | 2 | 78 |
| ASP | $0 | $304 | $532 | $299 | $199 | $195 | $205 | $283 | $265 | $193 | $230 | $230 | $230 | $285 |
| Homes | $0 | $3,642 | $4,787 | $3,287 | $1,191 | $1,757 | $616 | $1,701 | $2,913 | $964 | $461 | $461 | $461 | $22,240 |
| Land Sales | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Joint Venture Distributions | 0 | 0 | 50 | 0 | 0 | 0 | 50 | 0 | 0 | 0 | 0 | 0 | 0 | 100 |
| Project Fees | 59 | 10 | 10 | 10 | 19 | 98 | 383 | 264 | 25 | 0 | 106 | 106 | 106 | 1,196 |
| Total Receipts | 59 | 3,652 | 4,846 | 3,296 | 1,210 | 1,855 | 1,049 | 1,965 | 2,937 | 964 | 567 | 567 | 567 | 23,536 |
| **Disbursements** | | | | | | | | | | | | | | |
| Land Acquisitions, Fees, and SPE Cont. | (262) | 0 | (137) | 0 | (1,512) | 0 | (1,500) | (137) | 0 | (262) | 0 | 0 | (137) | (3,947) |
| Operating Disbursements | (8,579) | (4,083) | (5,034) | (1,208) | (1,857) | (1,183) | (2,486) | (1,609) | (2,288) | (1,612) | (2,647) | (2,114) | (2,647) | (37,347) |
| Professionals' Fees and G&A | (217) | (173) | (173) | (173) | (655) | (655) | (498) | (498) | (498) | (498) | (423) | (546) | (546) | (5,551) |
| Other Disbursements | (1,000) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (1,000) |
| Joint Venture Contributions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Operating Disbursements | (10,058) | (4,255) | (5,343) | (1,380) | (4,024) | (1,838) | (4,483) | (2,243) | (2,786) | (2,372) | (3,070) | (2,660) | (3,331) | (47,844) |
| Cash Flow Available for Debt Service | (9,999) | (604) | (497) | 1,916 | (2,814) | 17 | (3,434) | (279) | 152 | (1,408) | (2,503) | (2,093) | (2,763) | (24,308) |
| **Debt Service** | | | | | | | | | | | | | | |
| Interest (Colony) | 0 | 0 | (2,629) | 0 | 0 | 0 | (2,629) | 0 | 0 | 0 | (2,629) | 0 | 0 | (7,888) |
| Interest (Senior Notes) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Interest and Fees (DIP Facility) | (769) | 0 | 0 | 0 | 0 | (125) | 0 | 0 | 0 | (200) | 0 | 0 | 0 | (1,094) |
| Other Debt Payments [1] | (115) | (615) | (96) | 0 | (115) | 0 | (96) | 0 | 0 | 0 | (2,584) | 0 | 0 | (3,621) |
| Total Debt Service | (884) | (615) | (2,725) | 0 | (115) | (125) | (2,725) | 0 | 0 | (200) | (5,213) | 0 | 0 | (12,603) |
| Total Cash Flow | ($10,883) | ($1,219) | ($3,223) | $1,916 | ($2,929) | ($108) | ($6,160) | ($279) | $152 | ($1,608) | ($7,716) | ($2,093) | ($2,763) | ($36,912) |
| Beginning Book Cash Balance [2] | $7,700 | ($3,183) | ($4,402) | ($7,625) | ($5,709) | ($8,637) | ($8,745) | ($14,905) | ($15,184) | ($15,032) | ($16,639) | ($24,355) | ($26,448) | $7,700 |
| Plus: Total Cash Flow | (10,883) | (1,219) | (3,223) | 1,916 | (2,929) | (108) | (6,160) | (279) | 152 | (1,608) | (7,716) | (2,093) | (2,763) | (36,912) |
| Ending Book Cash Balance (Pre-DIP) | ($3,183) | ($4,402) | ($7,625) | ($5,709) | ($8,637) | ($8,745) | ($14,905) | ($15,184) | ($15,032) | ($16,639) | ($24,355) | ($26,448) | ($29,212) | ($29,212) |
| DIP Draws | $10,000 | $0 | $5,000 | $0 | $0 | $0 | $5,000 | $5,000 | $0 | $0 | $5,000 | $0 | $0 | |
| DIP Balance | $10,000 | $10,000 | $15,000 | $15,000 | $15,000 | $15,000 | $20,000 | $25,000 | $25,000 | $25,000 | $30,000 | $30,000 | $30,000 | |
| Book Cash Balance | $6,817 | $5,598 | $7,375 | $9,291 | $6,363 | $6,255 | $5,095 | $9,816 | $9,968 | $8,361 | $5,645 | $3,552 | $788 | |
| Total Liquidity Including DIP | $11,817 | $10,598 | $7,375 | $9,291 | $6,363 | $6,255 | $15,095 | $14,816 | $14,968 | $13,361 | $5,645 | $3,552 | $788 | |
| Est. Checks Outstanding (Float) | $2,950 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | |
| Bank Cash | $9,767 | $8,098 | $9,875 | $11,791 | $8,863 | $8,755 | $7,595 | $12,316 | $12,468 | $10,861 | $8,145 | $6,052 | $3,288 | |

