IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WILLIAM LYON HOMES, *et al.*,[1] | ) | Case No. 11-14019 (____) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**APPLICATION OF DEBTORS PURSUANT TO 28 U.S.C. § 156(c) AND
LOCAL RULE 2002-1(f) FOR AN ORDER AUTHORIZING THE RETENTION
OF KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS, NOTICING,
BALLOTING AND SUBSCRIPTION AGENT FOR THE DEBTORS**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by their undersigned proposed counsel, hereby submit this application (the "Application") for entry of an order (the "Order"), substantially in the form attached hereto, pursuant to 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the employment and retention of Kurtzman Carson Consultants LLC ("KCC") as noticing, claims, balloting and subscription agent (the "Claims Agent") in connection with these chapter 11 cases. In support of this Application, the Debtors

---

[1] The debtors and debtors in possession in these cases and the last four digits of their respective taxpayer identification numbers are as follows: William Lyon Homes (4902); William Lyon Homes, Inc. (3855); Mountain Falls Golf Course, LLC (3291); Mountain Falls, LLC (9631); Circle G at the Church Farm North Joint Venture, LLC (1322); Presley CMR, Inc. (3862); William Lyon Southwest, Inc. (8474); Sycamore CC, Inc. (1307); PH-LP Ventures (9119); PH Ventures – San Jose (5089); HSP, Inc. (6045); PH Rielly Ventures (7710); Lyon Waterfront, LLC (1928); Lyon East Garrison Company I, LLC (5692); WLH Enterprises (3333); Duxford Financial, Inc. (0824); California Equity Funding, Inc. (0016); Laguna Big Horn, LLC (2590); Presley Homes (5035); Cerro Plata Associates, LLC (5090); Whitney Ranch Village 5, LLC (5256); and Duxford Insurance Services, LLC (8232). The Debtors' mailing address is 4490 Von Karman Avenue, Newport Beach, CA 92660.

rely upon the Declaration of Albert Kass (the "<u>Kass Declaration</u>") attached hereto as <u>Exhibit A</u>. In further support of this Application, the Debtors respectfully represent as follows:

### Jurisdiction And Venue

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

2. The statutory bases for the relief sought in this Application are 28 U.S.C. § 156(c), 11 U.S.C. 105(a), Bankruptcy Rule 2002, and Local Rules 2002-1(f) and 9013-1(m).

### Background

3. On the date hereof (the "<u>Petition Date</u>"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 the Bankruptcy Code. Concurrently with the filing of this Application, the Debtors have requested joint administration of the above captioned cases.

4. The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request has been made for the appointment of a trustee or an examiner in this case, and no official committee has yet been appointed by the Office of the United States Trustee.

6. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, are set

forth in detail in the *Declaration of Matthew R. Zaist, Executive Vice President of William Lyon Homes, in Support of First Day Motions* (the "Zaist Declaration") filed concurrently herewith and incorporated herein by reference. The Debtors are homebuilders with operations in Northern and Southern California, Arizona and Nevada.

7.   On the Petition Date, the Debtors filed the Prepackaged Joint Plan of Reorganization for William Lyon Homes, et al. dated November 17, 2011 (the "Plan") and related disclosure statement (the "Disclosure Statement"). The Plan represents a significant milestone for the Company and embodies the agreement reached with their major debt holders. If confirmed, the Plan will reduce the Company's leverage by approximately $182 million in funded note indebtedness, restructure the Company's primary secured credit facility, and provide for new equity capital investments of $85 million in the aggregate. Based on a prepetition solicitation of the Plan, the Plan has been overwhelmingly approved by those voting classes of creditors who are impaired under the Plan – (i) the Prepetition Secured Term Loan Agreement; and (ii) the Old Notes. Significantly, other than the holders of Prepetition Secured Term Loan Agreement Claims, Old Notes Claims, and equity holders of DE Lyon (whose interests are being cancelled), the Plan provides for the Debtors' remaining creditors to be unimpaired, which may not have been possible absent the agreements reached under the Plan. The Plan will allow the Company to improve its liquidity position from its operations and be well-positioned going forward.

**Relief Requested**

8.   By this Application, the Debtors seek an Order pursuant to section 156(c) of title 28 of the United States Code, Section 105(a) of the Bankruptcy Code and Local

Rule 2002-1(f) authorizing and approving the retention and employment of KCC as Claims, Noticing, Balloting and Subscription Agent to, among other things, (a) serve as the Court's notice agent to mail notices to the estates' creditors and parties in interest; (b) provide computerized claims, claims objections and balloting database services; (c) provide expertise and consultation and assistance in claim and ballot process and other relevant administrative services; and (d) provide necessary subscription services in connection with the Rights Offering (defined below), in accordance with the terms and conditions set forth in the Services Agreement dated October 17, 2011 (the "Services Agreement") attached hereto as <u>Exhibit B</u> and incorporated herein by this reference.

