applicable securities laws) because acquired in a private placement under section 4(2) of the Securities Act, or (ii) could otherwise reasonably be deemed to be an "underwriter" or "affiliate" (as such terms are used within the meaning of applicable securities laws) of Parent, and (b) who requests in writing that Parent execute such agreement. In connection with the distribution of New Second Lien Notes or New Capital Stock to current or former employees of the Debtors, Parent may take whatever actions are necessary to comply with applicable federal, state, local and international tax withholding obligations, including withholding from distributions a portion of the New Capital Stock and selling such securities to satisfy tax withholding obligations including, without limitation, income, social security and Medicare taxes.

## 10.    Substantive Consolidation for Plan Purposes

The Plan serves as a motion by the Debtors seeking entry, pursuant to section 105 of the Bankruptcy Code, of an order authorizing, on the Effective Date, the substantive consolidation of the Estates of all of the Debtors for purposes of classifying and treating all Claims under the Plan, including for voting, confirmation, and distribution purposes only. Substantive consolidation will not (i) alter the state of incorporation of any Debtor for purposes of determining applicable law of any of the Causes of Action, (ii) alter or impair the legal and equitable rights of the Debtors to enforce any of the Causes of Action, or (iii) otherwise impair, release, discharge, extinguish or affect any of the Causes of Action or issues raised as a part thereof.

If substantive consolidation is ordered, then on and after the Effective Date, all Assets and liabilities of the Debtors shall be treated as though they were merged into a single estate for purposes of treatment of and distributions on Claims. All duplicative Claims (identical in both amount and subject matter) Filed against more than one of the Debtors shall automatically be expunged so that only one Claim survives against the consolidated Debtors. All guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors. Any alleged defaults under any applicable agreement with the Debtors arising from substantive consolidation under this Plan shall be deemed cured as of the Effective Date.

## 11.    Release of Liens, Claims and Equity Interests

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estates will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity except for the Liens of the Prepetition Indenture Trustee on distributions to holders of Class 7 claims as provided in the Prepetition Indentures. Any Entity holding such Liens or interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors.

## 12.    Certificate of Incorporation and Bylaws

The Amended Organizational Documents shall amend or succeed the certificates or articles of incorporation, by-laws, membership agreements, partnership agreements and other organizational documents of the Debtors to satisfy the provisions of the Plan and the Bankruptcy Code, and will (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy

Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; (ii) authorize the issuance of New Capital Stock in an amount not less than the amount necessary to permit the distributions thereof required or contemplated by the Plan; (iii) to the extent necessary or appropriate, include restrictions on the Transfer of New Capital Stock; and (iv) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein. After the Effective Date, the Reorganized Debtors may amend and restate their certificates or articles of incorporation and by-laws, and other applicable organizational documents, as permitted by applicable law.

### 13.    Directors and Officers of Reorganized Parent

The New Board will initially be comprised of up to seven (7) directors, who will initially be appointed as follows: (i) one director appointed by the Requisite Holders of the Class A Common Shares, (ii) two directors, including the Chairman of the Board, appointed by the Requisite Holders of the Class B Common Shares, (iii) two directors appointed by the Requisite Holders of the Class C Common Shares and Preferred Shares voting as a class, and (iv) initially, two incumbent independent directors who are satisfactory to the holders of (a) 66 2/3% of the Class A Common Shares, (b) a majority of the Class B Common Shares and (c) a majority of the Preferred Stock and the Class C Common Shares voting as a class. Thereafter, the appointment of one new independent director will be subject to the approval of the holders of (i) 66 2/3% of the Class A Common Shares, (ii) a majority of the Class B Common Shares and (iii) the Class C Common Shares and Preferred Shares (with the Class C Shares and the Preferred Shares voting together). The other new independent director will be appointed by the holders of a majority of the Class C Common Shares and the Preferred Shares, voting together.

As of the Effective Date, the initial officers of the Reorganized Debtors will be the officers of the Debtors existing immediately prior to the Effective Date and the existing directors of the Reorganized Debtors other than Reorganized Parent will be the directors of such Debtors immediately prior to the Effective Date.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, prior to the Confirmation Hearing, the identity and affiliations of any Person proposed to serve on the initial board of directors or as an officer of the Reorganized Debtors, and, to the extent such Person is an insider other than by virtue of being a director or officer, the nature of any compensation for such Person. Each such director and each officer will serve from and after the Effective Date pursuant to applicable law and the terms of the Amended Organizational Documents and the other constituent and organizational documents of the Reorganized Debtors. The existing board of directors of Parent will be deemed to have resigned on and as of the Effective Date, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

### 14.    Corporate Action

Each of the Debtors and the Reorganized Debtors, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the Debtors or the

- 68 -

Reorganized Debtors and as applicable or by any other Person (except for those expressly required pursuant to the Plan).

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors or members of any Debtor (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, directors, managers or partners of such Debtors, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in the Plan involving the legal or corporate structure of any Debtor or any Reorganized Debtors, as applicable, and any legal or corporate action required by any Debtor or any Reorganized Debtor as applicable, in connection with the Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of any Debtor or any Reorganized Debtors, as applicable, or by any other Person. On the Effective Date, the appropriate officers of each Debtor and each Reorganized Debtors, as applicable, are authorized to issue, execute, and deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtor and each Reorganized Debtors, as applicable, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The secretary and any assistant secretary of each Debtor and each Reorganized Debtor as applicable, will be authorized to certify or attest to any of the foregoing actions.

### 15.    Cancellation of Notes, Certificates and Instruments

On the Effective Date, all notes, stock, instruments, certificates, agreements and other documents evidencing the DIP Facility Claims, Project Loan Claims, Old Notes Claims, and the Parent Equity Interests will be canceled, and the obligations of the Debtors thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.

On the Effective Date, except to the extent otherwise provided herein, the Prepetition Indentures will be deemed to be canceled, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code, and the obligations of the Debtors thereunder will be fully released, terminated, extinguished and discharged. The Prepetition Indentures will continue in effect solely for the purposes of: (1) allowing Holders of the Old Notes Claims to receive distributions under the Plan; and (2) allowing and preserving the rights of the Prepetition Indenture Trustee to (a) make distributions in satisfaction of Allowed Old Notes Claims, (b) exercise its charging liens against any such distributions, and (c) seek compensation and reimbursement for any fees, expenses (including attorney's fees) or indemnity to the extent permitted by the Prepetition Indentures. Upon completion of all such distributions, the Old Notes and the Prepetition Indentures will terminate completely. From and after the Effective Date, the Prepetition Indenture Trustee will have no duties or obligations under the Prepetition Indentures other than to make distributions. As of the Effective Date, the Old Notes will be deemed surrendered to the Prepetition Indenture Trustee in accordance with the terms of the Prepetition Indentures. All surrendered and canceled Old Notes held by the Prepetition Indenture Trustee will be disposed of in accordance with the applicable terms and conditions of the Prepetition Indenture.

16.     **Plan Supplement, Other Documents and Orders and Consents Required Under Noteholders RSA, Colony RSA and the Backstop Commitment Agreement**

So long as the Noteholders RSA, the Colony RSA, or the Backstop Commitment Agreement, as applicable, have not been terminated, the documents to be Filed as part of the Plan Supplement and the other documents and orders referenced herein, or otherwise to be executed in connection with the transactions contemplated hereunder, shall be subject to the consents and the approval rights, as applicable, of (a) the Prepetition Agent and the Consenting Lenders as set forth in the Colony RSA, (b) the Consenting Noteholders and the Requisite Noteholders as set forth in the Noteholders RSA and (c) the Backstop Investors as set forth in the Backstop Commitment Agreement. To the extent that there is any inconsistency between the Colony RSA, the Noteholders RSA, or the Backstop Commitment Agreement, on the one hand, and the Plan, on the other hand, as to such consents and the approval rights and the Colony RSA, the Noteholders RSA or the Backstop Commitment Agreement, as applicable, has not been terminated, then the consents and the approval rights required in the Colony RSA, the Noteholders RSA or the Backstop Commitment Agreement, as applicable, shall govern.

