| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. FENCEWORKS, INC., dba GOLDEN STATE FENCE COMPANY, a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. FORD FRAMING COMPANY, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. FRANK MONS & SON CONSTRUCTION dba FCM FIREPLACES, a Sole Ownership | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. G.W. SURFACES, a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. GATEWAY PLASTERING, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. GOTHIC LANDSCAPING, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. GUARDIAN RAINGUTTERS, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. J & B MANUFACTURING CORP., dba SAN DIEGO MIRROR AND WINDOW, a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. JAYAR MANUFACTURING COMPANY, a Corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. KASTLE STAIR, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. L I METAL SYSTEMS, a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. LARRY METHVIN INSTALLATIONS, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. LAZER ELECTRIC, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MAKO TILE, a Sole Ownership | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. MARTINEZ CONSTRUCTION CONCRETE CONTRACTOR, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MAYER ROOFING, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MISSION SHEET METAL, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. ORACAL SUPPLY COMPANY, INC., a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. PACIFIC SHORES MASONRY, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. PRO-LINE PLASTERING, INC., a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. R.C. WENDT PAINTING, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. R.E.M. CONCEPTS, INC., dba ABC WINDOW CO., a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. REGAL CULTURED MARBLE, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. STATE INSULATION, INC., dba WESTERN INSULATION, INC., dba WESTERN SPECIALTIES, a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. THE JASPER COMPANIES, a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. 'T' McGEE ELECTRIC, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. TOUCH UP, INC., dba T & R PAINTING & DRYWALL, a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. TRIUMPH SHEET METAL, INC., a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. VINTAGE DESIGN, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. WALTERS WHOLESALE ELECTRIC, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| MICHAEL STEVEN BRUNNER AND ANN MARIE BRUNNER; JEREMY SIMONEAUX AND GRETCHEN A. SIMONEAUX; KURT J. LEISS AND REGINA G. LEISS; ADAM SOKOLIC AND KERRI KIMBERLEY; and DEAVAH L. YUNE v. WILLIAM LYON HOMES, INC., a California corporation; SHEA HOMES LIMITED PARTNERSHIP, a California limited partnership; J.F. SHEA CO., INC., a Nevada corporation; LENNAR HOMES OF CALIFORNIA, INC., a California corporation; TRINIDAD COMMUNITY ASSOCIATION, a California corporation; TALEGA ASSOCIATES, LLC, a Delaware Limited Liability Company; TALEGA MAINTENANCE CORPORATION, a California corporation | CA Superior Court, County of Orange, Complex Civil, 30-2010-00406014-CU-CD-CXC; motion to compel judicial reference granted; no referee selected | Construction Defect | Claim for unspecified damages. |
| GILBERT CALZADA; LISETTE CALZADA; NELSON M. BISARRA; GENEROSA R. BISARRA; DAN W. HESS; RON W. KIRK; THERESA A. KIRK; JAMES S. SMART; BARBARA A. SMART; ROBERT R. WELSH; ERIKO WELSH; RONALD A. FISHER; LINDA L. FISHER; JAN KUNST; SIRKKA L. KUNST; FLOYD MOSS v. WILLIAM LYON HOMES, INC., | CA Superior Court, County of Los Angeles, MC021755 | Construction Defect | Claim for damages for repairs in unspecified amount in excess of $350,000 and investigative costs in unspecified amount in excess of $65,000. |
| WILLIAM LYON HOMES, INC. v. BEAR ROOFING, INC., a dissolved California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. BILL'S LANDSCAPING, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. BRENNAN ELECTRIC, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. CALIFORNIA WALLBOARD, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. COMMERCIAL WOOD PRODUCTS COMPANY, a California corporation; | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. DALE BARKLEY HITCHCOCK dba HITCHCOCK CONSTRUCTION, a Sole Ownership | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. DEBELLING CONSTRUCTION, INC., a dissolved California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. ERIKSSON TILE, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. G.N. PERFORMANCE PLUMBING, INC., a suspended California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. GOTHIC LANDSCAPING, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. LARRY METHVIN INSTALLATIONS, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MASCO CONTRACTOR SERVICES OF CALIFORNIA, INC., dba SCHMID INSULATION, a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. RBP OF ARIZONA, INC., dba GLAZING INDUSTRIES, a Forfeited Delaware corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. R.C. WENDT PAINTING, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. RCR PLUMBING AND MECHANICAL, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. REGAL CULTURED MARBLE, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. SO-CAL FRAMERS, INC., a dissolved California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. SOUTHWEST FINISH & SUPPLY, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. TOMKINS INDUSTRIES, INC., dba LASCO BATHWARE, an Ohio corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. TRIUMPH SHEET METAL, INC., a dissolved California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. TUNSTILL PLASTERING, INC., a suspended California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| JOHN J. WARD and TANIA WARD v. WILLIAM LYON HOMES, INC. | CA Superior Court, County of San Diego, 37-2011-00052762-CU-BC-NC | Construction Defect | Claim for cost of repair in unspecified amount in excess of $100,000 per home and diminution in value. |
| GREGORY & DEBRA ANDREWS et al. v. WILLIAM LYON HOMES, INC. | CA Superior Court, County of San Bernardino, CIVDS1103791 | Construction Defect | Claim for cost of repair in unspecified amount in excess of $50,000 per home and diminution in value. |
| VICTOR PUEBLA; MONICA PUEBLA; MARIANA GUTIERREZ; FELIPE GUTIERREZ; GREGORY PRAVEDNIKOV; GREGORY O'NEAL; PACENTIA DUNNING; WILFREDO ROMERO; FRANCISCA ROMERO v. WILLIAM LYON HOMES, INC. | CA Superior Court, County of Riverside, ROC1105650 | Construction Defect | Claim for cost of repair in unspecified amount in excess of $400,000 and investigative costs in unspecfied amount in excess of $150,000. |
| PAUL COOK et al. v. WILLIAM LYON HOMES, INC., a California corporation; HAMPTON ROAD ASSOCIATES, LLC, a Delaware limited liability company; PH INSTITUTIONAL VENTURES, a California corporation; HORIZON PLUMBING, INC., a California corporation | CA Superior Court, County of Orange, Civil Complex, 30-2008-00233522 | Construction Defect & Fraud | Claim for compensatory damages in unspecified amount in excess of $500,000 and punitive damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| MARK T. FRISBEE AND CAROLINE L. FRISBEE v. LYON COMMUNITIES; RESON ASSOCIATES, LLC, a limited liability company; PH INSTITUTIONAL VENTURES; LADERA RANCH MAINTENANCE CORPORATION; LADERA WNG SENIOR, LLC, a limited liability company; SOUTH COUNTY APARTMENT DEVELOPMENT CO., LLC, a limited liability company AKA SCADC; SOUTH COUNTY APARTMENT CONSTRUCTION COMPANY | CA Superior Court, County of Orange, Civil Complex, 30-2010-00410092-CU-CD-CXC | Construction Defect | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. RELIABLE CONTRACTORS, INC., a California corporation | CA Superior Court, County of Orange, Civil Complex, 30-2010-00410092-CU-CD-CXC | Cross-Complaint | Claim for unspecified damages. |
| DAVID G. ANDERSON and LORETTA J. ANDERSON et al. v. WILLIAM LYON HOMES, INC., a California corporation; PRESLEY HOMES, a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Construction Defect | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. A. L. NORMAN JR., a sole proprietorship | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. ALLIANCE MECHANICAL HEATING AND AIR CONDITIONING, INC. a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. CCPI, INC. fka CENTURY CAST PRODUCTS, INC., and formerly dba CENTURY MARBLE., a dissolved California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. DIAZ CONSTRUCTION COMPANY, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. EDGE METALWORKS, INC., a dissolved California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. FENCEWORKS, INC. dba GOLDEN STATE FENCE COMPANY, a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. INTERIOR DIMENSIONS, INC., a suspended California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. JAYAR MANUFACTURING, INC., a surrendered Texas corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. LARRY METHVIN INSTALLATIONS, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MARSHALL INSTALLATIONS AND WEATHERSTRIP, INC., a dissolved California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MAYER ROOFING, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MIKE SCHEINKER MASONRY, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. PREFERRED FRAMING, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. R.C. WENDT PAINTING, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. RBM CONSTRUCTION, INC., a suspended California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. R.E.M. CONCEPTS, INC. dba ABC WINDOW CO., a dissolved California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MASCO CONTRACTOR SERVICES OF CALIFORNIA, INC. fka SCHMID INSULATION CONTRACTORS, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. SHOWTIME TILE AND MARBLE, a sole proprietorship | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. STAUFFER'S LANDSCAPE, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. SUN PLUMBING CO., INC., a dissolved California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. 'T' MCGEE ELECTRIC, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. TOMKINS INDUSTRIES, INC., dba LASCO BATHWARE, a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. TUNSTILL PLASTERING, INC., a suspended California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. WALTERS WHOLESALE ELECTRIC CO., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| JAIME MARTI; ROMULO AND SUSANA BALINO; SUSAN BURGES; FERNANDO COTA; JEFFERY AND SHIRLEY ESTANA; RAYMOND AND SOPHIA FLORES; JASON AND ADRIANA GLIHA; MAYRA LOPEZ; EDWARD AND FELGEN MARIFOSQUE; ARNOLD NORTON; KATHLEEN PENDER; JOHN TEEVAN AND KRISTEN LOUPASSAKIS; CHARLES WANG v. RWR HOMES, INC.; OAKWOOD DEVELOPMENT, INC.; PACIFIC COAST COMMUNITIES; PH INSTITUTIONAL VENTURES; LB/L-RWR OTAY 62 LLC; LB/L-RWR OTAY 91, LLC; LB/L-RWR MASTER LLC; RWR II, LLC; OTAY RANCH ONE, LLC; OTAY RANCH TWO, LLC; OTAY PRIMOSE-90LLC; OTAY RANCH I WEST-3, LLC; OTAY R-29, LLC; MCMILLIN CONSTRUCTION SERVICES, LLC; WILLIAM LYON HOMES, INC. (DOE) | CA Superior Court, County of San Diego, Central Division, 37-2001-00092941-CU-CD-CTL | Construction Defect | Claim for unspecified damages. |
| COLLEEN ROBINSON et al. v. William Lyon Homes, Inc., WLH Development, Inc., and 4S LOTS 2 & 8, LLC, | CA Superior Court, County of San Diego, Central Division, 37-2011-00096610 | Construction Defect | Claim for damages in unspecified amount in excess of $1,000,000. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| MARK & JONI BRANHAM; MARIA CULBERTSON; RICK E. ROBLES; ROY A. & BARBARA M. STRIZIC; JEFFREY & MARY WILLIS v. WILLIAM LYON HOMES, INC.; PRESLEY HOMES | CA Superior Court, County of San Diego, 37-2010-00105271 | Construction Defect | Claim for damages for cost of repair in unspecified amount in excess of $50,000 per home and investigation costs. |
| SUSANNE L. KOSTRENICH v. WILLIAM LYON HOMES, INC.; COVENANT HILLS P-30A, LLC; RICHARD ROBINSON | CA Superior Court, County of Orange, Civil Complex Division 30-2009-00306282 (Now pending in judicial reference) | Construction Defect; Fraud (Rescission) | Claim for damages in unspecified amount in excess of $2,000,000, rescission and diminution in value. |
| GREGORY A. STEARNS as trustee of the GREGORY A. AND CINDY STEARNS LIVING TRUST, WILLIAM DON COMBS and JUANITA COMBS; JOHN L. MAURER and KIM MAURER; EDWARD SEGURA v. WILLIAM LYON HOMES, INC., a California corporation | CA Superior Court, County of San Diego, 37-2011-00086438 | Construction Defect | Claim for damages in unspecified amount in excess of $1,000,000 and investigation costs. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| ROGER ECKERT; THUAN & JOHN YAMAMOTO; JUDY FISHER; VIRGIL & ANITA ACACIO; ASHRAF SHAIKH; DUONG DIEN; TOMONARI YAMANAKA; DONG & ANNE KHONG; RONALD SANTOS; DAVID TSAO; CORAZON & FRANCIS PUNTANILLA; DIANA DINH; EMIL & YOLANDA BEBLA; SEYAMAK & PARVIN SULIAMANI; DONNA DEMELLO-MARTIN; ROBERT & KIMBERLY ROOT; WALTER CHANG; RICHARD SMITH; KIRANRAJ KARJERA; SHEELA SUKUMARAN; THANH DO; EDILBERT & MILAGROS ARUCAN; LONG TRINH; RAHUL & NARTAN PATEL; EDWARD FLEIGE; BIKRAM SINGH; VICTOR & HOA NGUYEN; SANDRA HOFFMAN; REMO MARRA; RAYMOND BEHVAND; RANDALL GAST; RAJU & RACHANA REDDY; TAN NGUYEN; VIVEK & LEENA GUPTA; WAEL KAMEL; SATISH MELUKADAVAN; ZHIYI LIU; AMIYA SATAPATHY; TONY & CAROLYN DAVID | CA Superior Court, County of Santa Clara, 110CV173057 | Construction Defect | Claim for damages in unspecified amount in excess of $50,000 per home. |
| REBECCA DONNELL and DAVID DONNELL v. REECE STAIR, INC. | CA Superior Court, County of Sacramento, 34-2009-00058051 | Personal Injury; Loss of Consortium | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. RBF CONSULTING, JAMS | JAMS (Arbitration), Orange County, California, 1200040445 | Breach of Contract | Claim for unspecified damages. |
| MID-CENTURY INSURANCE CO. v. WESTERN POTTERY; WILLIAM LYON HOMES, INC. | CA Superior Court, County of Ventura - Ventura Division, 56-2010-00375251-CU-PO-VTA | Subrogation | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. WP INDUSTRIES, INC. | CA Superior Court, County of Ventura - Ventura Division, 56-2010-00375251-CU-PO-VTA | Subrogation | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. WESTERN POTTERY, LLC | CA Superior Court, County of Ventura - Ventura Division, 56-2010-00375251-CU-PO-VTA | Subrogation | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. WDI INTERNATIONAL Inc. | CA Superior Court, County of Ventura - Ventura Division, 56-2010-00375251-CU-PO-VTA | Subrogation | Claim for unspecified damages. |
| AMANDA WARREN; PAUL WARREN; YVETTE WATSON v. ASBESTOS DEFENDANTS (including William Lyon Homes, Inc.) | CA Superior Court, San Francisco County, ASBESTOS CGC-09-275063 | Wrongful Death - Asbestos | Claim for unspecified damages. |
| STATE FARM GENERAL INSURANCE COMPANY v. BUETLER HEATING AND AIR CONDITIONING, INC; WILLIAM LYON HOMES, INC.; RT/DT, INC. D/B/A THOMAS PLUMBING | CA Superior Court, San Joaquin County, 39-2011-00260916-CL-PO-STK | Subrogation | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. BEUTLER HEATING AND AIR CONDITIONING dba BEUTLER CORPORATION, a California corporation | CA Superior Court, San Joaquin County, 39-2011-00260916-CL-PO-STK | Subrogation | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. RT/DT, INC., a California corporation dba THOMAS PLUMBING | CA Superior Court, San Joaquin County, 39-2011-00260916-CL-PO-STK | Subrogation | Claim for unspecified damages. |
| TIMOTHY VANSANDT; CHERYL VANSANDT; SUSAN VANSANDT; GRACE TERRY; KEVIN VANSANDT v. ASBESTOS DEFENDANTS (INCLUDING WILLIAM LYON HOMES, INC.) | CA Superior Court, San Francisco County, ASBESTOS CGC-10-275467 | Wrongful Death - Asbestos | Claim for unspecified damages. |
| USAA CASUALTY INSURANCE COMPANY v. WILLIAM LYON HOMES, INC.; EXECUTIVE PLUMBING, INC. | CA Superior Court, San Bernardino County, CIVDS1107168 | Subrogation | Claim for unspecified damages. |
| ANNIE ROXINE ROBINSON v. ROSABELLA COMMUNITY ASSOCIATION; WILLIAM LYON HOMES, INC. | CA Superior Court, San Bernardino County, CIVDS 1108922 | Personal Injury | Claim for special damages in the amount of $22,969.91 and general damages in the a mount of $500,000. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| DEBRA VANSLAMBROOK; et al v. WILLIAM LYON HOMES, INC.; MERIT CONCRETE, INC., RIVERA COMPANY; CITY OF CLAYTON; OAKHURST GEOLOGICAL HAZARD ABATEMENT DISTRICT | CA Superior Court, Contra Costa County, C0500837 | Slope failure | Claim pending settlement (William Lyon Homes, Inc. to contribute $500,000). |
| WILLIAM LYON HOMES, INC v. MERIT CONCRETE, INC. | CA Superior Court, Contra Costa County, C0500837 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC v. DMC CONCRETE, INC. | CA Superior Court, Contra Costa County, C0500837 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC v. RIVERA COMPANY | CA Superior Court, Contra Costa County, C0500837 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC v. CITY OF CLAYTON & OAKHURST GEOLOGICAL HAZARD ABATEMENT DISTRICT | CA Superior Court, Contra Costa County, C0500837 | Cross-Complaint | Claim for unspecified damages. |
| RICHARD HERNANDEZ v. WILLIAM LYON HOMES, INC. | CA Superior Court, Orange County, PZC00427247 | Workers' Compensation | Claim for unspecified damages. |
| JOSEPH BACA v. WILLIAM LYON HOMES, INC. | CA Superior Court, Sacramento County, PZC00454178 | Workers' Compensation | Claim for unspecified damages. |
| REBECCA DONNELL v. WILLIAM LYON HOMES, INC. | CA Superior Court, Sacramento County, ADJ 7250291 | Workers' Compensation | Claim for unspecified damages. |
| MICHAL CROSBY v. WILLIAM LYON HOMES, INC. | U.S. Equal Employment Opportunity Commission, Phoenix District Office, 540-2011-03370 | Administrative complaint alleging disability discrimination and retaliation | No amount claimed in the EEOC Complaint; $85,000 demanded in prior correspondence. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| STALLION MOUNTAIN HOA v. WILLIAM LYON HOMES, INC. | Clark County District Court, Las Vegas, NV, 451.0022 | Homeowner's Association claims are for civil, streets, gutters, curbs, sidewalks and walls | Claim pending settlement (William Lyon Homes, Inc. to contribute $3,500). |
| RANEY ET AL. v. WILLIAM LYON HOMES, INC. | Clark County District Court, Las Vegas, NV, 451.0035 | Construction Defect | Claim for damages in the amount of $550,000. |
| JAMES LA ROCCA v. WILLIAM LYON HOMES, INC. | Clark County District Court, Las Vegas, NV, 451.0040 | Construction Defect | Claim pending settlement (William Lyon Homes, Inc. to contribute $9,000). |
| GARTH HIRATA v. WILLIAM LYON HOMES, INC. | Clark County District Court, Las Vegas, NV, 451.0060 | Construction Defect | Claim pending settlement (William Lyon Homes, Inc. to contribute $3,750). |
| ROGER SIMON v. WILLIAM LYON HOMES, INC. | Las Vegas, NV | Negligence, Construction Defect | No claim filed; demand letters sent claiming unspecified damages. |
| ALVARADO/CARROLL v. WILLIAM LYON HOMES, INC. | Clark County District Court, Las Vegas, NV, 451.0061 | Construction Defect | Claim for unspecified damages. |
| ADKINS v. WILLIAM LYON HOMES, INC. | Clark County District Court, Las Vegas, NV, 08A576944 | Construction Defect | Claim pending settlement (William Lyon Homes, Inc. to contribute the SIR of $250,000). |
| GUSTAFSON v. WILLIAM LYON HOMES, INC. | Nye County District Court, Las Vegas, NV, CV31376 | Personal Injury - Slip & Fall | Claim for damages in the range of $50,000 to $100,000. |