[1] Upon the payoff of debt associated with the San Carlos project, pursuant to the Senior Secured Term Loan Agreement, the assets become collateral under the Colony term loan.

[2] Beginning Book Cash Balance of $7.7 million for the week ending 12/25/2011 is an estimate as of 12/16/2011, which consists of $2.5 million of estimated book cash, plus $5.2 million of escrow receivables for homes that were closed as of 12/16/2011.

**William Lyon Homes**
Covenant Summary through March 18th, 2012 (Excluding Emergence)
In $000s, unless otherwise stated or unit data

| Week Ending | Dec-25 | Jan-01 | Jan-08 | Jan-15 | Jan-22 | Jan-29 | Feb-05 | Feb-12 | Feb-19 | Feb-26 | Mar-04 | Mar-11 | Mar-18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Operating Cash Flow Covenant* | | | | | | | | | | | | | |
| Home Sale Receipts | $0 | $3,642 | $4,787 | $3,287 | $1,191 | $1,757 | $616 | $1,701 | $2,913 | $964 | $461 | $461 | $461 |
| Operating Disbursements | (8,579) | (4,083) | (5,034) | (1,208) | (1,857) | (1,183) | (2,486) | (1,609) | (2,288) | (1,612) | (2,647) | (2,114) | (2,647) |
| Operating Cash Flow | ($8,579) | ($441) | ($247) | $2,079 | ($665) | $574 | ($1,870) | $92 | $625 | ($648) | ($2,187) | ($1,653) | ($2,187) |
| Cumulative | (8,579) | (9,020) | (9,267) | (7,188) | (7,853) | (7,280) | (9,150) | (9,057) | (8,433) | (9,081) | (11,267) | (12,920) | (15,107) |
| Cushion (20% of Cumulative) | N/A | N/A | (1,853) | (1,438) | (1,571) | (1,456) | (1,830) | (1,811) | (1,687) | (1,816) | (2,253) | (2,584) | (3,021) |
| Cushion (Min. $1,500) | N/A | N/A | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) |
| Effective Operating Cushion | N/A | N/A | ($1,853) | ($1,500) | ($1,571) | ($1,500) | ($1,830) | ($1,811) | ($1,687) | ($1,816) | ($2,253) | ($2,584) | ($3,021) |
| Cumulative Allowable Operating Cash Flow Covenant | N/A | N/A | ($11,121) | ($8,688) | ($9,424) | ($8,780) | ($10,979) | ($10,869) | ($10,119) | ($10,897) | ($13,521) | ($15,504) | ($18,128) |
| *Professional and G&A Covenant* | | | | | | | | | | | | | |
| G&A | ($217) | ($173) | ($173) | ($173) | ($173) | ($173) | ($168) | ($168) | ($168) | ($168) | ($393) | ($393) | ($393) |
| Professional Fees | 0 | 0 | 0 | 0 | (483) | (483) | (330) | (330) | (330) | (330) | (454) | (454) | (454) |
| Professional and G&A Cash Flow | ($217) | ($173) | ($173) | ($173) | ($655) | ($655) | ($498) | ($498) | ($498) | ($498) | ($423) | ($546) | ($546) |
| Cumulative | (217) | (389) | (562) | (735) | (1,390) | (2,045) | (2,543) | (3,040) | (3,538) | (4,036) | (4,458) | (5,004) | (5,551) |
| Cushion (20% of Cumulative) | N/A | N/A | (112) | (147) | (278) | (409) | (509) | (608) | (708) | (807) | (892) | (1,001) | (1,110) |
| Cushion (Min. $750) | N/A | N/A | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) |
| Effective G&A/Prof. Cushion | N/A | N/A | ($750) | ($750) | ($750) | ($750) | ($750) | ($750) | ($750) | ($807) | ($892) | ($1,001) | ($1,110) |
| Cumulative Allowable G&A/Prof. Cash Flow Covenant | N/A | N/A | ($1,312) | ($1,485) | ($2,140) | ($2,795) | ($3,293) | ($3,790) | ($4,288) | ($4,843) | ($5,350) | ($6,005) | ($6,661) |
| *Estimated Other Disbursements* | | | | | | | | | | | | | |
| Other Disbursements per Forecast | ($1,000) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cumulative | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) |
| Cushion (Max. $5,000) | ($4,000) | ($4,000) | ($4,000) | ($4,000) | ($4,000) | ($4,000) | ($4,000) | ($4,000) | ($4,000) | ($4,000) | ($4,000) | ($4,000) | ($4,000) |
| Cumulative Allowable Other Disbursements | ($5,000) | ($5,000) | ($5,000) | ($5,000) | ($5,000) | ($5,000) | ($5,000) | ($5,000) | ($5,000) | ($5,000) | ($5,000) | ($5,000) | ($5,000) |
| *Land Acquisitions, JVs, and Related* | | | | | | | | | | | | | |
| Land Acquisitions, Fees, and SPE Cont. | ($262) | $0 | ($137) | $0 | ($1,512) | $0 | ($1,500) | ($137) | $0 | ($262) | $0 | $0 | ($137) |
| Joint Venture Contributions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Cumulative | (262) | (262) | (399) | (399) | (1,911) | (1,911) | (3,411) | (3,548) | (3,548) | (3,810) | (3,810) | (3,810) | (3,947) |
| Cushion (None) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cumulative Allowable Land Acq., JVs, and Related Covenant | ($262) | ($262) | ($399) | ($399) | ($1,911) | ($1,911) | ($3,411) | ($3,548) | ($3,548) | ($3,810) | ($3,810) | ($3,810) | ($3,947) |