### Basis For Relief

9.  Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of the Court, authorizes the Court to use facilities other than those of the office of the clerk of the bankruptcy court (the "<u>Clerk's Office</u>") for the administration of bankruptcy cases.  Section 156(c) provides that:

> Any court may utilize facilities or services, either on or off the
> court's premises, which pertain to the provision of notices,
> dockets, calendars, and other administrative information to parties
> in cases filed under the provisions of title 11, United States Code,
> where the costs of such facilities or services are paid for out of the
> assets of the estate and are not charged to the United States.

28 U.S.C. §156(c).

10.  Section 105(a) of the Bankruptcy Code provides that "[the] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

11. In addition, Local Rule 2002-1(f) provides, in relevant part, as follows:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than 200 creditors or parties in interest, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter. The notice and/or claims clerk shall perform the below functions:
>
> i. Serve the following notices: (a) 341 Notice (Notice of Commencement of Case); (b) Notice of Claims Bar Date in Chapter 11 cases; (c) Objections to Claims and Transfers of Claims; (d) Notice of Hearing on confirmation of Plan/Disclosure Statement; (e) Notice of Hearing on motions filed by United States Trustee; and (f) Notice of Transfer of Claim;
>
> ii. Within seven (7) days of mailing, file with the Court, a copy of the notice served with a Certificate of Service attached, indicating the name and complete address of each party served;
>
> iii. Maintain copies of all proofs of claims and proofs of interest filed in the case;
>
> iv. Maintain the official claims register and record all Transfers of Claims and make changes to the creditor matrix after the objection period has expired. The claims clerk shall also record any order entered by the Court which may affect the claim by making a notation on the claims register and monitor the Court's docket for any claims related pleading filed and make necessary notations on the claims register. No claim or claim information should be deleted for any reason;
>
> v. Maintain a separate claims register for each debtor in jointly administered cases;
>
> vi. File a quarterly updated claims register with the Court in alphabetical and numerical order. If there has been no claims activity, the claims clerk may file a Certification of No Claim Activity;
>
> vii. Maintain an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or interest and/or request for notices in the case and provide such list to the Court or any interested party upon request (within forty-eight (48) hours);
>
> viii. Allow public access to claims and the claims register at no charge; and
>
> ix. Within fourteen (14) days of entry of an Order converting a case or within thirty (30) days of entry of a Final Decree, forward to the Clerk (a) all claims and updated claims register, (b) a CD of all imaged claims; and 9c) and excel spreadsheet containing all claims information along with an

updated mailing list. The claims register and mailing list should be provided in both paper and on disc and in alphabetical and numerical order. The mailing list disc should be in .txt format.

Del. Bankr. L.R. 2002-1(f).

12. Accordingly, the Court is empowered pursuant to 28 U.S.C. § 156(c) to utilize outside agents and facilities for notice, claims, and balloting purposes, provided the Debtors' estates pay the cost of such services. The number of creditors in these cases exceeds 200. Thus, pursuant to Local Rule 2002-1(f), and for the reasons set forth herein, the Debtors believe it is necessary and in the best interests of their creditors and estates to retain KCC in order to assume full responsibility for, among other things, the distribution of notices and proof of claim forms and the maintenance, processing, and docketing of all proofs of claim filed in the Debtors' chapter 11 cases. In addition, the Debtors will require KCC's services for claims and subscription services in connection with, among other things, the plan, disclosure statement and the rights offering related thereto (the "Rights Offering").

13. Courts in this jurisdiction and other jurisdictions have approved similar relief in other chapter 11 cases. *See, e.g., In re NewPage Corporation, et al.*, Case No. 11-12804 (Bankr. D. Del. Sept. 7, 2011); *In re DSI Holdings, Inc., et al.*, Case No. 11-11941 (Bankr. D. Del. June 26, 2011); *In re Nebraska Book Co., Inc., et al.*, Case No. 11-12005 (Bankr. D. Del. June 27, 2011); *In re Caribe Media, Inc., et al.*, Case No. 11-11387 (Bankr. D. Del. May 3, 2011); *In re Barnes Bay Development, Ltd., et al.*, Case No. 11-10792 (Bankr. D. Del. March 17, 2011); *In re New Stream Secured Capital, Inc., et al.*, Case No. 11-10753 (Bankr. D. Del. March 13, 2011); *In re Ultimate Acquisition Partners, LP*, Case No. 11-10245 (Bankr. D. Del. January 26, 2011); *In re Javo Beverage Co., Inc.*, Case No. 11-10212 (Bankr.

D. Del. January 24, 2011); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (Bankr. D. Del. January 19, 2011); *In re Constar Int'l Inc.*, Case No. 11-10109 (Bankr. D. Del. January 11, 2011).