## E.     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 1.     Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts (including, without limitation, employment agreements) and Unexpired Leases that:

- o    have been rejected by order of the Bankruptcy Court;

- o    are the subject of a motion to reject pending on the Effective Date;

- o    are identified in the Plan Supplement (in either case which list may be amended by the Debtors to add or remove Executory Contracts and Unexpired Leases by filing with the Bankruptcy Court an amended list and serving it on the affected contract parties at least ten (10) days prior to the Confirmation Hearing); or

- o    are rejected pursuant to the terms of the Plan.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract and Unexpired Lease assumed pursuant to Article VI of the Plan will revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

- 70 -

2. **Assignment of Executory Contracts or Unexpired Leases**

In the event of an assignment of an Executory Contract or Unexpired Lease, at least twenty (20) days prior to the Confirmation Hearing, the Debtors will serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption and assignment, which will:  (a) list the applicable cure amount, if any; (b) identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court; additionally, the Debtors will file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assigned and the proposed cure amounts.  Any applicable cure amounts will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assignment or any related cure amount must be filed, served and actually received by the Debtors at least five (5) days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assignment or cure amount will be deemed to have consented to such assignment of its Executory Contract or Unexpired Lease.  The Confirmation Order will constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assigned or (c) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assignment.  If an objection to assignment or cure amount is sustained by the Bankruptcy Court, the Reorganized Debtors in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming and assigning it.

3. **Rejection of Executory Contracts or Unexpired Leases**

All Executory Contracts and Unexpired Leases listed on Plan Schedule 5 will be deemed rejected as of the Effective Date.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejections described in Article VI of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

4. **Claims on Account of the Rejection of Executory Contracts or Unexpired Leases**

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  The Debtor or Reorganized Debtor, as the case may be, will provide notice of such rejection and specify the appropriate deadline for the filing of such Proof of Claim.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtors, the Reorganized Debtors or the Estates, and the Debtors, the Reorganized

DOCS_SF:78843.3 93949-001

Debtors and their Estates and property will be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in Article XII.D of the Plan. All claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as Class 6 Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

5.      **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption must be filed, served and actually received by the Debtors at least ten (10) days prior to the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have assented and will be deemed to have forever released and waived any objection to the proposed assumption other than with respect to any alleged cure amount, which may be asserted at any time. In the event of a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. If an objection to cure is sustained by the Bankruptcy Court, the Debtors or Reorganized Debtors, as applicable, in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

6.      **Assumption of Director and Officer Insurance Policies**

The Debtors, and upon the Effective Date, the Reorganized Debtors, will assume all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not discharge, impair or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not impair or otherwise modify any rights of the Reorganized Debtors under the D&O Liability Insurance Policies.

7.      **Indemnification Provisions**

All indemnification provisions currently in place (whether in the by-laws, certificate of incorporation, board resolutions, contracts, or otherwise) for the following: (i) Prepetition Agent; (ii) Prepetition Lenders; (iii) Prepetition Indenture Trustee; (iv) the Backstop Investors; and (v) directors, officers and employees of the Debtors who served in such capacity as of the Petition Date with respect to or based upon any act or omission taken or omitted in such capacities, for or on behalf of the Debtors, will be Reinstated (or assumed, as the case may be), and will survive effectiveness of the Plan. No such Reinstatement or assumption shall in any

- 72 -

way extend the scope or term of any indemnification provision beyond that contemplated in the underlying contract or document as applicable.

### 8.    Compensation and Benefit Programs

Except as otherwise provided in the Plan (including but not limited to the compensation for General William Lyon and William H Lyon pursuant to employment agreements as described herein, which will exclusively address the benefits for those executives or any order of the Bankruptcy Court, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its employees, retirees, and non-employee directors and the employees and retirees of its subsidiaries, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans (other than equity incentive plans, which will be replaced by the Management Incentive Plan), life, and accidental death and dismemberment insurance plans, are treated as Executory Contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. Any payment obligations under any assumed employment contracts and benefit plans that have been or purport to have been accelerated as a result of the commencement of the Chapter 11 Cases or the consummation of any transactions contemplated by the Plan will be Reinstated and such acceleration will be rescinded and deemed not to have occurred.

### 9.    Workers' Compensation Benefits

Except as otherwise provided in the Plan (including but not limited to the compensation for General William Lyon and William H Lyon pursuant to employment agreements as described herein, which will exclusively address the benefits for those executives, or any order of the Bankruptcy Court, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its employees, retirees, and non-employee directors and the employees and retirees of its subsidiaries, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans (other than equity incentive plans, which will be replaced by the Management Incentive Plan), life, and accidental death and dismemberment insurance plans, are treated as Executory Contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. Any payment obligations under any assumed employment contracts and benefit plans that have been or purport to have been accelerated as a result of the commencement of the Chapter 11 Cases or the consummation of any transactions contemplated by the Plan will be Reinstated and such acceleration will be rescinded and deemed not to have occurred.

### F.    PROVISIONS GOVERNING DISTRIBUTIONS

### 1.    Dates of Distributions

Except as otherwise provided in the plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions provided in the Plan. Except as otherwise provided in the Plan, Holders of Claims

- 73 -

shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to the Plan and the Reorganized Debtors shall have no liability on account of any Claims or Interests except as set forth in the Plan and in the Confirmation Order. All payments and all distributions made by the Reorganized Debtors under the Plan shall be in full and final satisfaction, settlement and release of all Claims against the Reorganized Debtors.

At the close of business on the Distribution Record Date, the transfer ledgers for the Old Notes shall be closed, and there shall be no further changes in the record holders of such indebtedness. The Reorganized Debtors, the Disbursing Agent, the Prepetition Indenture Trustee, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Old Notes occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

## 2.     Distribution Agent

Except as provided therein, all distributions under the Plan shall be made by the Reorganized Debtors as Distribution Agent, or by such other Entity designated by the Debtors as a Distribution Agent on the Effective Date. the Reorganized Debtors, or such other Entity designated by the Debtors, shall not be required to give any bond or surety or other security for the performance of the Reorganized Debtors' duties as Distribution Agent unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

## 3.     Cash Distributions

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Reorganized Debtors, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## 4.     Rounding of Payments

Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one dollar. To the extent Cash, notes, warrants, shares, stock are to be distributed under the Plan remain undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash, notes, or shares shall be treated as "Unclaimed Property" under the Plan.

Whenever payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole dollar. To the extent that any Cash, any shares of New Capital Stock or any New Second Lien Notes to be distributed

under the Plan remain undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash, Notes, or shares shall be treated as "Unclaimed Property" under the Plan.

No fractional shares shall be issued or distributed under the Plan. Each Person entitled to receive shares of New Capital Stock or New Second Lien Notes shall receive the total number of whole shares of New Capital Stock, or, as the case may be, the number of New Second Lien Notes, to which such Person is entitled. Whenever any distribution to a particular Person would otherwise call for distribution of a fraction of shares of New Capital Stock or, as the case may be, New Second Lien Notes, the actual distribution of shares of such stock shall be rounded to the next lower whole number.

### 5.      Distributions on Account of Claims Allowed After the Effective Date

Except as otherwise agreed by the Holder of a particular Claim, or as provided in the Plan, all distributions shall be made pursuant to the terms of the Plan and the Confirmation Order. Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim). Whenever any payment of a fraction of a dollar would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest dollar.