2529167

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| ADAMS et al. v. WILLIAM LYON HOMES, INC. (IRON MOUNTAIN ESTATES/WIRSBO) | Las Vegas, NV | Construction Defect | No claim filed; pre-litigation NRS 40 process. |

**Plan Exhibit A**

Backstop Commitment Agreement

*Execution Copy*

BACKSTOP COMMITMENT LETTER

As of November 4, 2011

CONFIDENTIAL

William Lyon Homes, Inc.
William Lyon Homes
4490 Von Karman Avenue
Newport Beach, California 92660

Attention: Matthew R. Zaist

You have advised Luxor Capital Partners, LP, Luxor Capital Partners Offshore Master Fund, LP, Luxor Spectrum, LLC, Luxor Spectrum Offshore Master Fund, LP, Luxor Wavefront, LP, OC 19 Master Fund L.P. – LCG, GAM Equity Six, Inc. and their affiliates (collectively, the "*Initial Backstop Party*" and a "*Backstop Party*" and, together with each assignee under *Section VIII* hereof, the "*Backstop Parties*") that William Lyon Homes, a Delaware corporation ("*DE Lyon*") and William Lyon Homes, Inc., a California Corporation ("*CA Lyon*") and their respective subsidiaries (collectively, "*you*" or the "*Company*") intend to effect a restructuring and reorganization of the Company (the "*Restructuring*") pursuant to a "pre-packaged" plan of reorganization under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in chapter 11 cases commenced by the Company in the Bankruptcy Court for the District of Delaware (the "*Chapter 11 Cases*").