**William Lyon Homes**
**Covenant Summary through March 18th, 2012 (Excluding Emergence)**
**In $000s, unless otherwise stated or unit data**

Estimated Professionals Fee Payments by Week for 13 Weeks Ended March 18, 2012

| Week Ending | Dec-25 | Jan-01 | Jan-08 | Jan-15 | Jan-22 | Jan-29 | Feb-05 | Feb-12 | Feb-19 | Feb-26 | Mar-04 | Mar-11 | Mar-18 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Incurred (Carve Out Provision)** | | | | | | | | | | | | | | |
| Legal - Pachulski | $62.5 | $62.5 | $50.0 | $50.0 | $50.0 | $50.0 | $50.0 | $100.0 | $100.0 | $100.0 | $100.0 | $62.5 | $62.5 | $900.0 |
| Legal - Irell | 62.5 | 62.5 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 62.5 | 62.5 | 62.5 | 62.5 | 62.5 | 62.5 | 750.0 |
| Financial Advisors - A&M | 150.0 | 150.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 87.5 | 87.5 | 87.5 | 87.5 | 62.5 | 62.5 | 1,025.0 |
| BOD Fees | 10.0 | 10.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 120.0 |
| Milbank / Local - Noteholder Legal | 81.3 | 81.3 | 65.0 | 65.0 | 65.0 | 65.0 | 65.0 | 75.0 | 75.0 | 75.0 | 75.0 | 62.5 | 62.5 | 912.5 |
| HL - Noteholder FA | 33.8 | 33.8 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 31.3 | 31.3 | 31.3 | 31.3 | 31.3 | 31.3 | 390.0 |
| Akin - Colony Legal | 106.3 | 106.3 | 85.0 | 85.0 | 85.0 | 85.0 | 85.0 | 106.3 | 106.3 | 106.3 | 106.3 | 106.3 | 106.3 | 1,275.0 |
| Trustee Fees | 6.3 | 6.3 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 6.3 | 6.3 | 6.3 | 6.3 | 6.3 | 6.3 | 75.0 |
| Unidentified Professional Fees | 25.0 | 25.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 300.0 |
| Total Incurred (Carve Out) | $537.5 | $537.5 | $360.0 | $360.0 | $360.0 | $360.0 | $360.0 | $503.8 | $503.8 | $503.8 | $503.8 | $428.8 | $428.8 | $5,747.5 |
| Cushioned Carve Out [1] | | | | | | | | | | | | | | $6,897.0 |
| | | | | | | | | | | | | | | |
| **Paid** | | | | | | | | | | | | | | |
| Legal - Pachulski | $0.0 | $0.0 | $0.0 | $0.0 | $50.0 | $50.0 | $40.0 | $40.0 | $40.0 | $40.0 | $40.0 | $80.0 | $80.0 | $460.0 |