### **Qualifications Of KCC**

14. KCC specializes in providing comprehensive chapter 11 administrative services, including noticing, claims processing, balloting, and other related services critical to the effective administration of chapter 11 cases. KCC has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing, claims processing and balloting associated with chapter 11 cases to ensure the orderly and fair treatment of creditors, equity holders, and all other parties in interest. Moreover, KCC has experience working with, and will continue to work with, the Clerk's Office to ensure that the services provided conform with all of the Court's procedures, the Local Bankruptcy Rules, and the provisions of any orders entered by this Court.

15. KCC also is familiar with the necessary processes involved in administering the Rights Offering. KCC has extensive domestic and international securities expertise and KCC has administered complex chapter 11 engagements involving publicly traded securities.

16. The Debtors' estates and their creditors will benefit from KCC's retention in that KCC has developed efficient and cost-effective methods to provide the services required herein. KCC is equipped to handle the volume of mailings involved in properly sending the required notices to and processing the claims of creditors in these chapter 11 cases. KCC is one of the leading chapter 11 administrators, with experience in noticing,

claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases. KCC has substantial experience in matters of this size and complexity, and has acted as the official noticing and claims agent in many large bankruptcy cases pending in this and other districts. *See, e.g., In re NewPage Corporation, et al.*, Case No. 11-12804 (Bankr. D. Del. Sept. 7, 2011); *In re DSI Holdings, Inc., et al.*, Case No. 11-11941 (Bankr. D. Del. June 26, 2011); *In re Nebraska Book Co., Inc., et al.*, Case No. 11-12005 (Bankr. D. Del. June 27, 2011); *In re Caribe Media, Inc., et al.*, Case No. 11-11387 (Bankr. D. Del. May 3, 2011); *In re Barnes Bay Development, Ltd., et al.*, Case No. 11-10792 (Bankr. D. Del. March 17, 2011); *In re New Stream Secured Capital, Inc., et al.*, Case No. 11-10753 (Bankr. D. Del. March 13, 2011); *In re Ultimate Acquisition Partners, LP*, Case No. 11-10245 (Bankr. D. Del. January 26, 2011); *In re Javo Beverage Co., Inc.*, Case No. 11-10212 (Bankr. D. Del. January 24, 2011); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (Bankr. D. Del. January 19, 2011); *In re Constar Int'l Inc.*, Case No. 11-10109 (Bankr. D. Del. January 11, 2011). KCC will follow procedures that conform to applicable guidelines promulgated by the Clerk of the Court and the Judicial Conference, and as may be entered by Court order.

### Services To Be Provided

17.     Subject to the Court's approval, KCC will provide the Debtors with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders. Specifically, the Debtors seek to engage KCC to provide certain noticing, claims processing, balloting and subscription administration services including, without limitation:

a. Preparing and serving required notices in the chapter 11 cases, including: (i) notice of the commencement of the chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a); (ii) a notice of the claims bar date; (iii) notices of objections to claims and objections to transfers of claims; (iv) notices of hearings on motions filed by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (v) notices of transfers of claims; (vi) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization; and (vii) such other miscellaneous notices as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases;

b. Within seven days after the mailing of a particular notice, filing with the Court a copy of the notice served with a certificate of service attached indicating the name and complete address of each party served;

c. Receiving, examining, and maintaining copies of all proofs of claim and proofs of interest filed in the chapter 11 cases;

d. Maintaining official claims registers in the chapter 11 cases by docketing all proofs of claim and proofs of interest in a claims database that includes the following information for each such claim or interest asserted: (i) the name and address of the claimant or interest holder and any agent thereof, if the proof of claim or proof of interest was filed by an agent; (ii) the date the proof of claim or proof of interest was received by KCC and/or the Court; (iii) the claim number assigned to the proof of claim or proof of interest; (iv) the asserted amount and classification of the claim; and (v) the applicable Debtor against which the claim or interest is asserted;

e. Recording all transfers of claims pursuant to Bankruptcy Rule 3001(e);

f. Revising the creditor matrix after the objection period expires;

g. Recording any order entered by the Court which may affect a claim by making a notation on the claims register;

h. Monitoring the date the proof of claim or proof of interest was received by KCC and/or the Court;

i. Maintaining a separate claims register for each debtor if the chapter 11 cases are jointly administered;

j. Filing a quarterly updated claims register with the Court in alphabetical and numerical order. If there was no claims activity, a certification of no claim activity may be filed;

k. Maintaining an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or proofs of interest and/or request for notices in the case and providing such list to the Court or any interested party upon request (within 48 hours);

- 9 -

l.  Providing access to the public for examination of claims and the claims register at no charge;

m.  Forwarding to the Clerk (a) all claims, an updated claims register and an updated mailing list, (b) a CD of all imaged claims, and (c) an excel spreadsheet containing all claims information within 14 days of entry of an order converting a case or within 30 days of entry of a final decree. The claims register and mailing list will be provided in both paper and on disc and in alphabetical and numerical order. The mailing list disc will be in .txt format;

n.  Implementing necessary security measures to ensure the completeness and integrity of the claims registers;

o.  Complying with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements;

p.  Providing temporary employees to process claims as necessary;

q.  Promptly complying with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe; and

r.  Providing such other claims processing, noticing, and administrative services as may be requested from time to time by the Debtors.