### 6.      General Distribution Procedures.

The Reorganized Debtors, or any other duly appointed Distribution Agent, shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise. All Cash and other property held by the Reorganized Debtors for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

### 7.      Address for Delivery of Distributions.

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the address set forth on any proofs of claim filed by such Holders (to the extent such proofs of claim are filed in the Chapter 11 Cases), (2) at the addresses set forth in any written notices of address change delivered to the Debtors, or (3) at the addresses in the Debtors' books and records.

### 8.      Undeliverable Distributions and Unclaimed Property.

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtors as undeliverable, no further distribution shall be made to such Holder, and the Reorganized Debtors shall have no obligation to make any further distribution to the Holder, unless and until the Reorganized Debtors is notified in writing of such Holder's then current address.

Any Entity which fails to claim any Cash within one year from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan. Entities which fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors or the Reorganized Debtors or against any Holder of an Allowed Claim to whom distributions are made by the Reorganized Debtors.

9.      **Withholding Taxes.**

Pursuant to section 346(f) of the Bankruptcy Code, the Reorganized Debtors shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. From and as of the Effective Date, the Reorganized Debtors shall comply with all reporting obligations imposed on it by any Governmental Unit in accordance with applicable law with respect to such withholding taxes. As a condition to receiving any distribution under the Plan, the Reorganized Debtors may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Reorganized Debtors to comply with applicable tax reporting and withholding laws.

10.     **Setoffs.**

The Reorganized Debtors may, to the extent permitted under applicable law, setoff against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Reorganized Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided, however,* that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claims, rights and causes of action that the Reorganized Debtors possesses against such Holder.

11.     **Surrender of Cancelled Instruments or Securities**

As a condition precedent to receiving any distribution pursuant to the Plan on account of an Allowed Claim evidenced by the instruments, securities, notes, or other documentation canceled pursuant to Article V.N of the Plan, the Holder of such Claim will tender the applicable instruments, securities, notes or other documentation evidencing such Claim (or a sworn affidavit identifying the instruments, securities, notes or other documentation formerly held by such Holder and certifying that they have been lost), to Reorganized Parent or another applicable Distribution Agent unless waived in writing by the Debtors or the Reorganized Debtors, as applicable. The Prepetition Indenture Trustee will send such notices and take such other actions as are reasonably requested by the Debtors to effect the cancellation of the Old Notes held by Cede & Co.

Unless the Prepetition Indenture Trustee consents to the direct distribution via DTC, the Distribution Agent will promptly distribute the New Second Lien Notes and the Class A Common Shares to the Prepetition Indenture Trustee. For the avoidance of doubt, the Debtors will take all reasonably practicable steps to ensure that all New Second Lien Notes and Class A Common Shares are in a form that is DTC eligible. Notwithstanding any provision in the Plan to the contrary, the Debtors will be solely responsible for cancelling or surrendering the Old Notes and neither the Prepetition Indenture Trustee, nor any Holders of Old Notes, will be required to cause such notes to be cancelled or surrendered prior to receiving distributions under the Plan.

12.     **Lost, Stolen, Mutilated or Destroyed Securities**

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to Reorganized Parent and other applicable Distribution Agents: (x) evidence reasonably satisfactory to Reorganized Parent and other applicable Distribution Agents of such loss, theft, mutilation, or destruction; and (y) such security or indemnity as may be

- 76 -

required by Reorganized Parent and other applicable Distribution Agents to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Allowed Equity Interest. Upon compliance with Article VII.K of the Plan as determined by the Debtors or Reorganized Debtors by a Holder of a Claim or Equity Interest evidenced by a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to Reorganized Parent and other applicable Distribution Agents.

### G.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

#### 1.    No Filing of Proofs of Claim

Except as otherwise provided under the Plan, Holders of Claims shall not be required to file a proof of claim and no parties should file a proof of claim. Unless disputed by the Holder of a Claim, the amount set forth in the applicable Debtor's books and records shall constitute the Allowed amount of such Holder's Claim. If the Holder of a Claim disagrees with the Debtors' books and records with respect to the Allowed Amount of such Holder's Claim, such Holder must advise the Reorganized Debtors in writing, in which event the Claim will become a Disputed Claim. The Reorganized Debtors intends to attempt to resolve any such disputes consensually or through judicial means outside the Bankruptcy Court. Nevertheless, the Reorganized Debtors may, in its discretion, file with the Bankruptcy Court an objection to the allowance of such Claim or any other appropriate motion or adversary proceeding with respect thereto. All such objections shall be litigated to Final Order, provided however, that the Reorganized Debtors, may compromise, settle, withdraw or resolve any objections to Claims without further order of the Bankruptcy Court.

#### 2.    Disputed Claims

All objections to Claims shall be filed and served not later than one-hundred-twenty (120) days following the Effective Date; provided, however, such date may be extended by the Bankruptcy Court beyond such one-hundred-twenty (120) days upon motion filed by the Reorganized Debtors prior to the expiration of the above-noted 120 day deadline. The filing of a motion to extend the deadline to object to any Claims shall automatically extend such deadline until a Final Order is entered on such motion. In the event that such motion to extend the deadline to object to Claims is denied by the Bankruptcy Court, such deadline shall be the later of the current deadline (as previously extended, if applicable) or 30 days after the Bankruptcy Court's entry of an order denying the motion to extend such deadline. Unless otherwise provided in the Confirmation Order, the Reorganized Debtors is authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan. Under no circumstances will any distributions be made on account of Disallowed Claims.

#### 3.    Procedures Regarding Disputed Claims

No payment or other distribution or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by a Final Order or by stipulation between the Debtors and the Holder of the Claim. No distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

The Debtors (prior to the Effective Date) or the Reorganized Debtors (after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any

- 77 -

Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection. Any Final Order of the Bankruptcy Court that estimates a Disputed Claim pursuant to the Plan shall irrevocably constitute and be a conclusive and final determination of the maximum allowable amount of Claim, should it become an Allowed Claim. Accordingly, the Holder of a Disputed Claim that is estimated by the Bankruptcy Court pursuant to the Plan will not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable amount of such Claim as a result of any subsequent adjudication or actual determination of the allowed amount of such Disputed Claim or otherwise, and the Holder of such Claim shall not have recourse to the Debtors or the Reorganized Debtors in the event the allowed amount of the Claim of such Holder is at any time later determined to exceed the estimated maximum allowable amount.

### 4.    Allowance of Claims

Following the date on which a Disputed Claim becomes an Allowed Claim after the Distribution Date, the Reorganized Debtors shall pay directly to the Holder of such Allowed Claim the amount provided for under the Plan, as applicable, and in accordance therewith.

(a)    Allowance of Claims

Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors will have and will retain any and all rights and defenses that the Debtors had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed under the Plan or by orders of the Bankruptcy Court. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order and the DIP Orders), no Claim or Equity Interest will become an Allowed Claim unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.

(b)    Prosecution of Objections to Claims and Equity Interests

After the Confirmation Date but before the Effective Date, the Debtors, and after the Effective Date, the Reorganized Debtors, will have the exclusive authority to File objections to Claims and settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims or Equity Interests are in an Unimpaired Class or otherwise; provided, however, this provision will not apply to Professional Fee Claims, Ad Hoc Noteholders Group Fees and Expenses, the Backstop Fee, the Backstop Transaction Expenses, or the DIP Facility Claim, From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim or Equity Interest without any further notice to or action, order or approval of the Bankruptcy Court. The Reorganized Debtors will have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

(c)    Estimation

After the Confirmation Date but before the Effective Date, the Debtors, and after the Effective Date, the Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Equity Interest pursuant to applicable law and (b) any contingent or unliquidated Claim or Equity Interest pursuant to applicable law, including,

- 78 -

without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Equity Interest, contingent Claim or Equity Interest or unliquidated Claim or Equity Interest, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection. All of the aforementioned Claim or Equity Interests and objection, estimation and resolution procedures are cumulative and not exclusive of one another, Claim or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. The rights and objections of all parties are reserved in connection with any such estimation proceeding.