The Restructuring will be consummated substantially on the terms set forth in the term sheet attached hereto as *Exhibit A* (the "*Term Sheet*"). Pursuant to the Restructuring, among other things, (a) CA Lyon will issue $75,000,000 in aggregate initial principal amount of 12% (8% cash interest) Senior Second Lien New Offered Securities due 2016 (the "*New Notes*") to holders of the Existing Notes (as defined below)), (b) DE Lyon will issue shares of new Class A Common Stock ("*Class A Common Shares*") initially representing 28.5% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan (as defined in the Term Sheet) or the Warrants (as defined below) to holders of the Existing Notes (together the issuance of New Notes described in (a) above, the "*Exchange*"), (c) DE Lyon will issue to certain holders of Existing Notes shares of new Class C Common Stock ("*Class C Common Shares*") and shares of new Convertible Preferred Stock ("*Preferred Shares*" and together with the Class C Common Shares, the "*New Offered Securities*"), convertible on a one-to-one basis into Class C Common Shares, collectively representing 51.5% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan or the Warrants and after giving effect to the payment of the Backstop Fee), for an aggregate cash purchase price of $60,000,000 ($10,000,000 million for the Class C Common

Shares, and $50,000,000 for the Preferred Shares), which will be offered in a private placement rights offering or a private placement to accredited investors (the *"Rights Offering"*), (d) in connection with the consummation of the Exchange and the Rights Offering and subject to all of the conditions set forth below, the existing equity of DE Lyon will be cancelled, and DE Lyon will issue to the holders of its existing equity, in exchange for a purchase price of $25,000,000 in cash, shares of Class B Common Stock (*"Class B Common Shares"*), initially representing 20.0% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan or the Warrants), (e) in consideration for intrinsic value, DE Lyon will issue to the holders of its existing equity warrants to purchase Class B Common Shares (*"Warrants"*) representing an additional 9.1% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan), at a strike price based on a $325,000,000 equity value of DE Lyon, and (f) after giving effect to the issuance of the Warrants, but before giving effect to the Management Incentive Plan, the Class A Common Shares will represent 25.9% of the capital stock of DE Lyon, the Class B Common Shares will represent 27.3% of the Capital Stock of DE Lyon, and the Class C Common Shares (assuming full conversion of the Preferred Shares and the payment of the Backstop Fee to the extent paid in the form of Class C Common Shares) will represent 46.8% of the capital stock of DE Lyon. For purposes of this Backstop Commitment Letter, *"Existing Notes"* shall mean the following notes issued by William Lyons Homes, Inc.: (a) the 7 5/8% Senior Notes due 2012 CUSIP #552075-AE-3, (b) the 10 3/4% Senior Notes due 2013 CUSIP #552075-AA-1, and (c) the 7 1/2% Senior Notes due 2014; and "Restructuring Support Agreement" shall means the Restructuring Support Agreement dated as of November 4, 2011 by and among the company and certain holders of Existing Notes.

This backstop commitment letter agreement (together with all exhibits and schedules hereto, the *"Backstop Commitment Letter"*) will confirm the understanding and agreement among the Initial Backstop Party and the Company in connection with the Restructuring with respect to the backstop purchase of the proposed issuance of the New Offered Securities. In connection with the Restructuring, you have requested that the Initial Backstop Party commit to purchase up to $60,000,000 of the New Offered Securities as set forth in more detail in *Section I* below.

I.    The Commitment.

The Initial Backstop Party is pleased to confirm by this Backstop Commitment Letter its commitment (the *"Commitment"*) to you to purchase or cause one or more of its affiliates to purchase for cash up to $60,000,000 in the aggregate of the New Offered Securities issued pursuant to the Restructuring as follows: the lesser of (1) $60,000,000 of New Offered Securities and (2) the amount of New Offered Securities that are offered pursuant to the Rights Offering in connection with the Restructuring and not otherwise purchased. The Commitment is subject to the terms and conditions set forth or referred to in this Backstop Commitment Letter.

II.    Conditions.

The commitments and agreements of the Backstop Parties described herein are subject to, and conditioned upon, (i) the negotiation, execution and delivery of definitive documentation with respect to the New Offered Securities, the Rights Offering and the

Restructuring reasonably satisfactory to the Initial Backstop Party, (ii) the absence of any event or occurrence which has resulted in (a) individually or in the aggregate, any material adverse change in the assets, liabilities, business, operations or condition (financial or otherwise) of the Company or its subsidiaries, taken as a whole (*provided, however*, that the Chapter 11 Cases and the events leading to the Chapter 11 Cases or resulting directly or indirectly therefrom shall not, in and of themselves, shall not be deemed to be an event or occurrence under this clause (a)), or (b) could reasonably be expected to result in a material adverse effect on the ability of the Company to complete the Restructuring in accordance with the milestones in the Restructuring Support Agreement; (iii) the accuracy and completeness of in all material respects of all representations that the Company and its respective affiliates make to the Backstop Parties in connection with this Backstop Commitment Letter and the transactions contemplated hereby; (iv) compliance by the Company in all material respects with the terms of this Commitment Letter and the Restructuring Support Agreement; (v) the payment of the Backstop Fee and other fees, costs and expenses hereunder or due in connection herewith on closing date of the Restructuring and the purchase of the New Offered Securities pursuant to the Commitment (the "*Closing Date*"); (vi) the approval by the bankruptcy court pursuant to an order, in form and substance reasonably satisfactory to the Backstop Parties, approving this Backstop Commitment Letter and providing for treatment as a Subordinated Administrative Expense Claim (as defined below) of the Backstop Fee (which shall be payable in cash to the Backstop Parties in the amount of $2,500,000 if the Backstop Parties do not backstop the Rights Offering under the circumstances described in *Section III* or the transactions contemplated by Term Sheet are otherwise not approved by the Bankruptcy Court and consummated by the Company) and reimbursement of expenses and indemnity provisions of the Backstop Party contemplated hereunder, within 20 business days of the commencement of the cases of the Company and its subsidiaries; (vii) the prior or concurrent satisfaction in all material respects of the conditions numbered 1, 2, 3, 5, 6, 7 (with respect to all material consents), 8, 9, 10 and 11 to the Restructuring identified in the Term Sheet beside the heading "*Conditions*"; and (viii) the concurrent consummation of the Restructuring in all material respects in accordance with the terms in the Term Sheet.   "*Subordinated Administrative Expense Claim*" shall mean an administrative expense claim allowed pursuant to section 503(b) of the Bankruptcy Code (x) that is subordinated to, and only to, the indefeasible prior payment in full in cash of all Senior Claims (unless the holders of such Senior Claims otherwise consent to a different treatment or the holders of Senior Claims are paid in full and the holders of such subordinated administrative expense claims receive only equity securities in respect of such subordinated claims) and (y) with respect to which the holders of such subordinated administrative expense claims are deemed to consent to such treatment under section 1129(a)(9) of the Bankruptcy Code. "*Senior Claims*" shall mean allowed claims of the lenders and administrative agent under the Loan Agreement dated October 20, 2009, as amended, and under any orders of the bankruptcy court. The phrase "*in all material respects*" when used in the foregoing conditions to qualify a representation, warranty, condition or covenant already qualified by materiality or a term of substantially the same meaning shall be disregarded to the extent of such qualification.

III.    Backstop Fee.

    In consideration of the execution and delivery of this Backstop Commitment Letter by the Backstop Party, you agree to pay the to the Initial Backstop Party a nonrefundable commitment fee (collectively, (a) and (b), the "*Backstop Fee*") equal to either (a) if the New

Offered Securities are purchased in pursuant to the Commitment, 2.00% of the Capital Stock of DE Lyon, which shall be payable in shares of Class C Common Shares on the Closing Date, or (b) if the Backstop Parties do not purchase the New Offered Securities pursuant to the Commitment because of any of (1) the transactions contemplated by the Term Sheet are otherwise not approved by the Bankruptcy Court, (2) the transactions contemplated by this Backstop Commitment Letter and the Term Sheet are otherwise not consummated by the Company (when the Backstop Parties are prepared to perform after satisfaction of all applicable conditions to this Commitment and in the Term Sheet), or (3) this Commitment is terminated pursuant to the terms hereof, $2,500,000 in cash, subject to *clause (vi)* of *Section II*, payable on the earlier of (v) the date on which the Company files a motion with the Court seeking approval of another party or parties to backstop the Rights Offering, in full or in part, in lieu of the Backstop Parties, (w) in the event of a breach of this Backstop Commitment Letter by the Company that results in the Backstop Commitment not being used by virtue of the exercise of the Backstop Parties of termination rights set forth in *Section VI* hereof, three business days after the Backstop Parties or their counsel delivers a notice to counsel for the Company that the Company is in breach of this Commitment, (x) the date on which the Company seeks approval of a restructuring that is materially different or modified from the Restructuring as described in the Term Sheet in a manner adverse to the Backstop Parties, (y) the date upon which the Backstop Parties deliver notice of termination of this Backstop Commitment Letter pursuant to *Section VI* herein or (z) on May 15, 2012 (the "*Termination* Date"), when this Backstop Commitment Letter terminates in accordance with its terms. The Backstop Fee shall be fully earned on the date hereof, shall not be subject to set off or counterclaim and shall be non-refundable when paid.

IV.      Information.

         The Company represents and covenants that (i) all information (other than the financial projections) (the "*Information*") that has been or will be made available to the Backstop Parties by you, or any of your affiliates or representatives is or will be, when furnished and taken together with all related information so furnished, complete and correct in all material respects and does not or will not, when furnished, contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements contained therein not materially misleading in light of the circumstances under which such statements are made, and (ii) the financial projections (the "*Projections*") that have been or will be made available to the Backstop Parties by you, or any of your affiliates or representatives have been or will be prepared in good faith based upon reasonable assumptions. You agree that if any time prior to the Closing Date, any of the representations in the preceding sentence would be incorrect if the Information and Projections were being furnished, and such representations were being made, at such time, then you will promptly supplement, or cause to be supplemented, the Information and Projections so that such representation will be correct in all material respects under those circumstances.