| Legal - Irell | 0.0 | 0.0 | 0.0 | 0.0 | 50.0 | 50.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 50.0 | 50.0 | 400.0 |
| Financial Advisors - A&M | 0.0 | 0.0 | 0.0 | 0.0 | 120.0 | 120.0 | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 70.0 | 70.0 | 580.0 |
| BOD Fees | 0.0 | 0.0 | 0.0 | 0.0 | 10.0 | 10.0 | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | 10.0 | 10.0 | 80.0 |
| Milbank / Local - Noteholder Legal | 0.0 | 0.0 | 0.0 | 0.0 | 81.3 | 81.3 | 65.0 | 65.0 | 65.0 | 65.0 | 65.0 | 75.0 | 75.0 | 637.5 |
| HL - Noteholder FA | 0.0 | 0.0 | 0.0 | 0.0 | 33.8 | 33.8 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 31.3 | 31.3 | 265.0 |
| Akin - Colony Legal | 0.0 | 0.0 | 0.0 | 0.0 | 106.3 | 106.3 | 85.0 | 85.0 | 85.0 | 85.0 | 85.0 | 106.3 | 106.3 | 850.0 |
| Trustee Fees | 0.0 | 0.0 | 0.0 | 0.0 | 6.3 | 6.3 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 6.3 | 6.3 | 50.0 |
| Unidentified Professional Fees | 0.0 | 0.0 | 0.0 | 0.0 | 25.0 | 25.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 25.0 | 25.0 | 200.0 |
| Total Paid [2] | $0.0 | $0.0 | $0.0 | $0.0 | $482.5 | $482.5 | $330.0 | $330.0 | $330.0 | $330.0 | $330.0 | $453.8 | $453.8 | $3,522.5 |
| | | | | | | | | | | | | | | |
| **Professional Fee Rollforward** | | | | | | | | | | | | | | |
| Beginning Balance | $0.0 | $537.5 | $1,075.0 | $1,435.0 | $1,795.0 | $1,672.5 | $1,550.0 | $1,580.0 | $1,753.8 | $1,927.5 | $2,101.3 | $2,275.0 | $2,250.0 | $0.0 |
| Add: Fees Incurred | 537.5 | 537.5 | 360.0 | 360.0 | 360.0 | 360.0 | 360.0 | 503.8 | 503.8 | 503.8 | 503.8 | 428.8 | 428.8 | 5,747.5 |
| Less: Fees Paid | 0.0 | 0.0 | 0.0 | 0.0 | (482.5) | (482.5) | (330.0) | (330.0) | (330.0) | (330.0) | (330.0) | (453.8) | (453.8) | (3,522.5) |
| Ending Balance | $537.5 | $1,075.0 | $1,435.0 | $1,795.0 | $1,672.5 | $1,550.0 | $1,580.0 | $1,753.8 | $1,927.5 | $2,101.3 | $2,275.0 | $2,250.0 | $2,225.0 | $2,225.0 |

[1]  The amounts referenced above for estate professionals constitute the Carve-Out referenced in the DIP Order.

[2]  To the extent payments to a professional are not made as shown, there shall be no reduction to the Carve-Out as to such professional.