18.  In addition to the foregoing, KCC will assist with, among other things: (a) maintaining and updating the master mailing lists of creditors; (b) to the extent necessary, gathering data in conjunction with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs; (c) tracking and administration of claims; and (d) performing other administrative tasks pertaining to the administration of the chapter 11 cases, as may be requested by the Debtors or the Clerk's Office.

**Compensation**

19.  The Debtors request authority, without further order of the Court, to compensate and reimburse KCC in accordance with the terms of that certain Services Agreement for all services rendered and expenses incurred in connection with these chapter 11 cases, upon submission of invoices to the Debtors, the office of the United States Trustee and

counsel to any official committee appointed in these cases (collectively, the "Notice Parties") summarizing in reasonable detail the services rendered and expenses incurred in connection with services provided by KCC to the Debtors. In the case of a dispute regarding the invoice amount, the Notice Parties will give written notice to KCC and the Debtors within ten (10) days of receipt of the invoice. In such event, the Debtors will remit to KCC only the undisputed portion of the invoice and, if applicable, will pay the remainder to KCC upon the resolution of the disputed portion, ad mandated by this Court. The Debtors believe that the compensation rates and procedures are reasonable and appropriate for services of this nature and comparable to those charged by other providers of similar services. In an effort to reduce the administrative expenses related to the services to be provided by KCC, the Debtors request authority of this Court to pay KCC's fees and expenses without the necessity of filing formal fee applications. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the Debtors hereby request that the fees to be charged by KCC, together with its necessary and actual expenses, be allowed as administrative expenses of the Debtors' estates.

20. KCC will comply with all requests of the Clerk's Office and follow the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

## KCC's Disinterestedness

21. To the best of the Debtors' knowledge, and as disclosed in the Kass Declaration, KCC (a) is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code, except that KCC was employed by the Debtors prior to the Petition Date as

allowed by Section 1107(b) of the Bankruptcy Code, and (b) does not hold or represent an interest materially adverse to the Debtors' estates.

22.     The Kass Declaration represents that, to the best of KCC's knowledge, KCC is not materially connected with the Debtors, their creditors, other parties-in-interest, the United States Trustee, or any person employed by the Office of the United States Trustee, and that to the best of KCC's knowledge, after due inquiry, KCC does not, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, hold or represent any interest materially adverse to the Debtors, their estates, or any class of creditors or equity interest holders with respect to the matters upon which it is to be engaged.

23.     KCC is not a creditor of the Debtors.

24.     Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to file promptly a supplemental affidavit.

25.     The Debtors have been informed that, KCC will not share with any person or firm the compensation to be paid for professional services rendered in these cases, except as among partners and employees of KCC.

26.     In connection with its retention as notice and claims agent, KCC represents, among other things, that:

    a. KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the notice and claims agent in these chapter 11 cases;

    b. By accepting employment in these chapter 11 cases, KCC waives any rights to receive compensation from the United States government in its capacity as the notice and claims agent in these chapter 11 cases;

    c. In its capacity as the notice and claims agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States; and

    d. KCC will not employ any past or present employees of the Debtors in connection with its work as the notice and claims agent in these chapter 11 cases.

27. For the reasons set forth herein, the Debtors believe that the employment of KCC to render the types of services requested herein, are necessary, appropriate and in the best interests of the Debtors' estates. Accordingly, by this Application, the Debtors request authority to employ and retain the KCC on the terms and conditions set forth herein and in that Services Agreement attached hereto.

### Notice

28. Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Prepetition Secured Lenders and proposed DIP Lender; (iii) counsel to the Ad Hoc Noteholders Group; and (iv) counsel to the Backstop Investors. Following the first day hearing in this case, this Application will be served on (a) creditors holding the thirty largest unsecured claims against the Debtors on a consolidated basis, or their legal counsel (if known) and (b) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

29. No prior request for the relief sought in this Application has been made to this or any other Court.

DOCS_DE:175796.1 93949-001

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto: (a) authorizing the Debtors to retain and employ KCC as notice, claims processing, balloting, and subscription agent and (b) granting such other and further relief as this Court deems just and proper.

Dated: December 19, 2011

*[signature]*

Matthew R. Zaist
Executive Vice President
William Lyon Homes