## H.    CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### 1.    Conditions Precedent to Confirmation

Confirmation of the Plan will be conditioned upon the satisfaction or waiver pursuant to the provisions of Article IX.C of the Plan of the following:

- The Bankruptcy Court will have entered a Final Order in form and in substance satisfactory to the Debtors, Prepetition Agent, and Consenting Lenders and reasonably satisfactory to the Requisite Noteholders and Backstop Investors, in the approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Confirming the Plan.

- The Plan and all schedules, documents, supplements and exhibits to the Plan will have been filed in form and substance acceptable to the Debtors, Prepetition Agent, and Consenting Lenders and reasonably satisfactory to the Requisite Noteholders and Backstop Investors.

- The proposed Confirmation Order will be in form and substance acceptable to the Debtors, Prepetition Agent, and Consenting Lenders and reasonably satisfactory to the Requisite Noteholders and Backstop Investors.

- The board of directors of the Reorganized Parent will have been selected.

### 2.    Conditions Precedent to Consummation

Consummation of the Plan will be conditioned upon the satisfaction or waiver pursuant to the provisions of Article IX.C of the Plan of the following:

- The Confirmation Order shall have been entered and either (a) become a Final Order or (b) the 14-day stay contemplated by Bankruptcy Rule 3020(e) in respect thereof shall have been terminated unless waived by (i) the Debtors, Prepetition Agent, and Consenting Lenders and (ii) the Requisite Noteholders and Backstop Investors in their reasonable judgment, and (c) the Confirmation Order shall otherwise be in a form and substance acceptable to the Debtors, Prepetition Agent, and Consenting Lenders and reasonably satisfactory to the Requisite Noteholders and Backstop Investors, and no stay of the Confirmation Order will have been entered and be in effect. The Confirmation Order will provide that, among other things, the Debtors or the Reorganized Debtors, as appropriate, are authorized to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the

contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with or described in the Plan.

- The Bankruptcy Court will have entered one or more Final Orders (which may include the Confirmation Order) authorizing the assumption and rejection of Executory Contracts and Unexpired Leases by the Debtors as contemplated in the Plan and the Plan Supplement.

- All documents and agreements necessary to implement the Plan, including, without limitation, the Restructured First Lien Loan Agreement, the New Second Lien Indenture and the Subordination and Intercreditor Agreement, in each case in form and substance acceptable to the Debtors, the Prepetition Agent, and Consenting Lenders and reasonably satisfactory to the Requisite Noteholders, and Backstop Investors as applicable, will have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto. All conditions precedent to such documents and agreements will have been satisfied or waived pursuant to the terms of such documents or agreements.

- All material consents, actions, documents, certificates and agreements necessary to implement the Plan will have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

- The Debtors will have received the Rights Offering Purchase Price, in Cash, net of any fees or expenses authorized by Order of the Bankruptcy Court to be paid from the Rights Offering Purchase Price, and such Cash shall have been contributed by Parent to CA Lyon.

- The Debtors will have received the Class B Common Stock Purchase Price, in Cash, net of any fees or expenses authorized by Order of the Bankruptcy Court to be paid from the Class B Common Stock Purchase Price, and such Cash shall have been contributed by Parent to CA Lyon.

- All interest, fees and expenses (including legal and advisory fees and expenses) on account of the Prepetition Secured Loan Agreement Claims shall have been paid as required by the DIP Orders.

- The Termination Date has not occurred under either the Colony RSA or the Noteholder RSA.

- The Rights Offering Documents shall be in form and substance reasonably acceptable to the Backstop Investors.

- The Confirmation Date will have occurred.

## 3.    Waiver of Conditions

The conditions to confirmation of the Plan and to Consummation of the Plan set forth in Article IX of the Plan may be waived by the Debtors, with the (i) consent of the Prepetition Agent and Consenting Lenders and (ii) consent in the their reasonable judgment of the Requisite Noteholders and the Backstop Investors, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan. To the extent that a condition to Consummation of the Plan requires the consent of the Backstop Investors,

- 80 -

such conditions may only be waived by the Debtors with the consent of the Backstop Investors. The failure to satisfy or waive a condition to Consummation may be asserted by the Debtors or the Reorganized Debtors, Prepetition Agent, Consenting Lenders, Requisite Noteholders or Backstop Investors regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtors or Reorganized Debtors, Prepetition Agent, Consenting Lenders, Requisite Noteholders or Backstop Investors to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

### 4.    Effect of Non Occurrence of Conditions to Consummation

If the Consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will: (a) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (c) constitute an Allowance of any Claim or Equity Interest; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

## I.    DEBTORS' RELEASES

Notwithstanding anything to the contrary in the Plan, the failure of the Court to approve any or all of the provisions set forth in Article XI of the Plan shall not constitute a failure of any condition to ether confirmation or the effectiveness of the Plan, but without prejudice to the respective parties' rights under the Colony RSA, the Noteholders RSA or the Backstop Commitment Agreement.

## J.    RELEASE, INJUNCTION AND RELATED PROVISIONS

### 1.    General

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise. Pursuant to the terms contained in the Plan, among other things, the subordination provisions contained in the Prepetition Indenture will be eliminated and each holder of an Old Notes Claim will receive and be entitled to retain the property as set forth in the Plan. As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments under the Plan will be settled, compromised, terminated and released pursuant to the Plan; provided, however, that nothing contained in the Plan will preclude any Person or Entity from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan.

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Claims against them and (2) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Causes of Action against other Entities.

- 81 -

## 2.    Release

EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY ACKNOWLEDGED AND CONFIRMED, THE DEBTORS AND REORGANIZED DEBTORS, IN THEIR INDIVIDUAL CAPACITIES AND AS DEBTORS-IN-POSSESSION (COLLECTIVELY, THE "RELEASING PARTIES") WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER PROVIDED A FULL DISCHARGE, WAIVER AND RELEASE TO THE RELEASED PARTIES (AND EACH SUCH RELEASED PARTY SO RELEASED SHALL BE DEEMED FOREVER RELEASED, WAIVED AND DISCHARGED BY THE RELEASING PARTIES) AND THEIR RESPECTIVE PROPERTIES FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, LITIGATION CLAIMS AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY IN WHOLE OR IN PART TO THE DEBTORS, THE CHAPTER 11 CASES, THE DISCLOSURE STATEMENT, THE PLAN OR THE SOLICITATION OF VOTES ON THE PLAN THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF THE DEBTORS, THEIR ESTATES OR THE REORGANIZED DEBTORS (WHETHER DIRECTLY OR DERIVATIVELY) AGAINST ANY OF THE RELEASED PARTIES; PROVIDED, HOWEVER, THAT THE FOREGOING PROVISIONS OF THIS RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE (I) ANY CAUSES OF ACTION EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN OR THE PLAN SUPPLEMENT; (II) ANY CAUSES OF ACTION ARISING FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; AND/OR (III) THE RIGHTS OF SUCH RELEASING PARTY TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED PURSUANT TO THE PLAN OR ASSUMED PURSUANT TO FINAL ORDER OF THE BANKRUPTCY COURT.  THE FOREGOING RELEASE SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON AND THE CONFIRMATION ORDER WILL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES RELEASED PURSUANT TO THIS RELEASE.  NOTWITHSTANDING THE FOREGOING, THE DEBTORS ARE NOT RELEASING THE DEBTORS BUT THEY ARE RELEASING THE RELATED PERSONS TO THE DEBTORS PURSUANT TO THIS PARAGRAPH.