V.      Expenses and Indemnification.

         The Company agrees to reimburse the Initial Backstop Party for all reasonable and documented out-of-pocket fees and expenses (including, but not limited to, the reasonable fees, disbursements and other charges of Gibson, Dunn & Crutcher LLP, as counsel to the Initial Backstop Party, and of any special and local counsel to the Backstop Parties) and up to $150,000 of reasonable and documented out-of-pocket fees and expenses of one additional Backstop Party

incurred in connection with Commitment and the other aspects of the Restructuring, including the preparation of the definitive documentation therefor and the other transactions contemplated hereby. The Company further agrees that within one business day of the execution of this Backstop Commitment Letter, the Company will deposit an amount equal to $200,000 by wire transfer in accordance with the Initial Backstop Party's instructions (the "*Deposit*"). From time to time the Initial Backstop Party may apply the Deposit to expenses hereunder, and may request an additional deposit to replenish to Deposit to an amount equal to $200,000. Upon the closing of the Rights Offering and the Restructuring, the Initial Backstop Party will credit the remaining deposit to unpaid expenses and refund any excess to the Company.

Further, the Company hereby agrees to indemnify and hold harmless the Backstop Parties and each of their respective affiliates and all their respective officers, directors, partners, trustees, employees, shareholders, advisors, agents, representatives, attorneys and controlling persons and each of their respective heirs, successors and assigns (each, an "*Indemnified Person*") from and against any and all losses, claims, damages and liabilities to which any Indemnified Person may become subject arising out of or in connection with this Backstop Commitment Letter, the Restructuring, the offering of the New Offered Securities, any of the other transactions contemplated by this Backstop Commitment Letter or the Term Sheet, any other transaction related thereto or any claim, litigation, investigation or proceeding relating to any of the foregoing, regardless of whether any Indemnified Person is a party thereto and whether or not the transactions contemplated hereby are consummated, and to reimburse each Indemnified Person promptly upon demand for all legal and other expenses reasonably incurred by it in connection with investigating, preparing to defend or defending, or providing evidence in or preparing to serve or serving as a witness with respect to, any lawsuit, investigation, claim or other proceeding relating to any of the foregoing (including, without limitation, in connection with the enforcement of the indemnification obligations set forth herein); *provided* that no Indemnified Person will be entitled to indemnity hereunder in respect of any loss, claim, damage, liability or expense to the extent that it is found by a final, non-appealable judgment of a court of competent jurisdiction that such loss, claim, damage, liability or expense resulted directly from the gross negligence or willful misconduct of such Indemnified Person. If for any reason the foregoing indemnification is unavailable to an Indemnified Person or insufficient to hold it harmless, then the Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such loss, claim, damage or liability in such proportion to reflect the economic interests of (i) the Company and its respective affiliates, stockholders or other equity holders on the one hand and (ii) such Indemnified Person on the other hand in the matters contemplated by this Backstop Commitment Letter and the Restructuring as well as the relative fault of (i) the Company and its respective affiliates, stockholders or other equity holders on the one hand and (ii) such Indemnified Person on the other hand with respect to such loss, claim, damage or liability and any other relevant equitable considerations. In no event will any Indemnified Person be liable on any theory of liability for indirect, special or consequential damages, lost profits or punitive damages as a result of any failure to fund its obligations under the Commitment, the Restructuring and the offering of the New Offered Securities contemplated hereby or otherwise in connection with the Commitment, the Restructuring or the offering of the New Offered Securities. No Indemnified Person will be liable for any damages arising from the use by unauthorized persons of information, projections or other materials sent through electronic, telecommunications or other information transmission systems that are intercepted by unauthorized persons.

VI.    Expiration of Commitment; Termination Rights.

The Commitments will expire at 5:00 p.m., New York City time, on November 4, 2011, unless on or prior to such time you have executed and returned to the Initial Backstop Party a copy of this Backstop Commitment Letter.

If you do so execute and deliver to the Backstop Party this Backstop Commitment Letter, each of the Backstop Parties agrees to hold its Commitment available for you until the earlier of (i) the Closing Date upon the funding or satisfaction of the Commitment, and (ii) 5:00 p.m., New York City time, on the Termination Date. Before such date, the Backstop Parties may, upon five business days prior written notice, terminate this Backstop Commitment Letter and the Commitment hereunder, and our agreements to perform the services described herein, upon the occurrence of any of the following events (a) one or more events have occurred or information has become available that indicates with reasonable certainty that a condition precedent set forth or referred to in this Backstop Commitment Letter cannot be satisfied prior to the Termination Date, (b) the Company has breached in any material respect any of its obligations set forth in this Backstop Commitment Letter, including, without limitation, the Company's obligations under *Sections II* or *V*, (c) the Company seeks authority to enter, or enters, into a restructuring transaction that deviates materially from the Restructuring Term Sheet in a manner adverse to the Backstop Parties or the holders of the Existing Notes, or (d) the Company seeks authority to enter into the Restructuring and the Rights Offering is backstopped by a party other than the Backstop Parties pursuant to this Backstop Commitment Letter. Termination by the Backstop Parties hereunder will not relieve any Backstop Party of any liability for any breach (if any) of this Backstop Commitment Letter by such Backstop Party.

VII.    Confidentiality.

This Backstop Commitment Letter and the terms and conditions contained herein may not be disclosed by the Company to any person or entity (other than to such of your officers, directors, agents, attorneys and advisors) without the prior written consent of the Backstop Party; *provided* the Company may disclose the existence of and the terms and conditions of this Backstop Commitment Letter to (a) the holders of the Existing Notes and their counsel and financial advisors, (b) to the "Lenders" and the "Administrative Agent" under the Company's existing secured term loan facility and their counsel and other professional advisors, (c) in the disclosure statement relating to Restructuring or any offering memorandum or other documents with respect to the New Rights Offering, and (d) otherwise as may be required by applicable laws, including applicable securities laws in the opinion of the Company's outside securities counsel.

You acknowledge that the Backstop Parties and their respective affiliates may be providing debt financing, equity capital or other services to other entities in respect of which you may have conflicting interests regarding the transactions described herein and otherwise. Each Backstop Party agrees that none of it or any of its affiliates will use confidential information obtained from you by virtue of the transactions contemplated by this Backstop Commitment Letter or their other relationships with you in connection with the performance by such Backstop Party or such affiliates of services for other entities, and each Backstop Party agrees that none of it or any of its affiliates will furnish any such information to other entities. You also

acknowledge that none of the Backstop Parties or any of their respective affiliates has any obligation to use in connection with the transactions contemplated by this Backstop Commitment Letter, or to furnish to you, confidential information obtained from other persons.

VIII.    <u>Assignment and Syndication</u>.

        The Company shall have no right to sell, transfer, negotiate or assign its rights hereunder and any such sale, transfer, negotiation or assignment shall be void *ab initio*. Each Backstop Party will have the right to sell, transfer, negotiate or assign its rights and obligations (in whole or in part) under this Backstop Commitment Letter and the Commitment only to a Backstop Party or any affiliate of a Backstop Party or an Eligible Assignee. The Commitment of each Backstop Party shall be several and not joint; provided that the assignment of the Commitment by the Initial Backstop Party shall not relieve the Initial Backstop Party of its obligations hereunder to the extent that the assignee Backstop Party shall fail to satisfy its obligations hereunder in accordance with this Backstop Commitment Letter. "*Eligible Assignee*" shall mean the financial institution identified by the Initial Backstop Party to the Company and the administrative agent under the Loan Agreement dated October 20, 2009 in writing on the date hereof.

IX.    <u>Survival</u>.

        The provisions of this Backstop Commitment Letter relating to the payment of fees and expenses, indemnification and contribution and confidentiality and the provisions of *Sections III, V, VI, VII, IX, X* and *XI* hereof will survive the expiration or termination of the Commitments or this Backstop Commitment Letter (including any extensions) and the execution and delivery of definitive financing documentation.

X.    <u>Choice of Law; Jurisdiction; Waivers</u>.

        This Backstop Commitment Letter will be governed by and construed in accordance with the laws of the State of New York. The Company hereby irrevocably submits to the non-exclusive jurisdiction of any New York State court or Federal court sitting in the County of New York in respect of any suit, action or proceeding arising out of or relating to the provisions of this Backstop Commitment Letter and irrevocably agrees that all claims in respect of any such suit, action or proceeding may be heard and determined in any such court. The parties hereto hereby waive any objection that they may now or hereafter have to the laying of venue of any such suit, action or proceeding brought in any such court, and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. THE PARTIES HERETO HEREBY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING ARISING OUT OF RELATING TO THIS BACKSTOP COMMITMENT LETTER. Notwithstanding the foregoing consent to jurisdiction, upon the commencement of a proceeding under the Bankruptcy Code, each of the parties hereto agrees that the bankruptcy courts sitting in the District of Delaware shall have non-exclusive jurisdiction with respect to any matter under or arising out of or in connection with this Backstop Commitment Letter.

XI.    <u>Miscellaneous</u>.

This Backstop Commitment Letter may be executed in one or more counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument. Delivery of an executed signature page of this Backstop Commitment Letter by facsimile transmission will be effective as delivery of a manually executed counterpart hereof. This Backstop Commitment Letter may not be amended or waived except by an instrument in writing signed by each of the Company and the Backstop Party.

This Backstop Commitment Letter, the attached Exhibits set forth the entire understanding of the parties hereto as to the scope of the Commitments and the obligations of the Backstop Party hereunder. This Backstop Commitment Letter supersedes all prior understandings and proposals, whether written or oral, between the Backstop Parties and you relating to their purchase of the New Offered Securities.

This Backstop Commitment Letter has been and is made solely for the benefit of the parties signatory hereto and the Indemnified Persons, and nothing in this Backstop Commitment Letter, expressed or implied, is intended to confer or does confer on any other person or entity any rights or remedies under or by reason of this Backstop Commitment Letter or the agreements of the parties contained herein.

You acknowledge that each Backstop Party may be (or may be affiliated with) a full service financial firm and as such from time to time may, together with its affiliates, effect transactions for its own account or the account of customers, and hold long or short positions in debt or equity securities or loans of business entities that may be the subject of the transactions contemplated by this Backstop Commitment Letter. You hereby waive and release, to the fullest extent permitted by law, any claims you have with respect to any conflict of interest arising from such transactions, activities, investments or holdings, or arising from the failure of any Backstop Party or any of its respective affiliates to bring such transactions, activities, investments or holdings to your attention.