The Debtors believe that the Releases by each of the Releasing Parties of each of the Released Parties as described above are integral to the Plan.  Moreover, the Debtors have received substantial contributions to the Plan from the Released Parties.  The Released Parties have played a critical role in the formulation of the Debtors' Plan and have expended a

- 82 -

significant amount of time and resources analyzing and negotiating the complex issues presented by the Debtors' capital structure. The Plan reflects the settlement and resolution of several of these complex issues. In addition, absent the agreement of (i) the Ad Hoc Noteholders Group, (ii) Colony, and (iii) the Holders of Parent Equity, Allowed General Unsecured Claims would not be Unimpaired.

Absent the tireless efforts of the various constituencies who came together to work out the terms of the Plan, supported by 100% in amount of the Prepetition Secured Lenders and approximately 63.47% in amount of the Old Notes Claims as of the Voting Record Date, aimed at resolving the Chapter 11 Cases, the Debtors and their creditors would likely remain mired in complex and contentious litigation for years to come, and/or liquidate, threatening to materially delay and reduce distributions to all creditors. Further, the Prepetition Secured Lenders and the Prepetition Noteholders are agreeing that the Debtors or Reorganized Debtors, as the case may be, may provide for certain consideration to Holders of General Unsecured Claims if the Plan is confirmed. The willingness of these creditors to take such risks and provide such benefits to the other Holders of Claims against the Estates is a substantial contribution to the Plan and to the Chapter 11 Cases; absent such willingness, the Plan would not have been possible, and the Debtors may have been unable to reorganize. The substantial and extensive contributions by the Released Parties — both monetary and nonmonetary — further justify the non-Debtor releases set forth in the Plan.

Additionally, an identity of interest may exist between the Debtors and certain non-Debtor Released Parties, such that the non-Debtor releases are appropriate in that they eliminate effectively additional unknown claims against the Estates. For example, the Debtors' directors and officers are parties to and beneficiaries of certain indemnification provisions, whereby the Debtors are obligated to indemnify them. Under these agreements, any claim asserted against a Released Party who the Debtors are obligated to indemnify may essentially be a claim against the Debtors. Any such claim, even if ultimately unsuccessful, could further deplete finite estate resources. As of the date hereof, the Debtors are not aware of any claims against a Released Party.

## K.    THIRD PARTY RELEASE

AS OF AND SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, EACH CREDITOR THAT AFFIRMATIVELY ELECTS TO GRANT THE THIRD PARTY RELEASE PROVIDED IN THIS PARAGRAPH BY CHECKING THE APPROPRIATE BOX ON THE BALLOT PROVIDED TO SUCH CREDITOR IN CONNECTION WITH SOLICITATION OF SUCH CREDITORS' VOTE TO ACCEPT OR TO REJECT THE PLAN, FOR ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, TRANSFEREES, SUCH CREDITORS' OFFICERS AND DIRECTORS, ACTING IN SUCH CAPACITIES AS OF THE PETITION DATE, SUCH CREDITORS' AGENTS, MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES, REPRESENTATIVES, IN EACH CASE IN THEIR CAPACITY AS SUCH, SHALL, BY VIRTUE OF ITS VOTE, BE DEEMED TO HAVE RELEASED THE, (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE AD HOC NOTEHOLDERS GROUP AND THE MEMBERS THEREOF; (E) THE PREPETITION AGENT; (F) THE PREPETITION SECURED LENDERS; (G) THE DIP AGENT; (H) THE DIP LENDERS; (H) THE BACKSTOP INVESTORS; (I) THE PREPETITION INDENTURE TRUSTEE, AND (J) THE RELATED PERSONS OF EACH OF (A) THROUGH (I) OF THE FOREGOING, EACH IN ITS CAPACITY AS SUCH, FROM ANY AND ALL DIRECT CLAIMS AND CAUSES OF ACTION HELD BY SUCH CREDITOR WHATSOEVER, OR IN ANY MANNER ARISING FROM OR RELATED TO, IN WHOLE OR IN PART, (I) THE DEBTORS, (II) THE DEBTORS' RESTRUCTURING, (III) THE CONDUCT OF THE DEBTORS' BUSINESSES, (IV) THE CHAPTER 11 CASES, (V) THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE

- 83 -

TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, (VI) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY AGENT THEREOF, (VII) THE RIGHTS OFFERING AND RELATED TRANSACTIONS, AND (VIII) THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, WHICH CLAIMS ARE BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE.

### 1.    Discharge of Claims

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtors or any of their assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests. Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtors and their Estates will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

### 2.    Exculpation

The Exculpated Parties will neither have nor incur any liability to any Entity for any claims or Causes of Action arising before, on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or confirmation or Consummation of the Plan; provided, however, that the foregoing provisions will have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; provided, further, that each Exculpated Party will be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions or inactions; provided, further, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

### 3.    Preservation of Rights of Action

(a)    <u>Maintenance of Causes of Action</u>

Except as otherwise provided in Article XI or elsewhere in the Plan or the Confirmation Order, after the Effective Date, the Reorganized Debtors will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action and Litigation Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases. The Reorganized Debtors, as the successors in, interest to the Debtors and the Estates, may, and will

- 84 -

have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Litigation Claims without notice to or approval from the Bankruptcy Court. The Litigation Claims include, without limitation, the claims set forth on Plan Schedule 2.

      (b)     <u>Preservation of All Causes of Action Not Expressly Settled or Released</u>

Unless a Cause of Action or Litigation Claim against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtors expressly reserve such Cause of Action or Litigation Claim for later adjudication by the Debtors or the Reorganized Debtors (including, without limitation, Causes of Action and Litigation Claims not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action or Litigation Claims upon or after the confirmation of the Plan or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Causes of Action or Litigation Claims have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt, the Release contained in Article XI of the Plan) or any other Final Order (including, without limitation, the Confirmation Order). In addition, the Debtors and the Reorganized Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

      **4.**     **Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION OR OTHER PROCEEDING, OR CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER. BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST WILL BE DEEMED TO HAVE SPECIFICALLY CONSENTED TO THIS INJUNCTION. ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

## L.     **BINDING NATURE OF PLAN**

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, AND SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN

THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE
PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

**M.    CONFIRMATION PROCEDURES**

**1.    Confirmation Hearing**

**The date has not yet been set for the Confirmation Hearing.**  Once scheduled, the
Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the
Debtors without further notice other than by such adjournment being announced in open court or
by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the
Bankruptcy Court may order.  Moreover, the Plan may be modified or amended, if necessary,
pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the
Confirmation Hearing, without further notice to parties-in-interest.

**The date has not yet been set for the Confirmation Objection Deadline**.

All Confirmation Objections must be filed with the Bankruptcy Court and served on the
Debtors and certain other parties in accordance with the Disclosure Statement Order on or before
the Confirmation Objection Deadline.

> CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE
> MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE
> BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

**2.    Filing Objections to the Plan**

Any objection to confirmation of the Plan must:  (i) be in writing; (ii) conform to the
Bankruptcy Rules and the Local Rules; (iii) state the name of the objecting party and the amount
and nature of the Claim or the amount of Equity Interests held by such Entity; (iv) state with
particularity the basis and nature of any objection to the Plan and, if practicable, a proposed
modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously
with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no
later than the Confirmation Objection Deadline by the Notice Parties, as defined in Section I.C
herein.

**N.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan
satisfies the requirements of section 1129 of the Bankruptcy Code.  The Debtors believe that:  (i)
the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy
Code; (ii) the Debtors have complied or will have complied with all of the requirements of
chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.
Specifically, the Debtors believe that the Plan satisfies or will satisfy the applicable confirmation
requirements of section 1129 of the Bankruptcy Code set forth below.