You acknowledge that the transactions contemplated by this Backstop Commitment Letter are arms'-length commercial transactions and that each Backstop Party is acting as principal and in its own best interests. The Company is relying on its own experts and advisors to determine whether the transactions contemplated by this Backstop Commitment Letter are in the Company's best interests. You agree that each Backstop Party will act under this Backstop Commitment Letter as an independent contractor and that nothing in this Backstop Commitment Letter, the nature of our services, or in any prior relationship will be deemed to create an advisory, fiduciary or agency relationship between any Backstop Party on the one hand and the Company, its stockholders or its affiliates on the other hand.

You agree to provide us, prior to the Closing Date, with all documentation and other information required by bank regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations, including, without limitation, the U.S.A. Patriot Act.

[SIGNATURE PAGE FOLLOWS]

If you are in agreement with the foregoing, kindly sign and return to us the enclosed copy of this Backstop Commitment Letter.

Very truly yours,

**INITIAL BACKSTOP PARTY:**

LUXOR CAPITAL PARTNERS, LP
By: LCG Holdings, LLC, its general partner

By: _____
Name: Norris Nissim
Title: General Counsel

LUXOR CAPITAL PARTNERS OFFSHORE
MASTER FUND, LP
By: LCG Holdings, LLC, its general partner

By: _____
Name: Norris Nissim
Title: General Counsel

LUXOR SPECTRUM, LLC
By: LCG Holdings, LLC, its managing member

By: _____
Name: Norris Nissim
Title: General Counsel

LUXOR SPECTRUM OFFSHORE MASTER
FUND, LP
By: LCG Holdings, LLC, its general partner

By: _____
Name: Norris Nissim
Title: General Counsel

LUXOR WAVEFRONT, LP
By: LCG Holdings, LLC, its general partner

By: _____
Name: Norris Nissim
Title: General Counsel

OC 19 MASTER FUND L.P. – LCG
By:, Luxor Capital Partners, LP, its investment
manager

By: _____
Name: Norris Nissim
Title: General Counsel

GAM EQUITY SIX INC.
By: Luxor Capital Group, LP, its investment
manager

By: _____
Name: Norris Nissim
Title: General Counsel

Accepted and agreed to as of the
date first above written:

WILLIAM LYON HOMES, INC.

By:
Name:  Matthew R. Zaist
Title:    Executive Vice President


WILLIAM LYON HOMES

By:
Name:  Matthew R. Zaist
Title:    Executive Vice President

**Exhibit A**

**TERM SHEET**

101176692.2

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

# WILLIAM LYON HOMES
# WILLIAM LYON HOMES, INC.
## SUMMARY OF THE PRINCIPAL TERMS FOR

### Solicitation of Votes for a Potential In-Court Pre-packaged Plan of Reorganization under Chapter 11

#### Issuance of

New 12% (8% cash interest) Senior Second Lien Notes due 2016 of William Lyon Homes, Inc., a California corporation ("CA Lyon") and new Class A Common Stock of William Lyon Homes, a Delaware corporation ("DE Lyon," and collectively with CA Lyon, "WLH")

to Holders of CA Lyon's outstanding

| | |
|---|---|
| 7⅝% Senior Notes due 2012 | CUSIP #552075-AE-3 |
| 10¾% Senior Notes due 2013 | CUSIP #552075-AA-1 |
| 7½% Senior Notes due 2014 | CUSIP #552075-AC-7 |

("collectively, the "Old Notes")

and

#### Rights Offering
of New Class C Common Stock and Convertible Preferred Stock
of DE Lyon  for Cash

2503959.

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

*Set forth herein are terms and conditions for a proposed series of restructuring transactions (collectively, the "Restructuring Transactions"), to be effected through a pre-packaged plan of reorganization under Chapter 11. These terms and conditions are provided for discussion purposes only and do not constitute an offer, agreement or commitment, nor an advertisement or offer to buy or sell securities, by any party.*

*This Term Sheet is by its nature a summary only and is not all-inclusive. This Term Sheet does not include descriptions of all of the terms, conditions and other provisions that are to be contained in the definitive documentation relating to the exchange offer, the consent solicitation or the New Notes. This Term Sheet is not intended to limit the scope of discussion and negotiation of any matters even if inconsistent with the specific matters set forth herein. No oral agreements between or among the parties shall be binding under any circumstances at any time. The terms included in this Term Sheet shall be kept strictly confidential, shall not be reproduced or disclosed, and shall not be used other than in connection with evaluating the transaction described herein.*

*Capitalized terms used herein without other definition have the respective meanings assigned to such terms in the indentures respectively governing the Old Notes.*

## *The New Securities*

New Note Issuer ............................. CA Lyon.

New Equity Issuer .......................... DE Lyon.

The Exchange Offer........................ CA Lyon will issue $75 million in aggregate initial principal amount of 12% (8% cash interest) Senior Second Lien New Notes due 2016 (the "New Notes") to holders of the Old Notes.

DE Lyon will issue shares of new Class A Common Stock ("Class A Common Shares") initially representing 28.5% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan or the Warrants) to holders of the Old Notes.

The Rights Offering........................ DE Lyon will issue shares of new Class C Common Stock ("Class C Common Shares") and shares of new Convertible Preferred Stock ("Preferred Shares"), convertible on a one-to-

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

one basis into Class C Common Shares, collectively representing 51.5% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan or the Warrants), for an aggregate cash purchase price of $60 million ($10 million for the Class C Common Shares, and $50 million for the Preferred Shares), in the rights offering.

Backstop Fee.................................. Upon receipt by DE Lyon of $60 million for the Class C Common Shares and the Preferred Shares issued in the Rights Offering, those parties that initially entered into a binding commitment to purchase at least $60 million of such shares (the "Backstop Investors") shall receive a backstop fee in the form of Class C Common Shares representing 2.00% of the Capital Stock of DE Lyon (included in the initial 51.5% allocated to Class C Common Shares); provided, that, the backstop fee may, subject to and in accordance with the backstop commitment, be payable in cash (in lieu of the Class C Common Shares) to the Backstop Investors in the amount of $2.5 million.

The Class B Shares ......................... In connection with the consummation of the Exchange Offer and the Rights Offering and subject to all of the conditions set forth below, the existing equity of DE Lyon will be cancelled, and DE Lyon will issue to the holders of its existing equity, in exchange for a purchase price of $25 million in cash, shares of Class B Common Stock ("Class B Common Shares"), initially representing 20.0% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan.or the Warrants).

The Warrants ................................. In consideration for intrinsic value, DE Lyon will issue to the holders of its existing equity warrants to purchase Class B Common Shares ("Warrants") representing an additional 9.1%

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan), at a strike price based on a $325 million equity value of DE Lyon.

After giving effect to the issuance of the Warrants, but before giving effect to the Management Incentive Plan, the Class A Common Shares will represent 25.9% of the capital stock of DE Lyon, the Class B Common Shares will represent 27.3% of the Capital Stock of DE Lyon, and the Class C Common Shares (assuming full conversion of the Preferred Shares) will represent 46.8% of the capital stock of DE Lyon.

| | |
|---|---|
| The Management Incentive Plan .... | Terms consistent with WLH proposal (e.g., 8% pool), subject to the following modifications:<br>• Initial allocation: 4%<br>• Form of initial grant: 50% restricted stock, 50% options struck at Plan Value (rather than 100% restricted stock)<br>• Remaining allocation: subject to Board of Directors review, not to occur before 12 months post-emergence<br>• Tax gross-up: rather than cash bonus for taxes owed, employee can borrow same amount from WLH (secured by underlying shares), to be repaid upon earlier of liquidity event or 2 years, subject to compliance with SOX |
| The Lease | The Noteholders will agree to assume the lease in any bankruptcy proceeding, and the lock-ups will so provide. |
| The Employment Contracts | WLH shall have entered into employment contracts with each of General William Lyon and William H. Lyon, on terms consistent with proposed draft agreements (e.g., $1.5 million combined salary), subject to following modifications:<br><br>a) Performance bonus: first year capped at 50% of salary, thereafter, commensurate with position and contributions |

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

as determined by a three-member compensation committee consisting of the two independent directors and one director appointed by the holders of the Class A Common Shares

b) Severance:  base salary for remaining contract term (from date to termination to 12/31/14) plus any earned but unpaid bonus, but in no event less than 18 months

2-year non-solicitation

The Pre-packaged Plan ................... WLH will solicit the votes of the holders of the Old Notes to consummate the transactions contemplated hereby pursuant to WLH's proposed pre-packaged or pre-arranged plan of reorganization (the "Pre-packaged Plan").

Conditions ...................................... The consummation of the Restructuring Transactions expressly conditioned on satisfaction of each of the following:

1.    CA Lyon shall have received votes in favor of the Pre-packaged Plan, lock-ups and/or other documentation of the agreement by holders of Old Notes representing in the aggregate at least 66 2/3 % in principal amount of the Old Notes whose holders vote, and a majority in number of the holders of the Old Notes whose holders vote, agreeing to be bound by the Pre-packaged Chapter 11 Plan (the "Threshold Condition").

2.    CA Lyon shall have received votes in favor of the Pre-packaged Plan, of the agreement from the "Lenders" representing at least 66 2/3% of the principal amount of the Senior Secured Term Loan and at least half of the Lenders under the Secured Term Loan Agreement, agreeing to be bound by the Pre-packaged Chapter 11 Plan.

3.    CA Lyon shall have received a commitment letter from

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

the existing equity holders of DE Lyon with respect to the purchase of the Class B Common Shares.

4.      CA Lyon shall have received a commitment letter with respect to the Rights Offering described above.

5.      WLH shall have entered into an amendment, amendment and restatement, or refinancing, providing for an initial principal amount not to exceed $235 million, an annual interest rate not to exceed 10.25%, and otherwise on terms and conditions satisfactory to WLH and the Ad Hoc Committee of holders of Old Notes (the "Colony Amendment") to CA Lyon's Secured Term Loan Agreement dated as of October 20, 2009 (as heretofore amended, the "Senior Secured Loan Agreement") by and among CA Lyon, as Borrower, ColFin WLH Funding, LLC, as Administrative Agent (the "Administrative Agent"), ColFin WLH Funding, LLC, as a Lender and as Lead Arranger, and the other Lenders from time to time party thereto.