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors have complied and will comply with the applicable provisions of the
  Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- 86 -

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the case, has been or will be disclosed to the Bankruptcy Court, and any such payment: (a) made before the confirmation of the Plan is reasonable; or (b) is subject to the approval of the Bankruptcy Court as reasonable if it is to be fixed after confirmation of the Plan.

- The Debtors will disclose the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Debtors, an affiliate of the Debtors participating in the plan with the Debtors, or a successor to the Debtors under the Plan. The appointment to, or continuance in, such office by such individual, will be consistent with the interests of creditors and equity security holders and with public policy and the Debtors will have disclosed the identity of any insider that the Reorganized Debtors will employ or retain, and the nature of any compensation for such insider;

- Either each Holder of an Impaired Claim or Equity Interest in Parent will (A) have accepted the Plan or will receive or retain under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated on that date under chapter 7 of the Bankruptcy Code, or (B) if section 1111 (b)(2) applies to such Claim, receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such Holder's interest in the estate's interest in the property that secures such claims;

- Each Class of Claims or Equity Interests that is entitled to vote on the Plan will either have accepted the Plan or will not be Impaired under the Plan, or the Plan can be confirmed without the approval of such voting Class pursuant to section 1129(b) of the Bankruptcy Code;

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims and Priority Claims will be paid in full in Cash on the Effective Date, or as soon thereafter as is reasonably practicable, and that Priority Tax Claims will be paid in accordance with section 1129(a)(9)(C) of the Bankruptcy Code;

- At least one Class of Impaired Claims will accept the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class;

- Confirmation of the Plan will not likely be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor thereto under the Plan;

- The Debtors have paid or will pay all fees payable under section 1930 of title 28, and the Plan provides for the payment of all such fees on the Effective Date; and

- The Plan provides for the continuation after the Effective Date of payment of all retiree benefits.

**1.    Best Interests of Creditors Test/Liquidation Analysis**

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the bankruptcy court find, as a condition to confirmation of a chapter 11 plan, that each

holder of a claim or equity interest in each impaired class: (i) has accepted the plan; or (ii) among other things, will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such Person would receive if each of the debtors were liquidated under chapter 7 of the Bankruptcy Code. To make these findings, the Bankruptcy Court must: (1) estimate the Cash proceeds (the "Liquidation Proceeds") that a chapter 7 trustee would generate if each Debtor's Chapter 11 Case were converted to a Chapter 7 case on the Effective Date and the assets of such Debtor's Estate were liquidated; (2) determine the distribution (the "Liquidation Distribution" that each non-accepting Holder of a Claim or Equity Interest would receive from the Liquidation Proceeds under the priority scheme dictated in chapter 7; and (3) compare each Holder's Liquidation Distribution to the distribution under the Plan ("Plan Distribution'") that such Holder would receive if the Plan were confirmed and consummated.

To assist the Bankruptcy Court in making the findings required under section 1129(a)(7) of the Bankruptcy Code, the Debtors' management, together with A&M, the Debtors' restructuring and financial advisors, prepared a Liquidation Analysis, a copy of which is attached hereto as Exhibit E.

The Liquidation Analysis presents "High", "Midpoint" and "Low" estimates of Liquidation Proceeds, thus representing a range of management's assumptions relating to the costs incurred during a liquidation and the proceeds realized as a result thereof. The "High", "Midpoint" and "Low" estimates of Liquidation Proceeds for the Chapter 11 Cases are $363 million, $345 million and $328 million, respectively. For additional detail with respect to such estimates, refer to the Liquidation Analysis attached hereto as Exhibit E. It is assumed that the liquidation would occur over a period of twelve months. The projected date of conversion to a hypothetical chapter 7 liquidation (the "Assumed Effective Date") is February 28, 2012. In each case, it is assumed that the chapter 7 trustee would enter into an agreement with the Debtors' Prepetition Secured Lenders, as applicable, to wind-down operations and sell the remainder of the Debtors' assets on a piecemeal basis.

THE STATEMENTS IN THE LIQUIDATION ANALYSIS, INCLUDING ESTIMATES OF ALLOWED CLAIMS, WERE PREPARED SOLELY TO ASSIST THE BANKRUPTCY COURT IN MAKING THE FINDINGS REQUIRED UNDER SECTION 1129(a)(7) AND THEY MAY NOT BE USED OR RELIED UPON FOR ANY OTHER PURPOSE.

THE DEBTORS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT ECONOMIC, COMPETITIVE AND OPERATIONAL UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE. NEITHER THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WOULD NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

### 2.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that the bankruptcy court find that confirmation is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further financial reorganization, unless the plan contemplates such liquidation. For purposes of demonstrating that the Plan meets this "feasibility" standard, the Debtors have

analyzed the ability of the Reorganized Debtors to meet their obligations under the Plan and to retain sufficient liquidity and capital resources to conduct their business.

The Debtors believe that the Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code. In connection with the development of the Plan and for the purposes of determining whether the Plan satisfies this feasibility standard, the Debtors analyzed their ability to satisfy its financial obligations while maintaining sufficient liquidity and capital resources. The Debtors' management, with the assistance of its financial advisors, developed a business plan and prepared financial projections for fiscal years 2012 through 2017 (the "Financial Projections"). The Financial Projections, together with the assumptions on which they are based, are attached hereto as Exhibit D.

In general, as illustrated by the Financial Projections, the Debtors believe that with the significantly de-leveraged capital structure provided under the Plan and the return to trade terms and increased liquidity, the Reorganized Debtors should have sufficient Cash flow and availability to make all payments required pursuant to the Plan while conducting ongoing businesses operations. The Debtors believe that confirmation and Consummation is, therefore, not likely to be followed by the liquidation or further reorganization of the Reorganized Debtors. Accordingly, the Debtors believe that the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

THE FINANCIAL PROJECTIONS, INCLUDING THE UNDERLYING ASSUMPTIONS, SHOULD BE CAREFULLY REVIEWED IN EVALUATING THE PLAN. WHILE MANAGEMENT BELIEVES THE ASSUMPTIONS UNDERLYING THE FINANCIAL PROJECTIONS, WHEN CONSIDERED ON AN OVERALL BASIS, ARE REASONABLE IN LIGHT OF CURRENT CIRCUMSTANCES AND EXPECTATIONS, NO ASSURANCE CAN BE GIVEN THAT THE FINANCIAL PROJECTIONS WILL BE REALIZED. THE DEBTORS MAKE NO REPRESENTATION OR WARRANTY AS TO THE ACCURACY OF THE FINANCIAL PROJECTIONS.

The Financial Projections have not been examined or compiled by independent accountants. The Debtors make no representation as to the accuracy of the Financial Projections or their ability to achieve the projected results. Many of the assumptions on which the projections are based are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtors and their management, Inevitably, some assumptions will not materialize and unanticipated events and circumstances may affect the actual financial results. Therefore, the actual results achieved throughout the 5-year period of the Financial Projections may vary from the projected results and the variations may be material. All Holders of Claims and Equity Interests that are entitled to vote to accept or reject the Plan are urged to examine carefully all of the assumptions on which the financial projections are based in connection with their evaluation of the Plan.

3.    **Valuation**

In order to provide information to parties in interest regarding the possible range of values of their distributions under the Plan, it is necessary to ascribe an estimated value, or range of values, to the Company. The Debtors have been advised by A&M, their financial advisor, with respect to the estimated value of the Company, including the Reorganized Debtors, on a going-concern basis.

The estimates of the enterprise value contained in this section do not reflect values that could be attainable in public or private markets. The valuation information contained in this section is not a prediction or guarantee of the actual market value that may be realized through the sale of any securities to be issued pursuant to the Plan.

- 89 -

### 4.    Summary Results of Valuation Analysis

In conjunction with the allocation of distributions under the Plan, the Debtors determined that it was necessary to estimate the post-confirmation reorganization enterprise and equity values of the Reorganized Debtors. Accordingly, the Debtors directed A&M to prepare a valuation analysis of the Reorganized Debtors.