6.      CA Lyon shall have obtained consent to the Restructuring Transactions from the Administrative Agent.

7.      WLH shall have obtained any other necessary consents and approvals (including any required government consents or approvals) to the consummation of the Restructuring Transactions.

8.      CA Lyon, the Guarantors, the indenture trustee under the indenture governing New Notes, the collateral agent under each security document for the New Notes, and each other applicable party shall have executed and delivered definitive documentation reasonably satisfactory to all such

2503959.

- 6 -

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

parties, including an intercreditor agreement with respect to the New Notes and the Senior Secured Term Loan, and appropriate equity documents, with respect to the new equity.

9.    The maturity of the Church Farm loan shall have been extended, and Mountain Falls loan to be restructured, both on terms and conditions satisfactory to CA Lyon and Ad Hoc Committee (it being understood that no such restructuring should require impairment of the claims of the lenders on such loans under the Plan).

10.    WLH shall have raised $85 million pursuant to the new money terms described above under "The Rights Offering" and "The Class B Shares".

11.    WLH shall have entered into the Employment Agreements described above.

12.    Other customary conditions including, without limitation, no legal impediment to or restraint on consummation of the Consent Solicitation or Exchange Offer.

The foregoing conditions are for the mutual benefit of WLH and the Ad Hoc Committee of holders of Old Notes, and may be asserted by either party regardless of the circumstances giving rise to any such condition or may be waived by either party in whole or in part at any time and from time to time in its sole discretion.

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

### *Summary of the Principal Terms of the New Notes*

Maturity Date.................................. The fifth anniversary of Issue Date.

Interest ........................................... The New Notes will bear interest at a fixed annual rate of 12%, consisting of an 8% cash interest component and a 4% PIK interest component.  The cash interest component will be payable semi-annually in arrears.  The PIK interest component will accrete and be added to principal semi-annually in arrears.

Ranking........................................... The New Notes will be senior second lien debt obligations of CA Lyon, ranking ratably with any other unsubordinated indebtedness of CA Lyon (but structurally senior due to the second lien), but will be effectively subordinated to the Senior Secured Term Loan to the extent of the collateral securing such first lien indebtedness.

Guarantees ...................................... The New Notes will be guaranteed on a joint and several basis by the following entities (which will be the same guarantors that guaranty the Senior Secured Term Loan (the "Guarantors"):

DE Lyon
California Equity Funding, Inc., a California corporation
PH-LP Ventures, a California corporation
Duxford Financial, Inc., a California corporation
Sycamore CC, Inc., a California corporation
Presley CMR, Inc., a California corporation
William Lyon Southwest, Inc., an Arizona corporation
PH-Reilly Ventures, a California corporation
HSP, Inc., a California corporation
PH Ventures-San Jose, a California corporation
WLH Enterprises, a California Gen Partnership – formerly The Ranch Golf Club Co., formerly Carmel Mountain Ranch

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

Lyon Waterfront, LLC, a Delaware limited liability company
Lyon East Garrison Company I, LLC, a California limited
liability company

Collateral Security ........................... The New Notes will be secured by second priority liens on
substantially all assets of CA Lyon and the Guarantors, other
than "Excluded Assets" that are also excluded from the Senior
Secured Term Loan security interests.  The collateral for the
New Notes will be the same as the collateral for the Senior
Secured Term Loan.

Release of Collateral........................ Upon the release of the lien on any collateral securing the
Senior Secured Term Loan during the term of the Senior
Secured Term Loan, the lien on that collateral securing the
New Notes will be automatically released without the
necessity of any consent from the holders of the New Notes.

Sinking Fund.................................... None.

Optional Redemption....................... The New Notes will be redeemable at CA Lyon's option at any
time without penalty or premium, at the outstanding principal
amount thereof plus any accrued and unpaid interest thereon.

Trading........................................... The New Notes are expected to be eligible for trading in the
PORTAL market.

Use of Proceeds .............................. CA Lyon does not expect to receive any net cash proceeds
from the issuance of the New Notes.

Covenants ....................................... The New Indenture (as defined below) will  contain the
covenants summarized on Exhibit A hereto.

Basic Provisions of New               The New Notes will be issued under an indenture (the "New
Indenture....................................... Indenture") containing provisions substantially similar to those
of the indentures governing the Old Notes, except (i) to the

2503959.

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

extent otherwise described herein, (ii) the covenants, which are summarized on Exhibit A hereto and(iii) that the New Indenture will provide for second priority liens on substantially all of the assets of CA Lyon and the Guarantors, other than specified excluded assets.

Basic Provisions of Intercreditor Agreement ...................................... The New Notes will be subject to an Intercreditor and Subordination Agreement on substantially the terms and conditions summarized in the term sheet for the Colony Amendment, attached hereto as Exhibit B. :

### Summary of the Principal Terms of the Class A Common Shares

Class A Common Shares ............... The Class A Common Shares will initially represent 28.5% of the outstanding capital stock of DE Lyon on a fully-diluted basis, after giving effect to the Restructuring Transactions, but prior to the effectiveness of the Management Incentive Plan and the Warrants.

Approval Rights............................. The consent of the holders of 66 2/3% of the outstanding Class A Common Shares, a majority of the Class B Common Shares, and a majority of the Preferred Stock and Class C Common Shares voting as a class will be required for any merger, consolidation, or disposition of all or substantially all of the assets of DE Lyon or CA Lyon.

Voting Rights................................. The Class A Common Shares will carry one vote per share.

The consent of the holders of the Class A Common Shares will not be required for the day-to-day management or operations of DE Lyon, CA Lyon or their subsidiaries.

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

Right to Appoint Directors ............. The holders of the Class A Shares will have the right to appoint one director to a seven-director Board.

In addition, initially two incumbent independent directors who are satisfactory to the holders of (a) 66 2/3% of the Class A Common Shares, (b) a majority of the Class B Common Shares and (c) a majority of the Preferred Stock and the Class C Common Shares voting as a class, will complete their one-year terms . Thereafter, the appointment of one new independent director will be subject to the approval of the holders of (i) 66 2/3% of the Class A Shares, (ii) a majority of the Class B Shares and (iii) the Class C Shares and Preferred Shares (with the Class C Shares and the Preferred Shares voting together).  The other new independent director will be appointed by the holders of a majority of the Class C Shares and the Preferred Shares, voting together.

Right to Compel IPO ...................... The holders of a majority of the Class A Common Shares will have the right, subject to customary market exceptions, to require DE Lyon to consummate an initial public offering of its equity securities (an "IPO") within three years after the Issue Date, which right may be extended for up to two 12-month periods with the consent of a majority of the holders of the Class A Common Shares.

Conversion to Single Class of    Upon the occurrence of (i) an IPO, automatically, or (ii) the
Common Stock ............................... vote of a majority of the holders of A) the Class A Common Shares and B) the Class C Common Shares and the Preferred Shares (voting together), the Class A Common Shares, the Class C Common Shares and the Preferred Shares will be converted into a single class of common stock on a one-for-one basis.  The Class B Shares may also be converted into the same class of common stock, with the approval of a majority

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

of the holders of the Class B Shares.

### *Summary of the Principal Terms of the Class B Common Shares*

| | |
|---|---|
| Class B Common Shares | The Class B Common Shares will initially represent 20.0% of the outstanding capital stock of DE Lyon on a fully-diluted basis, after giving effect to the Restructuring Transactions, but prior to the effectiveness of the Management Incentive Plan or the Warrants. |
| Conditions to New Equity Contribution from Existing Equity Holders | Upon consummation of the Exchange Offer and the Consent Solicitation, holders of existing equity of DE Lyon will contribute $25 million for new equity (in the form of Class B Common Stock) subject to the following conditions:  (i) issuance of the Warrants on terms and conditions satisfactory to CA Lyon, DE Lyon and DE Lyon's existing equity holders (and otherwise acceptable to the Ad Hoc Committee of Old Notes), (ii) agreement on, and executed and delivery by all applicable parties of, definitive documentation for the New Notes and all of the new equity interests and (iii) satisfaction of all terms and conditions set forth in this Term Sheet, in the Exchange Offer and Consent Solicitation documents and in the definitive documentation for the New Notes and all of the new equity interests, all on terms and conditions satisfactory to CA Lyon, DE Lyon and DE Lyon's existing equity holders. |
| Approval Rights | The consent of the holders of 66 2/3% of the outstanding Class A Common Shares, a majority of the Class B Common Shares, and a majority of the Preferred Stock and Class C Common Shares voting as a class will be required for any merger, consolidation, or disposition of all or substantially all |

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

of the assets of DE Lyon or CA Lyon.

| | |
|---|---|
| Voting Rights................................. | The Class B Common Shares will carry two votes per share until transferred by the original holders.   Upon transfer of the Class B Common Shares by the original holders to any person or entity (other than a family member, heir, trust, estate planning device or similar transferee), the Class B Common Shares will automatically convert to Class A Common Shares, with one vote per share.  The holders of the Class B Common Shares may convert all or any portion of the Class B Common Shares to Class A Common Shares at their election at any time. |

The consent of the holders of the Class B Common Shares will not be required for the day-to-day management or operations of DE Lyon, CA Lyon or their subsidiaries.

| | |
|---|---|
| Right to Appoint Directors ............. | The holders of the Class B Shares will have the right to appoint two directors to a seven-director Board. |

In addition, initially two incumbent independent directors who are satisfactory to the holders of (a) 66 2/3% of the Class A Common Shares, (b) a majority of the Class B Common Shares and (c) a majority of the Preferred Stock and the Class C Common Shares voting as a class, will complete their one-year terms .  Thereafter, the appointment of one new independent director will be subject to the approval of the holders of (i) 66 2/3% of the Class A Shares, (ii) a majority of the Class B Shares and (iii) the Class C Shares and Preferred Shares (with the Class C Shares and the Preferred Shares voting together).  The other new independent director will be appointed by the holders of a majority of the Class C Shares and the Preferred Shares, voting together.

2503959.

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

Shelf Registration                     DE Lyon will provide shelf registration for Class B Common
                                       Shares that have converted to Class A Common Shares.


### Summary of the Principal Terms of the Preferred Shares

Preferred Shares ............................ Preferred Shares (together with the Class C Common Shares)
                                       will initially represent 51.5% of the outstanding capital stock
                                       of DE Lyon on a fully-diluted basis, after giving effect to the
                                       Restructuring Transactions, but prior to the effectiveness of the
                                       Management Incentive Plan or the Warrants.  The Preferred
                                       Shares will convert to Class C Common Shares on a one-to-
                                       one basis.