A&M estimates that the range reorganization enterprise value of the Reorganized Debtors is approximately $470.0 million to $500.0 million, with a midpoint of $485.0 million. The assumed reorganization enterprise value reflects work performed by A&M on the basis of information with respect to the business and assets of the Debtors available to A&M as of September 30, 2011. Based upon the assumed midpoint enterprise value of $485.0 million and assumed post-reorganization debt of approximately $327.8 million, A&M calculated equity value for the Reorganized Debtors of $157.2 million. Assuming a distribution of approximately 157,200,000 shares of new equity pursuant to the Plan, the imputed equity value on a per-share basis for the Reorganized Debtors is $1.00 per new share.

The foregoing valuation is based upon a number of assumptions, including, among others, confirmation of the Plan in substantially submitted to the Court, in accordance with its terms on a basis consistent with the estimates and other assumptions discussed herein, an assumed Effective Date of February 28, 2012 and the forecasts reflected in the Projections.

In preparing the estimated reorganization enterprise value, A&M: (a) reviewed certain historical financial information of the Debtors for recent years and interim periods; (b) reviewed certain internal financial and operating data of the Debtors; (c) reviewed certain projected financial and operating data of the Debtors; (d) reviewed certain property leases of the Debtors; (e) met with certain members of senior management of the Debtors to discuss the Debtors' operations and future prospects; (f) reviewed publicly available financial data and considered the market values of public companies that A&M deemed generally comparable to the operating businesses of the Debtors; (g) reviewed the financial terms, to the extent publicly available, of certain acquisitions of companies that A&M deemed generally comparable to the operating businesses of the Debtors; (h) considered certain economic and industry information relevant to the Debtors' operating businesses; and (i) conducted such other analyses as A&M deemed appropriate. Although A&M conducted a review and analysis of the Debtors' businesses, operating assets and liabilities and business plans, A&M assumed and relied on the accuracy and completeness of all financial and other information furnished to it by the Debtors. A&M did not independently verify the assumptions underlying the projections in connection with A&M's valuation. No independent evaluations or appraisals of the Debtors' assets were sought or were obtained in connection with A&M's valuation.

Estimates of reorganization enterprise value do not purport to be appraisals, nor do they necessarily reflect the values that might be realized if assets were to be sold. The estimates of reorganization enterprise value prepared by A&M assume that the Reorganized Debtors will continue as the owners of their businesses and assets. Such estimates were developed solely for purposes of formulation and negotiation of a plan of reorganization and analysis of implied relative recoveries to creditors thereunder. Such estimates do not purport to reflect or constitute appraisals, liquidation values or estimates of the actual market value that may be realized through the sale of any securities to be issued pursuant to the Plan, which may be significantly different from the amounts set forth herein.

Such estimates reflect computations of the estimated reorganization enterprise value of the Reorganized Debtors through the application of various valuation techniques, which were weighted, including, among others: (a) a comparable-company analysis, in which A&M derived market multiples of public companies that A&M deemed generally comparable to the operating

- 90 -

businesses of the Debtors and applied such multiples to the Reorganized Debtors Total Assets and Inventory; (b) a comparable-acquisitions analysis, in which A&M derived transaction multiples of certain acquisitions of companies that A&M deemed generally comparable to the operating businesses of the Debtors and applied such multiples to the Reorganized Debtors Total Assets; and (c) a discounted-cash flow analysis, in which A&M, using a weighted-average cost of capital, computed the present value of free cash flows and terminal value of the Debtors. An estimate of reorganization enterprise value is not entirely mathematical, but rather it involves complex considerations and judgments concerning various factors that could affect the value of an operating business. Moreover, the value of an operating business is subject to uncertainties and contingencies that are difficult to predict and will fluctuate with changes in factors affecting the financial condition and prospects of the economy generally or the applicable industry in particular. As a result, the estimate of reorganization enterprise value set forth herein is not necessarily indicative of actual outcomes, which may be significantly more or less favorable than those set forth herein. Because such estimates are inherently subject to uncertainties, none of the Debtors, A&M or any other person assumes responsibility for their accuracy.

Depending on the results of the Reorganized Debtors' operations, changes in the financial markets and / or other economic conditions, the value of the Reorganized Debtors may change significantly. In addition, the valuation of newly issued securities is subject to additional uncertainties and contingencies, all of which are difficult to predict. Actual market prices of such securities at issuance will depend upon, among other things, prevailing interest rates, conditions in the financial markets, the anticipated initial securities holdings of pre-petition creditors, some of which may prefer to liquidate their investment rather than hold it on a long-term basis, and other factors that generally influence the prices of securities. Actual market prices of such securities also may be affected by the Debtors' history in the Chapter 11 Cases, conditions affecting generally the industry in which the Debtors participate and by other factors not capable of accurate prediction. Accordingly, the reorganization enterprise value estimated by A&M does not necessarily reflect, and should not be construed as reflecting, values that will be attained in the public or private markets. The equity value ascribed in the analysis does not purport to be an estimate of the post-reorganization market trading value. Such trading value may be materially different from the reorganization equity value ranges described in A&M's valuation analysis. Indeed, there can be no assurance that a trading market will develop for the New Shares. The estimated reorganization enterprise value depends highly upon achieving the future financial results set forth in the projections, as well as the realization of certain other assumptions that are not guaranteed. The valuations set forth herein represent estimated reorganization enterprise values and do not necessarily reflect values that could be attainable in public or private markets. The estimated equity value ascribed in the analysis does not purport to be an estimate of the post-reorganization market trading value. Such a market trading value, if any, may differ materially from the estimated reorganization equity value associated with the valuation analysis.

## 5.    Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default— (A) cures any such default that occurred before or after the commencement of the Chapter 11 Cases, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (B) reinstates the

- 91 -

maturity of such claim or interest as such maturity existed before such default; (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan and are not insiders.  Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance.  Section 1126(d) of the Bankruptcy Code, except as otherwise provided in section 1126(e) of the Bankruptcy Code, defines acceptance of a plan by a class of impaired equity interests as acceptance by holders of at least two-thirds in amount of equity interests in that class actually voting to accept or to reject the plan.

Claims in Class 1, 2, 3, 5, 6 and 8 and Equity Interests in Class 10 are not Impaired under the Plan, and, as a result, the Holders of such Claims and Equity Interests are deemed to have accepted the Plan.

Claims in Classes 4 and 7 are Impaired under the Plan, and as a result, the Holders of Claims or Equity Interests in such Classes are entitled to vote on the Plan.  Pursuant to section 1129 of the Bankruptcy Code, the Holders of Claims or Equity Interests in the Voting Classes must accept the Plan for the Plan to be confirmed without application of the "fair and equitable test" to such Classes, and without considering whether the Plan "discriminates unfairly" with respect to such Classes, as both standards are described herein.  As stated above, Classes of Claims will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and a majority in number of the Claims of each such Class (other than any Claims of creditors designated under section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Plan.  Classes of Equity Interests will have accepted the if the Plan is accepted by at least two-thirds in amount of the Equity Interests of each such Class.

### 6.    Confirmation Without Acceptance by Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if less than all impaired classes entitled to vote on the plan have accepted it, provided that the plan has been accepted by at least one impaired class of claims, Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired Class's rejection or deemed rejection of the Plan, the Plan will be confirmed, at the Debtors' request, in a procedure commonly known as "cram down," so long as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Class of Claims or Equity Interests that is impaired under, and has not accepted, the Plan.