Preferred Dividends ........................ Holders of the Preferred Shares will be entitled to receive
                                       dividends to the extent permitted by the terms of the Senior
                                       Secured Loan Agreement, and the New Notes, at a rate of 6%
                                       per annum (based on a $50 million purchase price), payable in
                                       cash at the rate of 4% per annum, and PIK dividends at the rate
                                       of 2% per annum, or, at DE Lyon's option, any combination of
                                       cash and or PIK dividends.  Accrued and unpaid PIK
                                       dividends will be payable in cash upon conversion (i)  in
                                       connection with an IPO or (ii) to the extent cash payment is
                                       otherwise permitted by the Secured Term Loan Agreement.

Voting Rights .................................. The Preferred Shares will carry one vote per share (voting as
                                       Class C Common Stock on an as-converted basis).

                                       The consent of the holders of the Preferred Shares will not be
                                       required for the day-to-day management or operations of DE
                                       Lyon, CA Lyon or their subsidiaries.

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

Right to Appoint Directors ............. The holders of the Preferred Shares and the Class C Shares will together have the right to appoint two directors to a seven-director Board.

In addition, initially two incumbent independent directors who are satisfactory to the holders of (a) 66 2/3% of the Class A Common Shares, (b) a majority of the Class B Common Shares and (c) a majority of the Preferred Stock and the Class C Common Shares voting as a class, will complete their one-year terms . Thereafter, the appointment of one new independent director will be subject to the approval of the holders of (i) 66 2/3% of the Class A Shares, (ii) a majority of the Class B Shares and (iii) the Class C Shares and Preferred Shares (with the Class C Shares and the Preferred Shares voting together). The other new independent director will be appointed by the holders of a majority of the Class C Shares and the Preferred Shares, voting together.

No Covenants ................................. The terms of the Preferred Shares will not include any covenants, mandatory prepayments, prepayments at the option of the holders, or debt-like provisions.

Shelf Registration                          DE Lyon will provide shelf registration for the Preferred Shares.


### *Summary of the Principal Terms of the Class C Common Shares*

Class C Common Shares ............... Class C Common Shares (together with the Preferred Shares) will initially represent 51.5% of the outstanding capital stock of DE Lyon on a fully-diluted basis, after giving effect to the Restructuring Transactions, but prior to the effectiveness of the

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

Management Incentive Plan or the Warrants.

Voting Rights.................................. The Class C Common Shares will carry one vote per share.

The consent of the holders of the Class C Common Shares will not be required for the day-to-day management or operations of DE Lyon, CA Lyon or their subsidiaries.

Right to Appoint Directors ............. The holders of the Preferred Shares and the Class C Shares will together have the right to appoint two directors to a seven-director Board.

In addition, initially two incumbent independent directors who are satisfactory to the holders of (a) 66 2/3% of the Class A Common Shares, (b) a majority of the Class B Common Shares and (c) a majority of the Preferred Stock and the Class C Common Shares voting as a class, will complete their one-year terms . Thereafter, the appointment of one new independent director will be subject to the approval of the holders of (i) 66 2/3% of the Class A Shares, (ii) a majority of the Class B Shares and (iii) the Class C Shares and Preferred Shares (with the Class C Shares and the Preferred Shares voting together). The other new independent director will be appointed by the holders of a majority of the Class C Shares and the Preferred Shares, voting together.

Shelf Registration                          DE Lyon will provide shelf registration for the Class C Common Shares.


***Summary of the Principal Terms of the Class D Common Shares***

**PRIVILEGED AND CONFIDENTIAL**
**SUBJECT TO SETTLEMENT NEGOTIATIONS**

| | |
|---|---|
| Class D Common Shares ............... | The Class D Common Shares will be issued under the Management Incentive Plan. The Class D Common Shares when issued, will represent up to 8% of the outstanding capital stock of DE Lyon on a fully-diluted basis. |
| Voting Rights................................. | The Class D Common Shares will not be entitled to voting rights. |
| Restrictions on Transfer ................ | The Class D Common Shares will be subject to restrictions on transfer. |

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

## Exhibit A

## Covenants

[See attached]

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

**Exhibit B**

**Colony Amendment Term Sheet**

[See attached]

2503959.

## Plan Exhibit B

Class B Common Stock Commitment Agreement

*Execution Copy*

STOCKHOLDERS COMMITMENT LETTER

As of November 4, 2011

CONFIDENTIAL

William Lyon Homes, Inc.
William Lyon Homes
4490 Von Karman Avenue
Newport Beach, California 92660

Attention: Matthew R. Zaist

Ladies and Gentlemen:

   The undersigned, constituting all of the current beneficial stockholders of William Lyon Homes, a Delaware corporation ("*DE Lyon*") (collectively, the "*Stockholders*"), understand that DE Lyon and William Lyon Homes, Inc., a California corporation ("*CA Lyon*"), and their respective subsidiaries (collectively, "*you*" or the "*Company*") intend to effect a restructuring and reorganization of the Company (the "*Restructuring*") pursuant to a "pre-packaged" plan of reorganization under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in chapter 11 cases commenced by the Company in the Bankruptcy Court for the District of Delaware (the "*Chapter 11 Cases*").

   The Restructuring will be consummated substantially on the terms set forth in the term sheet attached hereto as *Exhibit A* (the "*Term Sheet*"). Pursuant to the Restructuring, among other things, (a) CA Lyon will issue $75,000,000 in aggregate initial principal amount of 12% (8% cash interest) Senior Second Lien New Offered Securities due 2016 (the "*New Notes*") to holders of the Existing Notes (as defined below)), (b) DE Lyon will issue shares of new Class A Common Stock ("*Class A Common Shares*") initially representing 28.5% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan (as defined in the Term Sheet) or the Warrants (as defined below) to holders of the Existing Notes (together the issuance of New Notes described in (a) above, the "*Exchange*"), (c) DE Lyon will issue to certain holders of Existing Notes shares of new Class C Common Stock ("*Class C Common Shares*") and shares of new Convertible Preferred Stock ("*Preferred Shares*" and together with the Class C Common Shares (the "*New Offered Securities*"), convertible on a one-to-one basis into Class C Common Shares, collectively representing 51.5% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan or the Warrants and after giving effect to the payment of the Backstop Fee), for an aggregate cash purchase price of $60,000,000 ($10,000,000 million for the Class C Common Shares, and $50,000,000 for the Preferred Shares), which will be offered in a private placement rights offering or a private placement to accredited investors (the "*Rights Offering*"), (d) in connection with the consummation of the Exchange and the Rights Offering and subject to all of

the conditions set forth below, the existing equity of DE Lyon will be cancelled, and DE Lyon will issue to the Stockholders, in exchange for a purchase price of $25,000,000 in cash, shares of Class B Common Stock ("*Class B Common Shares*"), initially representing 20.0% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan or the Warrants), (e) in consideration for intrinsic value, DE Lyon will issue to the Stockholders warrants to purchase Class B Common Shares ("*Warrants*") representing an additional 9.1% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan), at a strike price based on a $325,000,000 equity value of DE Lyon (the transactions described in subsections (d) and (e) shall hereinafter be collectively referred to as the "*Stockholders Transactions*"), and (f) after giving effect to the issuance of the Warrants, but before giving effect to the Management Incentive Plan, the Class A Common Shares will represent 25.9% of the capital stock of DE Lyon, the Class B Common Shares will represent 27.3% of the Capital Stock of DE Lyon, and the Class C Common Shares (assuming full conversion of the Preferred Shares and the payment of the Backstop Fee to the extent paid in the form of Class C Common Shares) will represent 46.8% of the capital stock of DE Lyon.  For purposes of this Stockholders Commitment Letter, "*Existing Notes*" shall mean the following notes issued by William Lyon Homes, Inc.: (a) the 7 5/8% Senior Notes due 2012 CUSIP #552075-AE-3, (b) the 10 3/4% Senior Notes due 2013 CUSIP #552075-AA-1 and (c) the 7 1/2% Senior Notes due 2014; and "*Restructuring Support Agreement*" shall means the Restructuring Support Agreement dated as of November 4, 2011 by and among the Company and certain holders of Existing Notes.

This stockholder commitment letter agreement (together with all exhibits and schedules hereto, the "*Stockholders Commitment Letter*") will confirm the understanding and agreement among the Stockholders and the Company in connection with the Restructuring with respect to the proposed purchase of Class B Common Stock.   In connection with the Restructuring, you have requested that the Stockholders commit to purchase shares of Class B Common Shares representing 20.0% of the capital stock of DE Lyon on a fully diluted basis (but before giving effect to the Management Incentive Plan or the Warrants) for a purchase price of $25,000,000 in cash as set forth in more detail in *Section I* below.

I.    The Commitment.

The Stockholders are pleased to confirm by this Stockholders Commitment Letter their commitment (the "*Commitment*") to purchase or cause one or more of its affiliates to purchase shares of Class B Common Shares representing 20.0% of the capital stock of DE Lyon on a fully diluted basis (but before giving effect to the Management Incentive Plan or the Warrants) for a purchase price of $25,000,000 in cash in connection with the Restructuring.  The Commitment is subject to the terms and conditions set forth or referred to in this Stockholders Commitment Letter.

II.    Conditions.

The commitments and agreements of the Stockholders described herein are subject to, and conditioned upon, (i) the negotiation, execution and delivery of definitive documentation with respect to the New Offered Securities, the Rights Offering, the Stockholders Transactions and the Restructuring reasonably satisfactory to the Stockholders, (ii) any material

2

adverse change (as defined or otherwise referenced in the Backstop Commitment Letter dated November 4, 2011 ("Backstop Commitment"), the Restructuring Support Agreement or that certain Restructuring Support Agreement dated as of November 4, 2011 by and among the Company and ColFinWLH Funding, LLC ("ColFin RSA:"), as applicable, or any similar event giving rise to a right of termination under the Backstop Commitment, the Restructuring Support Agreement or the ColFin RSA, as applicable) as a result of which, the applicable party or parties under the Backstop Commitment, the Restructuring Support Agreement or the ColFin RSA, as the case may be, shall terminate its or their respective commitments under such agreement; (iii) compliance by the Company in all material respects with the terms of this Commitment Letter; (iv) the approval by the bankruptcy court, pursuant to an order, in form and substance reasonably satisfactory to the Stockholders, approving the Restructuring on substantially the terms set forth in the Term Sheet; (v) the satisfaction or due waiver of the additional conditions precedent listed in the Term Sheet beside the heading "Conditions" (other than condition nos. 3 and 12); and (vi) the concurrent consummation of the Restructuring in all material respects in accordance with the terms in the Term Sheet.