### 7.    No Unfair Discrimination

This test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under the Plan.  The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character).  Bankruptcy courts will take into account a number of

- 92 -

factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

### 8.    Fair and Equitable Test

This test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class.  As to the dissenting class, the test sets different standards depending on the type of claims or equity interests in such class:

The condition that a plan be "fair and equitable" to a non-accepting Class of Secured Claims includes the requirements that: (a) the Holders of such Secured Claims retain the liens securing such Claims to the extent of the Allowed amount of the Claims, whether the property subject to the liens is retained by the debtors or transferred to another entity under the Plan; and (b) each Holder of a Secured Claim in the Class receives deferred Cash payments totaling at least the Allowed amount of such Claim with a present value, as of the Effective Date of the Plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

The condition that a plan be "fair and equitable" with respect to a non-accepting Class of unsecured Claims includes the requirement that either: (a) the plan provides that each Holder of a Claim of such Class receive or retain on account of such Claim property of a value, as of the Effective Date of the plan, equal to the allowed amount of such Claim; or (b) the Holder of any Claim or Equity Interest that is junior to the Claims of such Class will not receive or retain under the plan on account of such junior Claim or Equity Interest any property.

The condition that a plan be "fair and equitable" to a non accepting Class of Equity Interests includes the requirements that either: (a) the plan provides that each Holder of an Equity Interest in that Class receives or retains under the plan, on account of that Equity Interest, property of a value, as of the Effective Date of the plan, equal to the greater of (i) the allowed amount of any fixed liquidation preference to which such Holder is entitled, (ii) any fixed redemption price to which such Holder is entitled, or (iii) the value of such interest; or (b) if the Class does not receive such an amount as required under (a), no Class of Equity Interests junior to the non-accepting Class may receive a distribution under the plan.

To the extent that any class of Claims or Class of Equity Interests either reject the Plan or are deemed to have rejected the Plan, the Debtors reserve the right to seek (a) confirmation of the Plan under section 1129(b) of the Bankruptcy Code and/or (b) modify the Plan in accordance with Article XVII.D of the Plan.

Notwithstanding the rejection of any Class that votes to reject the Plan, the Debtors do not believe that the Plan discriminates unfairly against any Impaired Class of Claims or Equity Interests.  The Debtors believe that the Plan and the treatment of all Classes of Claims and Equity Interests under the Plan satisfy the foregoing requirements for non-consensual confirmation of the Plan.

## O.    CONSUMMATION OF THE PLAN

The Plan will be consummated on the Effective Date.  For a more detailed discussion of the conditions precedent to the consummation of the Plan and the impact of failure to meet such conditions, see Article IX.B of the Plan.

## ARTICLE IV.
## RISK FACTORS

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS THAT ARE IMPAIRED SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THESE RISK FACTORS ARE MANY, THESE FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTORS' BUSINESS OR THE PLAN AND ITS IMPLEMENTATION.

A.    **CERTAIN BANKRUPTCY LAW CONSIDERATIONS**

1.    **Parties in Interest May Object to the Debtors' Classification of Claims and Equity Interests.**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2.    **The Debtors May Fail to Satisfy the Vote Requirement.**

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Debtors may seek to accomplish an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims or Equity Interests as those proposed in the Plan or may be forced to liquidate.

3.    **The Debtors May Not Be Able to Secure Confirmation of the Plan.**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, findings by the bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting Holders of Claims within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim or Equity Interest might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determined that the Disclosure Statement, the

balloting procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes, or the Plan contains other terms disapproved of by the Bankruptcy Court.

Confirmation of the Plan is also subject to certain conditions as described in Article IX.A of the Plan. If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims or Equity Interests would receive with respect to their Allowed Claims or Equity Interests.

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for confirmation. Any such modifications could result in less favorable treatment of any non-accepting Class, as well as any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan. Such less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan. Section 1127 of the Bankruptcy permits the Debtors to modify the Plan at any time before confirmation, but not if such modified Plan fails to meet the requirements for confirmation. The Debtors or the Reorganized Debtors may modify the Plan at any time after confirmation of the Plan and before substantial consummation of the Plan if circumstances warrant such modification and this Court, after notice and a hearing, confirms the Plan as modified, but not if such modified Plan fails to meet the requirements for confirmation. The Debtors will comply with the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code with respect to the modified Plan. Any Holder of a Claim or Equity Interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by this Court, such Holder changes their previous acceptance or rejection.

### 4.     Non-Consensual Confirmation of the Plan May Be Necessary.

In the event that any impaired class of claims or equity interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the proponents' request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Debtors believe that the Plan satisfies these requirements and the Debtors may request such non-consensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, in the event that a Voting Class does not accept the Plan, there can be no assurance that the Bankruptcy Court will reach this conclusion.

### 5.     The Debtors May Object to the Amount or Classification of a Claim or Equity Interest.

Except as otherwise provided in the Plan, the Debtors and Reorganized Debtors reserve the right to object to the amount or classification of any Claim or Equity Interest under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim or Equity Interest where such Claim or Equity Interest is or may become subject to an objection, counterclaim or other suit by the Debtors. Any Holder of a Claim or Equity Interest that is or may become subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

- 95 -

6.    **Risks of Not Obtaining the Rights Offering Purchase Price and of the Termination of the Backstop Commitment Agreement; Risks of Not Obtaining the Class B Common Stock Purchase Price.**

The Plan is predicated on, among other things, Parent's receipt of the Rights Offering Purchase Price. Notwithstanding the Backstop Commitment Agreement, because the Rights Offering has not been completed, there can be no assurance that the Debtors will receive any or all of the Rights Offering Purchase Price. In addition, under the Backstop Commitment Agreement, the Backstop Investors have the contractual right to terminate the Backstop Commitment Agreement, if among other reasons, the deadlines set forth in such agreement or the various conditions precedent to enforcement of the Backstop Investors' obligations are not satisfied. If Parent does not receive the Rights Offering Purchase Price, the Company will not be able to consummate the Plan in its current form. The Rights Offering is a funding mechanism and not a distribution on account of Claims. Holders of Old Notes Claims are receiving New Second Lien Notes and Class A Common Shares, not Rights Offering Securities, on account of their Old Notes Claims. The Debtors chose the Rights Offering as a funding mechanism because, among other reasons, they believed it was the cheapest available source of funds and the Debtors chose to make it available to only accredited investors to comply with applicable securities laws. Accordingly, the Debtors do not believe any holder of an Old Notes Claim that is unaccredited has any right to participate in the Rights Offering.

The Plan is also predicated on Parent's receipt of the Class B Common Stock Purchase Price. Notwithstanding the Class B Common Stock Commitment Agreement, there can be no assurance that the Parent will receive all or any of the Class B Common Stock Purchase Price.

7.    **The Effective Date May Not Occur.**

Although the Debtors believe that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

8.    **Contingencies Will Not Affect Validity of Votes of Impaired Classes to Accept or Reject the Plan.**

The distributions available to Holders of Allowed Claims and Equity Interests under the Plan can be affected by a variety of contingencies. The occurrence of any and all such contingencies, which could affect distributions available to Holders of Allowed Claims and Equity Interests under the Plan, will not affect the validity of the vote taken by the Voting Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes,

9.    **The Debtors May Default Under the DIP Facility.**

The Debtors' DIP Facility contains numerous covenants and events of default. If the Debtors fail to comply with the covenants, or are otherwise in default of the DIP Credit Agreement, the DIP Lenders have the right to accelerate the total amount due under the DIP Facility and require the immediate payment in full in Cash of such amounts. Following such a demand, if the Debtors were unable to obtain emergency relief from the Bankruptcy Court, the DIP Lenders and the Prepetition Secured Lenders would have the right, subject to the terms of the DIP Orders, to foreclose upon the assets of the Debtors.

10.    **The Restructuring Support Agreements May Terminate.**

As set forth in Sections II.F.1 and II.F.2 hereof, the Noteholders RSA and the Colony RSA may terminate if, among, other things, the deadlines set forth in such agreements are not