III.    Indemnification.

The Company hereby agrees to indemnify and hold harmless the Stockholders, and each of them in their respective capacities as investors and not in their respective capacities as directors and officers of the Company, and each of their respective affiliates and all their respective officers, directors, partners, trustees, employees, shareholders, advisors, agents, representatives, attorneys and controlling persons and each of their respective heirs, successors and assigns (each, an "*Indemnified Person*") from and against any and all losses, claims, damages and liabilities (collectively, "*Losses*") to which any Indemnified Person may become subject arising out of or in connection with this Stockholders Commitment Letter, the Restructuring, the offering of the New Offered Securities, the Stockholders Transactions, any of the other transactions contemplated by this Stockholders Commitment Letter or the Term Sheet, or any other transaction related thereto or any claim, litigation, investigation or proceeding relating to any of the foregoing, regardless of whether any Indemnified Person is a party thereto and whether or not the transactions contemplated hereby are consummated, and to reimburse each Indemnified Person promptly upon demand for all legal and other expenses reasonably incurred by it in connection with investigating, preparing to defend or defending, or providing evidence in or preparing to serve or serving as a witness with respect to, any lawsuit, investigation, claim or other proceeding relating to any of the foregoing (including, without limitation, in connection with the enforcement of the indemnification obligations set forth herein); *provided, however*, that no Indemnified Person shall be entitled to any indemnification or reimbursement hereunder except solely to the extent that such Indemnified Person suffered Losses as an investor hereunder with respect to the Commitment and not in any other capacity, including but not limited to as a current or former director, officer, employee or equity holder of the Company or any of its affiliates; *provided, further,* that no Indemnified Person will be entitled to indemnity hereunder in respect of any loss, claim, damage, liability or expense to the extent that it is found by a final, non-appealable judgment of a court of competent jurisdiction that such loss, claim, damage, liability or expense resulted directly from the gross negligence or willful misconduct of such Indemnified Person. If for any reason the foregoing indemnification is unavailable to an Indemnified Person or insufficient to hold it harmless as provided therein, then the Company shall contribute to the amount paid or payable by such Indemnified Person as

3

a result of such loss, claim, damage or liability in such proportion to reflect the economic interests of (i) the Company and its respective affiliates, stockholders or other equity holders on the one hand and (ii) such Indemnified Person on the other hand in the matters contemplated by this Stockholders Commitment Letter and the Restructuring as well as the relative fault of (i) the Company and its respective affiliates, stockholders or other equity holders on the one hand and (ii) such Indemnified Person on the other hand with respect to such loss, claim, damage or liability and any other relevant equitable considerations. In no event will any Indemnified Person, solely in its capacity as an investor hereunder with respect to the Commitment, be liable on any theory of liability for indirect, special or consequential damages, lost profits or punitive damages as a result of any failure to fund its obligations under the Commitment or otherwise in connection with the Commitment, the Restructuring or the offering of the New Offered Securities.

IV.    Expiration of Commitment; Termination Rights.

The Commitments will expire at 5:00 p.m., New York City time, on November 4, 2011, unless on or prior to such time you have executed and returned to the Stockholders a copy of this Stockholders Commitment Letter.

If you do so execute and deliver to the Stockholders this Stockholders Commitment Letter, the Stockholders agree to hold its Commitment available for you until the earlier of (i) the consummation of the Rights Offering, Stockholders Transactions and the Restructuring in accordance with the Term Sheet (the *"Closing Date"*) and (ii) 5:00 p.m., New York City time, on May 15, 2012 (the *"Termination Date"*). Before such date, the Stockholders may, upon five business days prior written notice, terminate this Stockholder Commitment Letter and the Commitment hereunder, and their agreements to perform the obligations described herein upon the occurrence of any of the following events: (a) one or more events have occurred or information has become available that indicates with reasonable certainty that a condition precedent set forth or referred to in this Stockholders Commitment Letter cannot be satisfied prior to the Termination Date, (b) the Company has materially breached any of its obligations set forth in this Stockholders Commitment Letter, (c) the Company seeks authority to enter, or enters, into a restructuring transaction that deviates materially from the Term Sheet in a manner adverse to the Stockholders, or (d) the Company seeks authority to enter into the Restructuring and the $25.0 million investment in Class B Common Stock contemplated hereby is provided by a party other than one of the Stockholders or their affiliates. Termination by the Stockholders will not relieve the Stockholders of any liability for any breach (if any) of this Stockholders Commitment Letter by the Stockholders.

V.    Confidentiality.

This Stockholders Commitment Letter and the terms and conditions contained herein may not be disclosed by the Company to any person or entity (other than to such of your officers, directors, agents, attorneys and advisors) without the prior written consent of the Stockholders; *provided* that the Company may disclose the existence of and the terms and conditions of this Stockholders Commitment Letter to (a) the holders of the Existing Notes and their counsel and financial advisors, (b) to the "Lenders" and the "Administrative Agent" under the Company's existing secured term loan facility and their counsel and other professional

4

advisors, (c) in the disclosure statement relating to Restructuring or any offering memorandum or other documents with respect to the New Rights Offering, and (d) otherwise as may be required by applicable laws, including applicable securities laws in the opinion of the Company's outside securities counsel.

VI.  Survival.

The provisions of this Stockholders Commitment Letter relating to indemnification and contribution and confidentiality and the provisions of *Sections III, IV, V, VI, VII,* and *VIII* hereof will survive the expiration or termination of the Commitment or this Stockholders Commitment Letter (including any extensions) and the execution and delivery of definitive financing documentation.

VII.  Choice of Law; Jurisdiction; Waivers.

This Stockholders Commitment Letter will be governed by and construed in accordance with the laws of the State of California. The Company and the Stockholders hereby irrevocably submits to the non-exclusive jurisdiction of any California State court or Federal court sitting in the County of Orange in respect of any suit, action or proceeding arising out of or relating to the provisions of this Stockholders Commitment Letter and irrevocably agrees that all claims in respect of any such suit, action or proceeding may be heard and determined in any such court. The parties hereto hereby waive any objection that they may now or hereafter have to the laying of venue of any such suit, action or proceeding brought in any such court, and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. THE PARTIES HERETO HEREBY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING ARISING OUT OF RELATING TO THIS STOCKHOLDERS COMMITMENT LETTER. Notwithstanding the foregoing consent to jurisdiction, upon the commencement of a proceeding under the Bankruptcy Code, each of the parties hereto agrees that the bankruptcy courts sitting in the District of Delaware shall have non-exclusive jurisdiction with respect to any matter under or arising out of or in connection with this Stockholders Commitment Letter.

VIII.  Miscellaneous.

This Stockholders Commitment Letter may be executed in one or more counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument. Delivery of an executed signature page of this Stockholders Commitment Letter by facsimile transmission will be effective as delivery of a manually executed counterpart hereof. This Stockholders Commitment Letter may not be amended or waived except by an instrument in writing signed by each of the Company and the Stockholders.

The parties hereto agree that the Stockholders, and each of them, will have the right to transfer or assign (whether by operation of law, will, devise or otherwise) its rights and obligations (in whole or in part) to purchase the Class B Common Shares to a trust or trusts for the benefit of the Stockholders, and each of them, or their respective family members; provided

that any such transfer or assignment of rights and obligations to purchase the Class B Common Shares shall not relieve the Stockholders, and each of them, from his and their obligations under this Stockholder Commitment Letter.

This Stockholders Commitment Letter, the attached Exhibits set forth the entire understanding of the parties hereto as to the scope of the Commitments and the obligations of the Stockholders hereunder. This Stockholders Commitment Letter supersedes all prior understandings and proposals, whether written or oral, between the Stockholders and you relating to their purchase of the Class B Common Shares.

This Stockholders Commitment Letter has been and is made solely for the benefit of the parties signatory hereto and the Indemnified Persons, and nothing in this Stockholders Commitment Letter, expressed or implied, is intended to confer or does confer on any other person or entity any rights or remedies under or by reason of this Stockholders Commitment Letter or the agreements of the parties contained herein. Prior to commencing the Chapter 11 Cases, the Company shall not amend, waive or terminate this Stockholders Commitment Letter without the prior written consent of the Requisite Noteholders (as defined in the Restructuring Support Agreement). After the commencement of the Chapter 11 Cases, the Company shall not amend, waive or terminate this Stockholders Commitment Letter without the approval of the bankruptcy court.

6

If you are in agreement with the foregoing, kindly sign and return to us the enclosed copy of this Stockholders Commitment Letter.

Very truly yours,

William Lyon

William H. Lyon

Accepted and agreed to as of the date first above written:

WILLIAM LYON HOMES, INC.

By: _____
Name:  Matthew R. Zaist
Title:  Executive Vice President

WILLIAM LYON HOMES

By: _____
Name:  Matthew R. Zaist
Title:  Executive Vice President

[SIGNATURE PAGE TO STOCKHOLDERS COMMITMENT LETTER]

**Exhibit A**

**TERM SHEET**

101176692.2

8

PRIVILEGED AND CONFIDENTIAL
SUBJECT TO SETTLEMENT NEGOTIATIONS

# WILLIAM LYON HOMES
## WILLIAM LYON HOMES, INC.
### SUMMARY OF THE PRINCIPAL TERMS FOR

**Solicitation of Votes for a Potential In-Court Pre-packaged Plan of Reorganization under Chapter 11**

**Issuance of**

New 12% (8% cash interest) Senior Second Lien Notes due 2016 of William Lyon Homes, Inc., a California corporation ("CA Lyon") and new Class A Common Stock of William Lyon Homes, a Delaware corporation ("DE Lyon," and collectively with CA Lyon, "WLH")

to Holders of CA Lyon's outstanding

| | |
|---|---|
| 7⅝% Senior Notes due 2012 | CUSIP #552075-AE-3 |
| 10¾% Senior Notes due 2013 | CUSIP #552075-AA-1 |
| 7½% Senior Notes due 2014 | CUSIP #552075-AC-7 |

("collectively, the "Old Notes")

and

**Rights Offering**
of New Class C Common Stock and Convertible Preferred Stock
of DE Lyon  for Cash

2503959.