**C.     Rejection of Executory Contracts or Unexpired Leases**

All Executory Contracts and Unexpired Leases listed on Plan Schedule 5 will be deemed rejected as of the Effective Date. The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejections described in this Article of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

**D.     Claims on Account of the Rejection of Executory Contracts or Unexpired Leases**

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. The Debtor or Reorganized Debtor, as the case may be, will provide notice of such rejection and specify the appropriate deadline for the filing of such Proof of Claim.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtors, the Reorganized Debtors or the Estates, and the Debtors, the Reorganized Debtors and their Estates and property will be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in Article XII.D of the Plan. All claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as Class 6 Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

**E.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption must be filed, served and actually received by the Debtors at least ten (10) days prior to the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have assented and will be deemed to have forever released and waived any objection to the proposed assumption other than with respect to any alleged cure amount, which may be asserted at any time. In the event of a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. If an objection to cure is sustained by the Bankruptcy Court, the Debtors or Reorganized Debtors, as applicable, in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

**F.     Assumption of Director and Officer Insurance Policies**

The Debtors, and upon the Effective Date, the Reorganized Debtors, will assume all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Unless

previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not discharge, impair or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not impair or otherwise modify any rights of the Reorganized Debtors under the D&O Liability Insurance Policies.

## G.    Indemnification Provisions

All indemnification provisions currently in place (whether in the by-laws, certificate of incorporation, board resolutions, contracts, or otherwise) for the following: (i) Prepetition Agent; (ii) Prepetition Lenders; (iii) Prepetition Indenture Trustee; (iv) the Backstop Investors; and (v) directors, officers and employees of the Debtors who served in such capacity as of the Petition Date with respect to or based upon any act or omission taken or omitted in such capacities, for or on behalf of the Debtors, will be Reinstated (or assumed, as the case may be), and will survive effectiveness of the Plan. No such Reinstatement or assumption shall in any way extend the scope or term of any indemnification provision beyond that contemplated in the underlying contract or document as applicable.

## H.    Compensation and Benefit Programs

Except as otherwise provided in the Plan (including but not limited to the compensation for General William Lyon and William H Lyon pursuant to employment agreements as described herein, which will exclusively address the benefits for those executives, or any order of the Bankruptcy Court, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its employees, retirees, and non-employee directors and the employees and retirees of its subsidiaries, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans (other than equity incentive plans, which will be replaced by the Management Incentive Plan), life, and accidental death and dismemberment insurance plans, are treated as Executory Contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. Any payment obligations under any assumed employment contracts and benefit plans that have been or purport to have been accelerated as a result of the commencement of the Chapter 11 Cases or the consummation of any transactions contemplated by the Plan will be Reinstated and such acceleration will be rescinded and deemed not to have occurred.

## I.    Workers' Compensation Benefits

Except as otherwise provided in the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors will continue to honor their obligations under: (i) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (ii) the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds, and any other policies, programs, and plans regarding or relating to workers' compensation and workers' compensation insurance, All such contracts and agreements are treated as Executory Contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not impair or otherwise modify any rights of the Reorganized Debtors under any such contracts, agreements,

policies, programs or plans regarding or relating to workers' compensation or workers' compensation insurance.

# ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Dates of Distributions

Except as otherwise provided in the plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions provided in the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to the Plan and the Reorganized Debtors shall have no liability on account of any Claims or Interests except as set forth in the Plan and in the Confirmation Order. All payments and all distributions made by the Reorganized Debtors under the Plan shall be in full and final satisfaction, settlement and release of all Claims against the Reorganized Debtors.

At the close of business on the Distribution Record Date, the transfer ledgers for the Old Notes shall be closed, and there shall be no further changes in the record holders of such indebtedness. The Reorganized Debtors, the Disbursing Agent, the Prepetition Indenture Trustee, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Old Notes occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

### B.    Distribution Agent

Except as provided therein, all distributions under the Plan shall be made by the Reorganized Debtors as Distribution Agent, or by such other Entity designated by the Debtors as a Distribution Agent on the Effective Date. the Reorganized Debtors, or such other Entity designated by the Debtors, shall not be required to give any bond or surety or other security for the performance of the Reorganized Debtors' duties as Distribution Agent unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

C.    **Cash Distributions**

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Reorganized Debtors, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

D.    **Rounding of Payments**

Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one dollar.  To the extent Cash, notes, warrants, shares, stock are to be distributed under the Plan remain undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash, notes, or shares shall be treated as "Unclaimed Property" under the Plan.

Whenever payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole dollar.  To the extent that any Cash, any shares of New Capital Stock or any New Second Lien Notes to be distributed under the Plan remain undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash, Notes, or shares shall be treated as "Unclaimed Property" under the Plan.

No fractional shares shall be issued or distributed under the Plan.  Each Person entitled to receive shares of New Capital Stock or New Second Lien Notes shall receive the total number of whole shares of New Capital Stock, or, as the case may be, the number of New Second Lien Notes, to which such Person is entitled.  Whenever any distribution to a particular Person would otherwise call for distribution of a fraction of shares of New Capital Stock or, as the case may be, New Second Lien Notes, the actual distribution of shares of such stock shall be rounded to the next lower whole number.

E.    **Distributions on Account of Claims Allowed After the Effective Date**

Except as otherwise agreed by the Holder of a particular Claim, or as provided in the Plan, all distributions shall be made pursuant to the terms of the Plan and the Confirmation Order.  Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest dollar.

F.    **General Distribution Procedures.**

The Reorganized Debtors, or any other duly appointed Distribution Agent, shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise.  All Cash and other property held by the Reorganized Debtors for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

G.    **Address for Delivery of Distributions.**

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the address set forth on any proofs of claim filed by such Holders (to the extent such proofs of claim are filed in the Chapter 11 Cases), (2) at the addresses set forth in any

written notices of address change delivered to the Debtors, or (3) at the addresses in the Debtors' books and records.

**H.    Undeliverable Distributions and Unclaimed Property.**

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtors as undeliverable, no further distribution shall be made to such Holder, and the Reorganized Debtors shall have no obligation to make any further distribution to the Holder, unless and until the Reorganized Debtors is notified in writing of such Holder's then current address.

Any Entity which fails to claim any Cash within one year from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan. Entities which fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors or the Reorganized Debtors or against any Holder of an Allowed Claim to whom distributions are made by the Reorganized Debtors.

**I.    Withholding Taxes.**

Pursuant to section 346(f) of the Bankruptcy Code, the Reorganized Debtors shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. From and as of the Effective Date, the Reorganized Debtors shall comply with all reporting obligations imposed on it by any Governmental Unit in accordance with applicable law with respect to such withholding taxes. As a condition to receiving any distribution under the Plan, the Reorganized Debtors may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Reorganized Debtors to comply with applicable tax reporting and withholding laws.

**J.    Setoffs.**

The Reorganized Debtors may, to the extent permitted under applicable law, setoff against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Reorganized Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claims, rights and causes of action that the Reorganized Debtors possesses against such Holder.

**K.    Surrender of Cancelled Instruments or Securities**

As a condition precedent to receiving any distribution pursuant to the Plan on account of an Allowed Claim evidenced by the instruments, securities, notes, or other documentation canceled pursuant to Article V.N of the Plan, the Holder of such Allowed Claim will tender the applicable instruments, securities, notes or other documentation evidencing such Claim (or a sworn affidavit identifying the instruments, securities, notes or other documentation formerly held by such Holder and certifying that they have been lost), to Reorganized Parent or another applicable Distribution Agent unless waived in writing by the Debtors or the Reorganized Debtors, as applicable. The Prepetition Indenture Trustee will send such notices and take such other actions as are reasonably requested by the Debtors to effect the cancellation of the Old Notes held by Cede & Co.

Unless the Prepetition Indenture Trustee consents to the direct distribution via DTC, the Distribution Agent will promptly distribute the New Second Lien Notes and the Class A Common Shares to the Prepetition Indenture Trustee. For the avoidance of doubt, the Debtors will take all reasonably practicable steps to ensure that all New Second Lien Notes and Class A Common Shares are in a form that is DTC eligible. Notwithstanding any provision in the Plan to the contrary, the Debtors will be solely responsible for cancelling or surrendering the Old Notes and neither the Prepetition Indenture Trustee, nor any Holders of Old Notes, will be required to cause such notes to be cancelled or surrendered prior to receiving distributions under the Plan. Notwithstanding any provision in the Plan to the contrary, the distribution on account of Allowed Old Notes Claims will not be dependent on the surrender or cancellation of the Old Notes.

## L.    Lost, Stolen, Mutilated or Destroyed Securities

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to Reorganized Parent and other applicable Distribution Agents: (x) evidence reasonably satisfactory to Reorganized Parent and other applicable Distribution Agents of such loss, theft, mutilation, or destruction; and (y) such security or indemnity as may be required by Reorganized Parent and other applicable Distribution Agents to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Allowed Equity Interest. Upon compliance with Article VII.K of the Plan as determined by the Debtors or Reorganized Debtors by a Holder of a Claim or Equity Interest evidenced by a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to Reorganized Parent and other applicable Distribution Agents.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

## A.    No Filing of Proofs of Claim

Except as otherwise provided under the Plan, Holders of Claims shall not be required to file a proof of claim and no parties should file a proof of claim. Unless disputed by the Holder of a Claim, the amount set forth in the applicable Debtor's books and records shall constitute the Allowed amount of such Holder's Claim. If the Holder of a Claim disagrees with the Debtors' books and records with respect to the Allowed Amount of such Holder's Claim, such Holder must advise the Reorganized Debtors in writing, in which event the Claim will become a Disputed Claim. The Reorganized Debtors intends to attempt to resolve any such disputes consensually or through judicial means outside the Bankruptcy Court. Nevertheless, the Reorganized Debtors may, in its discretion, file with the Bankruptcy Court an objection to the allowance of such Claim or any other appropriate motion or adversary proceeding with respect thereto. All such objections shall be litigated to Final Order, provided however, that the Reorganized Debtors, may compromise, settle, withdraw or resolve any objections to Claims without further order of the Bankruptcy Court.

## B.    Disputed Claims

All objections to Claims shall be filed and served not later than one-hundred-twenty (120) days following the Effective Date; provided, however, such date may be extended by the Bankruptcy Court beyond such one-hundred-twenty (120) days upon motion filed by the Reorganized Debtors prior to the expiration of the above-noted 120 day deadline. The filing of a motion to extend the deadline to object to any Claims shall automatically extend such deadline

until a Final Order is entered on such motion. In the event that such motion to extend the deadline to object to Claims is denied by the Bankruptcy Court, such deadline shall be the later of the current deadline (as previously extended, if applicable) or 30 days after the Bankruptcy Court's entry of an order denying the motion to extend such deadline. Unless otherwise provided in the Confirmation Order, the Reorganized Debtors is authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan. Under no circumstances will any distributions be made on account of Disallowed Claims.

## C.    Procedures Regarding Disputed Claims

No payment or other distribution or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by a Final Order or by stipulation between the Debtors and the Holder of the Claim. No distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

The Debtors (prior to the Effective Date) or the Reorganized Debtors (after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection. Any Final Order of the Bankruptcy Court that estimates a Disputed Claim pursuant to the Plan shall irrevocably constitute and be a conclusive and final determination of the maximum allowable amount of Claim, should it become an Allowed Claim. Accordingly, the Holder of a Disputed Claim that is estimated by the Bankruptcy Court pursuant to the Plan will not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable amount of such Claim as a result of any subsequent adjudication or actual determination of the allowed amount of such Disputed Claim or otherwise, and the Holder of such Claim shall not have recourse to the Debtors or the Reorganized Debtors in the event the allowed amount of the Claim of such Holder is at any time later determined to exceed the estimated maximum allowable amount.

## D.    Allowance of Claims

Following the date on which a Disputed Claim becomes an Allowed Claim after the Distribution Date, the Reorganized Debtors shall pay directly to the Holder of such Allowed Claim the amount provided for under the Plan, as applicable, and in accordance therewith.

### 1.    Allowance of Claims

Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors will have and will retain any and all rights and defenses that the Debtors had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed under the Plan or by orders of the Bankruptcy Court. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order and the DIP Orders), no Claim or Equity Interest will become an Allowed Claim unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.

    2.      Prosecution of Objections to Claims and Equity Interests

After the Confirmation Date but before the Effective Date, the Debtors, and after the Effective Date, the Reorganized Debtors, will have the exclusive authority to File objections to Claims and settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims or Equity Interests are in an Unimpaired Class or otherwise; provided, however, this provision will not apply to Professional Fee Claims, Ad Hoc Noteholders Group Fees and Expenses, the Backstop Fee, the Backstop Transaction Expenses, or the DIP Facility Claim, From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim or Equity Interest without any further notice to or action, order or approval of the Bankruptcy Court. The Reorganized Debtors will have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

    3.      Estimation

After the Confirmation Date but before the Effective Date, the Debtors, and after the Effective Date, the Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Equity Interest pursuant to applicable law and (b) any contingent or unliquidated Claim or Equity Interest pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Equity Interest, contingent Claim or Equity Interest or unliquidated Claim or Equity Interest, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection. All of the aforementioned Claim or Equity Interests and objection, estimation and resolution procedures are cumulative and not exclusive of one another, Claim or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. The rights and objections of all parties are reserved in connection with any such estimation proceeding.

### ARTICLE IX.
### CONDITIONS PRECEDENT TO CONFIRMATION
### AND CONSUMMATION OF THE PLAN

**A.**    **Conditions Precedent to Confirmation**

Confirmation of the Plan will be conditioned upon the satisfaction or waiver pursuant to the provisions of Article IX.C of the Plan of the following:

- The Bankruptcy Court will have entered a Final Order in form and in substance satisfactory to the Debtors, Prepetition Agent, and Consenting Lenders and reasonably satisfactory to the Requisite Noteholders and Backstop Investors, in the approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Confirming the Plan.

- The Plan and all schedules, documents, supplements and exhibits to the Plan will have been filed in form and substance acceptable to the Debtors, Prepetition Agent, and Consenting Lenders and reasonably satisfactory to the Requisite Noteholders and Backstop Investors.

- The proposed Confirmation Order will be in form and substance acceptable to the Debtors, Prepetition Agent, and Consenting Lenders and reasonably satisfactory to the Requisite Noteholders and Backstop Investors.

- The board of directors of the Reorganized Parent will have been selected.

## B.     Conditions Precedent to Consummation

Consummation of the Plan will be conditioned upon the satisfaction or waiver pursuant to the provisions of Article IX.C of the Plan of the following:

- The Confirmation Order shall have been entered and either (a) become a Final Order or (b) the 14-day stay contemplated by Bankruptcy Rule 3020(e) in respect thereof shall have been terminated unless waived by (i) the Debtors, Prepetition Agent, and Consenting Lenders and (ii) the Requisite Noteholders and Backstop Investors in their reasonable judgment, and (c) the Confirmation Order shall otherwise be in a form and substance acceptable to the Debtors, Prepetition Agent, and Consenting Lenders and reasonably satisfactory to the Requisite Noteholders and Backstop Investors, and no stay of the Confirmation Order will have been entered and be in effect.  The Confirmation Order will provide that, among other things, the Debtors or the Reorganized Debtors, as appropriate, are authorized to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with or described in the Plan.

- The Bankruptcy Court will have entered one or more Final Orders (which may include the Confirmation Order) authorizing the assumption and rejection of Executory Contracts and Unexpired Leases by the Debtors as contemplated in the Plan and the Plan Supplement.

- All documents and agreements necessary to implement the Plan, including, without limitation, the Restructured First Lien Loan Agreement, the New Second Lien Indenture and the Subordination and Intercreditor Agreement, in each case in form and substance acceptable to the Debtors, the Prepetition Agent, and Consenting Lenders and reasonably satisfactory to the Requisite Noteholders, and Backstop Investors as applicable, will have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto.  All conditions precedent to such documents and agreements will have been satisfied or waived pursuant to the terms of such documents or agreements.

- All material consents, actions, documents, certificates and agreements necessary to implement the Plan will have been effected or executed and delivered to the required parties and, to

the extent required, Filed with the applicable governmental units in accordance with applicable laws.

- The Debtors will have received the Rights Offering Purchase Price, in Cash, net of any fees or expenses authorized by Order of the Bankruptcy Court to be paid from the Rights Offering Purchase Price, and such Cash shall have been contributed by Parent to CA Lyon.

- The Debtors will have received the Class B Common Stock Purchase Price, in Cash, net of any fees or expenses authorized by Order of the Bankruptcy Court to be paid from the Class B Common Stock Purchase Price, and such Cash shall have been contributed by Parent to CA Lyon.

- All interest, fees and expenses (including legal and advisory fees and expenses) on account of the Prepetition Secured Loan Agreement Claims shall have been paid as required by the DIP Orders.

- The Termination Date has not occurred under either the Colony RSA or the Noteholder RSA.

- The Rights Offering Documents shall be in form and substance reasonably acceptable to the Backstop Investors.

- The Confirmation Date will have occurred.

**C.    Waiver of Conditions**

The conditions to confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived by the Debtors, with the (i) consent of the Prepetition Agent and Consenting Lenders and (ii) consent in the their reasonable judgment of the Requisite Noteholders and the Backstop Investors, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.  To the extent that a condition to Consummation of the Plan requires the consent of the Backstop Investors, such conditions may only be waived by the Debtors with the consent of the Backstop Investors. The failure to satisfy or waive a condition to Consummation may be asserted by the Debtors or the Reorganized Debtors, Prepetition Agent, Consenting Lenders, Requisite Noteholders or Backstop Investors regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Debtors or Reorganized Debtors, Prepetition Agent, Consenting Lenders, Requisite Noteholders or Backstop Investors to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

**D.    Effect of Non Occurrence of Conditions to Consummation**

If the Consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will:  (a) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (c) constitute an Allowance of any Claim or Equity Interest; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

## ARTICLE X.
## DEBTORS' RELEASES

Notwithstanding anything to the contrary in the Plan, the failure of the Court to approve any or all of the provisions set forth in Article XI of the Plan shall not constitute a failure of any condition to ether confirmation or the effectiveness of the Plan, but without prejudice to the respective parties' rights under the Colony RSA, the Noteholders RSA or the Backstop Commitment Agreement.

## ARTICLE XI.
## RELEASE, INJUNCTION AND RELATED PROVISIONS

### A.    General

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise. Pursuant to the terms contained in the Plan, among other things, the subordination provisions contained in the Prepetition Indenture will be eliminated and each holder of an Old Notes Claim will receive and be entitled to retain the property as set forth in the Plan. As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments under the Plan will be settled, compromised, terminated and released pursuant to the Plan; provided, however, that nothing contained in the Plan will preclude any Person or Entity from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan.

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Claims against them and (2) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Causes of Action against other Entities.

### B.    Release

EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY ACKNOWLEDGED AND CONFIRMED, THE DEBTORS AND REORGANIZED DEBTORS, IN THEIR INDIVIDUAL CAPACITIES AND AS DEBTORS-IN-POSSESSION (COLLECTIVELY, THE "RELEASING PARTIES") WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER PROVIDED A FULL DISCHARGE, WAIVER AND RELEASE TO THE RELEASED PARTIES (AND EACH SUCH RELEASED PARTY SO RELEASED SHALL BE DEEMED FOREVER RELEASED, WAIVED AND DISCHARGED BY THE RELEASING PARTIES) AND THEIR RESPECTIVE PROPERTIES FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, LITIGATION CLAIMS AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR

UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY IN WHOLE OR IN PART TO THE DEBTORS, THE CHAPTER 11 CASES, THE DISCLOSURE STATEMENT, THE PLAN OR THE SOLICITATION OF VOTES ON THE PLAN THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF THE DEBTORS, THEIR ESTATES OR THE REORGANIZED DEBTORS (WHETHER DIRECTLY OR DERIVATIVELY) AGAINST ANY OF THE RELEASED PARTIES; PROVIDED, HOWEVER, THAT THE FOREGOING PROVISIONS OF THIS RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE (I) ANY CAUSES OF ACTION EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN OR THE PLAN SUPPLEMENT; (II) ANY CAUSES OF ACTION ARISING FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; AND/OR (III) THE RIGHTS OF SUCH RELEASING PARTY TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED PURSUANT TO THE PLAN OR ASSUMED PURSUANT TO FINAL ORDER OF THE BANKRUPTCY COURT.  THE FOREGOING RELEASE SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON AND THE CONFIRMATION ORDER WILL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES RELEASED PURSUANT TO THIS RELEASE.  NOTWITHSTANDING THE FOREGOING, THE DEBTORS ARE NOT RELEASING THE DEBTORS (BUT THEY ARE RELEASING THE RELATED PERSONS TO THE DEBTORS PURSUANT TO THIS PARAGRAPH.

The Debtors believe that the Releases by each of the Releasing Parties of each of the Released Parties as described above are integral to the Plan.  Moreover, the Debtors have received substantial contributions to the Plan from the Released Parties.  The Released Parties have played a critical role in the formulation of the Debtors' Plan and have expended a significant amount of time and resources analyzing and negotiating the complex issues presented by the Debtors' capital structure.  The Plan reflects the settlement and resolution of several of these complex issues.  In addition, absent the agreement of (i) the Ad Hoc Noteholders Group, (ii) Colony, and (iii) the Holders of Parent Equity, Allowed General Unsecured Claims would not be Unimpaired.

Absent the tireless efforts of the various constituencies who came together to work out the terms of the Plan, supported by 100% in amount of the Prepetition Secured Lenders and approximately 63.47% in amount of the Old Notes Claims as of the Voting Record Date, aimed at resolving the Chapter 11 Cases, the Debtors and their creditors would likely remain mired in complex and contentious litigation for years to come, and/or liquidate, threatening to materially delay and reduce distributions to all creditors.  Further, the Prepetition Secured Lenders and the Prepetition Noteholders are agreeing that the Debtors or Reorganized Debtors, as the case may be, may provide for certain consideration to Holders of General Unsecured Claims if the Plan is confirmed.  The willingness of these creditors to take such risks and provide such benefits to the

other Holders of Claims against the Estates is a substantial contribution to the Plan and to the Chapter 11 Cases; absent such willingness, the Plan would not have been possible, and the Debtors may have been unable to reorganize.  The substantial and extensive contributions by the Released Parties — both monetary and nonmonetary — further justify the non-Debtor releases set forth in the Plan.

Additionally, an identity of interest may exist between the Debtors and certain non-Debtor Released Parties, such that the non-Debtor releases are appropriate in that they eliminate effectively additional unknown claims against the Estates.  For example, the Debtors' directors and officers are parties to and beneficiaries of certain indemnification provisions, whereby the Debtors are obligated to indemnify them.  Under these agreements, any claim asserted against a Released Party who the Debtors are obligated to indemnify may essentially be a claim against the Debtors.  Any such claim, even if ultimately unsuccessful, could further deplete finite estate resources.  As of the date hereof, the Debtors are not aware of any claims against a Released Party.

**ARTICLE XII.**
**THIRD PARTY RELEASE**

AS OF AND SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, EACH CREDITOR THAT AFFIRMATIVELY ELECTS TO GRANT THE THIRD PARTY RELEASE PROVIDED IN THIS PARAGRAPH BY CHECKING THE APPROPRIATE BOX ON THE BALLOT PROVIDED TO SUCH CREDITOR IN CONNECTION WITH SOLICITATION OF SUCH CREDITORS' VOTE TO ACCEPT OR TO REJECT THE PLAN, FOR ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, TRANSFEREES, SUCH CREDITORS' OFFICERS AND DIRECTORS, ACTING IN SUCH CAPACITIES AS OF THE PETITION DATE, SUCH CREDITORS' AGENTS, MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES, REPRESENTATIVES, IN EACH CASE IN THEIR CAPACITY AS SUCH, SHALL, BY VIRTUE OF ITS VOTE, BE DEEMED TO HAVE RELEASED THE, (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE AD HOC NOTEHOLDERS GROUP AND THE MEMBERS THEREOF; (E) THE PREPETITION AGENT; (F) THE PREPETITION SECURED LENDERS; (G) THE DIP AGENT; (H) THE DIP LENDERS; (H) THE BACKSTOP INVESTORS; (I) THE PREPETITION INDENTURE TRUSTEE, AND (J) THE RELATED PERSONS OF EACH OF (A) THROUGH (I) OF THE FOREGOING, EACH IN ITS CAPACITY AS SUCH, FROM ANY AND ALL DIRECT CLAIMS AND CAUSES OF ACTION HELD BY SUCH CREDITOR WHATSOEVER, OR IN ANY MANNER ARISING FROM OR RELATED TO, IN WHOLE OR IN PART, (I) THE DEBTORS, (II) THE DEBTORS' RESTRUCTURING, (III) THE CONDUCT OF THE DEBTORS' BUSINESSES, (IV) THE CHAPTER 11 CASES, (V) THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, (VI) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY AGENT THEREOF, (VII) THE RIGHTS OFFERING AND RELATED TRANSACTIONS, AND (VIII) THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, WHICH CLAIMS ARE BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE.

**A.     Discharge of Claims**

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of

any kind or nature whatsoever against the Debtors or any of their assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtors and their Estates will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

## B.    Exculpation

The Exculpated Parties will neither have nor incur any liability to any Entity for any claims or Causes of Action arising before, on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or confirmation or Consummation of the Plan; provided, however, that the foregoing provisions will have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; provided, further, that each Exculpated Party will be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions or inactions; provided, further, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

## C.    Preservation of Rights of Action

### 1.    Maintenance of Causes of Action

Except as otherwise provided in Article XI or elsewhere in the Plan or the Confirmation Order, after the Effective Date, the Reorganized Debtors will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action and Litigation Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases.  The Reorganized Debtors, as the successors in, interest to the Debtors and the Estates, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Litigation Claims without notice to or approval from the Bankruptcy Court.  The Litigation Claims include, without limitation, the claims set forth on Plan Schedule 2.

### 2.    Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action or Litigation Claim against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtors expressly reserve such Cause of Action or Litigation Claim for later adjudication by the Debtors or the Reorganized Debtors (including, without limitation, Causes of Action and Litigation Claims not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this

time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action or Litigation Claims upon or after the confirmation of the Plan or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Causes of Action or Litigation Claims have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt, the Release contained in Article XI of the Plan) or any other Final Order (including, without limitation, the Confirmation Order). In addition, the Debtors and the Reorganized Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

**D.**     **Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION OR OTHER PROCEEDING, OR CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER. 'BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST WILL BE DEEMED TO HAVE SPECIFICALLY CONSENTED TO THIS INJUNCTION. ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

**ARTICLE XIII.**
**BINDING NATURE OF PLAN**

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, AND SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

**ARTICLE XIV.**

**[INTENTIONALLY LEFT BLANK]**

## ARTICLE XV.

## [INTENTIONALLY LEFT BLANK]

## ARTICLE XVI.
## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and this Plan as legally permissible, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Confirmation Date; *provided, however*, that, from and after the Effective Date, the Reorganized Debtors shall pay Professionals in the ordinary course of business for any work performed after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3.      resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is party or with respect to which any Debtor or Reorganized Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to this Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4.      resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

6.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtors after the Effective Date, *provided* that the Reorganized Debtors shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

8.      resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Entity's

2474327.1 16
DOCS_SF:78801.13 93949-001

obligations incurred in connection with this Plan; *provided, however,* that any dispute arising under or in connection with the Restructured First Lien Loan shall be dealt with in accordance with the provisions of the applicable document;

        9.    hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

        10.    issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan, except as otherwise provided in this Plan;

        11.    enforce the terms and condition of this Plan and the Confirmation Order;

        12.    resolve any cases, controversies, suits or disputes with respect to the Release, the Exculpation, the Indemnification and other provisions contained in Article X hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

        13.    hear and determine the Litigation Claims by or on behalf of the Debtors or Reorganized Debtors;

        14.    enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

        15.    resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; *provided, however,* that any dispute arising under or in connection with the Restructured First Lien Loan shall be dealt with in accordance with the provisions of the applicable document; and

        16.    enter an order concluding or closing the Chapter 11 Cases.

### ARTICLE XVII.
### MISCELLANEOUS PROVISIONS

**A.**    **Dissolution of the Committee**

On the Effective Date, the Committee (if any) and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases.

**B.**    **Payment of Statutory Fees**

All outstanding fees payable pursuant to section 1930 of title 28, United States Code shall be paid on the Effective Date. All such fees payable after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due or as soon thereafter as practicable.

**C.**    **Payment of Fees and Expenses of Prepetition Indenture Trustee**

On the Effective Date or as soon as reasonably practicable thereafter (and, thereafter, upon request by the Prepetition Indenture Trustee with respect to fees and expenses of the

Prepetition Indenture Trustee relating to post-Effective Date service under this Plan), the Reorganized Debtors shall pay in full in Cash all outstanding reasonable and documented fees and expenses of the Prepetition Indenture Trustee and its counsel subject to the terms of the Prepetition Indentures.

### D.    Modification of Plan

Effective as of the date hereof and subject to the limitations and rights contained in this Plan and in the Noteholders RSA, the Colony RSA, and the Backstop Commitment Agreement: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of such Claim or Equity Interest of such Holder.

### E.    Revocation of Plan

The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent chapter 11 plans, but without prejudice to the respective parties' rights under the Colony RSA, the Noteholders RSA, or the Backstop Commitment Agreement. If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan or Consummation of this Plan does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

### F.    Successors and Assigns

This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including, without limitation, the Reorganized Debtors. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

### G.    Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

**H.      Further Assurances**

The Debtors or the Reorganized Debtors, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.  On or before the Effective Date, the Debtors shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**I.      Severability**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**J.      Service of Documents**

All notices, requests, and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

William Lyon Homes
4490 Von Karman Avenue
Newport Beach, California  92660
Attn:  Matthew R. Zaist, Executive Vice President

**with copies to:**

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, Seventeenth Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Attn: Laura Davis Jones, Esq.

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard
13th Floor
Los Angeles, California  90067-4100
Attention:  Richard M. Pachulski, Esq.

Irell & Manella LLP
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Attention:  Jeffrey M. Reisner, Esq.

**K.    Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code**

        To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of and the distributions to be made under this Plan, including the Restructured First Lien Loan, (ii) the issuance of New Common Stock, New Second Lien Notes, Warrants and Preferred Shares (under this Plan and pursuant to the Rights Offering), (iii) the maintenance or creation of security or any Lien as contemplated by the Restructured First Lien Loan, the Restructured Project Loans, and/or the New Second Lien Notes; and (iv) assignments executed in connection with any transaction occurring under the Plan.

**L.    Governing Law**

        Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

**M.    Tax Reporting and Compliance**

        The Reorganized Debtors are hereby authorized, on behalf of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the

Debtors are for all taxable periods ending after the Petition Date through, and including, the Effective Date.

**N.    Schedules**

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated and are a part of this Plan as if set forth in full herein.

**O.    No Strict Construction**

This Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors, the Backstop Investors, the Ad Hoc Noteholders Group, the Requisite Lenders and their respective professionals. Each of the foregoing was represented by counsel of its choice who either (a) participated in the formulation and documentation of, or (b) was afforded the opportunity to review and provide comments on, this Plan, the Disclosure Statement, Exhibits and Plan Schedules, and the agreements and documents ancillary or related thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "contra proferentem" or other rule of strict construction shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, Exhibits and Plan Schedules, and the documents ancillary and related thereto.

**P.    Conflicts**

In the event that a provision of the Disclosure Statement conflicts with a provision of this Plan, the terms of this Plan shall govern and control to the extent of such conflict.

**Q.    Confirmation Request**

The Debtors request the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding any rejection of the Plan by an Impaired Class.

Dated:  November 17, 2011

Respectfully submitted,

_____

Matthew Zaist, Executive Vice President
WILLIAM LYON HOMES, on behalf of itself and its
direct and indirect subsidiaries listed below

     William Lyon Homes, a Delaware Corporation
     William Lyon Homes, Inc., a California
     Corporation
     Mountain Falls Golf Course, LLC
     Mountain Falls, LLC
     Circle G at the Church Farm North Joint Venture,
     LLC
     Presley CMR, Inc.
     William Lyon Southwest, Inc.
     Sycamore CC, Inc.
     PH-LP Ventures
     PH Ventures – San Jose
     HSP, Inc.
     PH Rielly Ventures
     Lyon Waterfront, LLC
     Lyon East Garrison Company I, LLC
     WLH Enterprises
     Duxford Financial, Inc.
     California Equity Funding, Inc.
     Laguna Big Horn, LLC
     Presley Homes
     Cerro Plata Associates, LLC
     Whitney Ranch Village 5, LLC
     Duxford Insurance, LLC

Respectfully submitted,

_____

Richard S. Robinson, Senior Vice President
Duxford Title Reinsurance Co.

**Plan Schedule 1**

**List of Debtors**

William Lyon Homes, a Delaware Corporation (4902);

William Lyon Homes, Inc., a California Corporation (3855);

Mountain Falls Golf Course, LLC (3291);

Mountain Falls, LLC (9631);

Circle G at the Church Farm North Joint Venture, LLC (1322);

Presley CMR, Inc. (3862);

William Lyon Southwest, Inc. (8474);

Sycamore CC, Inc. (1307);

PH-LP Ventures (9119);

PH Ventures – San Jose (5089);

HSP, Inc. (6045);

PH Rielly Ventures (7710);

Lyon Waterfront, LLC (1928);

Lyon East Garrison Company I, LLC (5692);

WLH Enterprises (3333);

Duxford Financial, Inc. (0824);

California Equity Funding, Inc. (0016);

Laguna Big Horn, LLC (2590);

Duxford Title Reinsurance Co. (7859);

Presley Homes (5035);

Cerro Plata Associates, LLC (5090);

Whitney Ranch Village 5, LLC (5256); and

Duxford Insurance Services, LLC (8232).

# WILLIAM LYON HOMES

## Pending Litigation Claims
## as of November 14, 2011

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| FOREST & TERI WALSH v. WILLIAM LYON HOMES, INC. | CA Superior Court, Placer County, SCV0027927 | Construction Defect | Claim for damages in the amount of $100,000 and other unspecified damages.[1] |
| JAMES R. CRAYCROFT et al. v. WILLIAM LYON HOMES, INC., a California corporation; LYON MORGAN CREEK, L.P., a Delaware Limited Partnership | CA Superior Court, Placer County, SCV26452 | Construction Defect | Claim for damages in unspecified amount in excess of $50,000 per home and diminution in value. |
| VALERIE A. JOVEL et al. v. WILLIAM LYON HOMES, INC., a California corporation; STONEBRIAR, L.P., a California Limited Partnership | CA Superior Court, El Dorado County, PC 20100719 | Construction Defect | Claim for damages in unspecified amount in excess of $30,000, investigation costs and costs of repair. |
| EDWARD HANEFFANT et al. v. WILLIAM LYON HOMES, INC., a California corporation | CA Superior Court, Placer County, SCV0028445 | Construction Defect | Claim for unspecified damages. |
| DERRICK METZGER et al. v. WILLIAM LYON HOMES, INC., a California corporation | CA Superior Court, El Dorado County, PC 20010042 | Construction Defect | Claim for unspecified damages. |

---

[1] Amounts indicated in this column are derived from the relevant pleadings and are subject to change.  Any pending settlement amounts are likewise subject to change.

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| JOSEPH P. & LAURRIE A. MANGO et al. v. WOODLAKE, L.P., A DELAWARE LIMITED PARTNERSHIP; WILLIAM LYON HOMES, INC., a California corporation | CA Superior Court, Contra Costa County, MSC11-00369 | Construction Defect | Claim for restoration and cost of repair in unspecified amount in excess of $50,000 per home and diminution in value. |
| ROSANNA ROSANDER; KARL ROSANDER; JONI M. JAMES; PAUL A. WALLIS; LI LAN XIAO SONG; KIMBERLY DAWN CLARK HENRICHS; FELIPE LUNA; ROSA ELENA LUNA; TODD L. ERICKSON; MELISSA BARNETT ERICKSON; LI LAN v. WILLIAM LYON HOMES, INC., a California corporation | CA Superior Court, Sacramento County, 34-2011-00098007 | Construction Defect | Claim for damages in unspecified amount in excess of $800,000 and investigation costs unspecified amount in excess of $80,000. |
| SHARI VAN HOOK et al. v. WILLIAM LYON HOMES, INC., a California corporation, HERCULES OVERLOOK, a Delaware limited partnership | CA Superior Court, Contra Costa County MSC11-00369 | Construction Defect | Claim for costs of repairs in unspecified amount in excess of $50,000 per home, costs of investigation, diminution in value of property, expert fees, loss of use and other unspecified relief. |
| RICHARD BARTOL et al. v. CHINO RESERVE 89, LLC, WILLIAM LYON HOMES, INC. | CA Superior Court, San Bernardino County, Rancho Cucamonga, CIVRS913725 | Construction Defect | Claim for unspecified damages. |
| REBECCA ALLISON et al. v. WILLIAM LYON HOMES, INC., a California corporation | CA Superior Court, San Bernardino County, CIVDS 1007968 | Construction Defect | Claim for unspecified damages. |
| FRANCES ALLEGRETTO et al. v. WILLIAM LYON HOMES, INC. | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Construction Defect | Claim for cost of repairs in unspecified amount in excess of $50,000 per home and diminution in value. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. ACCENT TILE, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. ALISO AIR, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. ALLIANCE MECHANICAL HEATING AND AIR CONDITIONING, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. B.G. ISRAEL CONSTRUCTION, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. CDR CONCRETE, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. CAL-WEST NURSERIES, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. CAPITAL DRYWALL, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. CHAMPION FENCE COMPANY, a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. COAST WEST PLUMBING OF PARAMOUNT, INC., a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. CORBIN CUSTOM TILE, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. D. B. INSTALLATIONS, INC., dba BARDON ENTERPRISES, a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. DEL MAR MASONRY, a Sole Ownership | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. EXCEL CABINETS, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. EXECUTIVE PLUMBING, INC., a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. FENCEWORKS, INC., dba GOLDEN STATE FENCE COMPANY, a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. FORD FRAMING COMPANY, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. FRANK MONS & SON CONSTRUCTION dba FCM FIREPLACES, a Sole Ownership | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. G.W. SURFACES, a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. GATEWAY PLASTERING, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. GOTHIC LANDSCAPING, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. GUARDIAN RAINGUTTERS, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. J & B MANUFACTURING CORP., dba SAN DIEGO MIRROR AND WINDOW, a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. JAYAR MANUFACTURING COMPANY, a Corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. KASTLE STAIR, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. L I METAL SYSTEMS, a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. LARRY METHVIN INSTALLATIONS, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. LAZER ELECTRIC, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MAKO TILE, a Sole Ownership | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. MARTINEZ CONSTRUCTION CONCRETE CONTRACTOR, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MAYER ROOFING, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MISSION SHEET METAL, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. ORACAL SUPPLY COMPANY, INC., a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. PACIFIC SHORES MASONRY, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. PRO-LINE PLASTERING, INC., a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. R.C. WENDT PAINTING, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. R.E.M. CONCEPTS, INC., dba ABC WINDOW CO., a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. REGAL CULTURED MARBLE, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. STATE INSULATION, INC., dba WESTERN INSULATION, INC., dba WESTERN SPECIALTIES, a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. THE JASPER COMPANIES, a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. 'T' McGEE ELECTRIC, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. TOUCH UP, INC., dba T & R PAINTING & DRYWALL, a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. TRIUMPH SHEET METAL, INC., a dissolved California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. VINTAGE DESIGN, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. WALTERS WHOLESALE ELECTRIC, INC., a California corporation | CA Superior Court, Orange County, Complex Civil, 30-2010-00365116 | Cross-Complaint | Claim for unspecified damages. |
| MICHAEL STEVEN BRUNNER AND ANN MARIE BRUNNER; JEREMY SIMONEAUX AND GRETCHEN A. SIMONEAUX; KURT J. LEISS AND REGINA G. LEISS; ADAM SOKOLIC AND KERRI KIMBERLEY; and DEAVAH L. YUNE v. WILLIAM LYON HOMES, INC., a California corporation; SHEA HOMES LIMITED PARTNERSHIP, a California limited partnership; J.F. SHEA CO., INC., a Nevada corporation; LENNAR HOMES OF CALIFORNIA, INC., a California corporation; TRINIDAD COMMUNITY ASSOCIATION, a California corporation; TALEGA ASSOCIATES, LLC, a Delaware Limited Liability Company; TALEGA MAINTENANCE CORPORATION, a California corporation | CA Superior Court, County of Orange, Complex Civil, 30-2010-00406014-CU-CD-CXC; motion to compel judicial reference granted; no referee selected | Construction Defect | Claim for unspecified damages. |
| GILBERT CALZADA; LISETTE CALZADA; NELSON M. BISARRA; GENEROSA R. BISARRA; DAN W. HESS; RON W. KIRK; THERESA A. KIRK; JAMES S. SMART; BARBARA A. SMART; ROBERT R. WELSH; ERIKO WELSH; RONALD A. FISHER; LINDA L. FISHER; JAN KUNST; SIRKKA L. KUNST; FLOYD MOSS v. WILLIAM LYON HOMES, INC., | CA Superior Court, County of Los Angeles, MC021755 | Construction Defect | Claim for damages for repairs in unspecified amount in excess of $350,000 and investigative costs in unspecified amount in excess of $65,000. |
| WILLIAM LYON HOMES, INC. v. BEAR ROOFING, INC., a dissolved California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. BILL'S LANDSCAPING, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. BRENNAN ELECTRIC, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. CALIFORNIA WALLBOARD, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. COMMERCIAL WOOD PRODUCTS COMPANY, a California corporation; | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. DALE BARKLEY HITCHCOCK dba HITCHCOCK CONSTRUCTION, a Sole Ownership | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. DEBELLING CONSTRUCTION, INC., a dissolved California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. ERIKSSON TILE, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. G.N. PERFORMANCE PLUMBING, INC., a suspended California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. GOTHIC LANDSCAPING, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. LARRY METHVIN INSTALLATIONS, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MASCO CONTRACTOR SERVICES OF CALIFORNIA, INC., dba SCHMID INSULATION, a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. RBP OF ARIZONA, INC., dba GLAZING INDUSTRIES, a Forfeited Delaware corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. R.C. WENDT PAINTING, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. RCR PLUMBING AND MECHANICAL, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. REGAL CULTURED MARBLE, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. SO-CAL FRAMERS, INC., a dissolved California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. SOUTHWEST FINISH & SUPPLY, INC., a California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. TOMKINS INDUSTRIES, INC., dba LASCO BATHWARE, an Ohio corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. TRIUMPH SHEET METAL, INC., a dissolved California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. TUNSTILL PLASTERING, INC., a suspended California corporation | CA Superior Court, County of Los Angeles, MC021755 | Cross-Complaint | Claim for unspecified damages. |
| JOHN J. WARD and TANIA WARD v. WILLIAM LYON HOMES, INC. | CA Superior Court, County of San Diego, 37-2011-00052762-CU-BC-NC | Construction Defect | Claim for cost of repair in unspecified amount in excess of $100,000 per home and diminution in value. |
| GREGORY & DEBRA ANDREWS et al. v. WILLIAM LYON HOMES, INC. | CA Superior Court, County of San Bernardino, CIVDS1103791 | Construction Defect | Claim for cost of repair in unspecified amount in excess of $50,000 per home and diminution in value. |
| VICTOR PUEBLA; MONICA PUEBLA; MARIANA GUTIERREZ; FELIPE GUTIERREZ; GREGORY PRAVEDNIKOV; GREGORY O'NEAL; PACENTIA DUNNING; WILFREDO ROMERO; FRANCISCA ROMERO v. WILLIAM LYON HOMES, INC. | CA Superior Court, County of Riverside, ROC1105650 | Construction Defect | Claim for cost of repair in unspecified amount in excess of $400,000 and investigative costs in unspecfied amount in excess of $150,000. |
| PAUL COOK et al. v. WILLIAM LYON HOMES, INC., a California corporation; HAMPTON ROAD ASSOCIATES, LLC, a Delaware limited liability company; PH INSTITUTIONAL VENTURES, a California corporation; HORIZON PLUMBING, INC., a California corporation | CA Superior Court, County of Orange, Civil Complex, 30-2008-00233522 | Construction Defect & Fraud | Claim for compensatory damages in unspecified amount in excess of $500,000 and punitive damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| MARK T. FRISBEE AND CAROLINE L. FRISBEE v. LYON COMMUNITIES; RESON ASSOCIATES, LLC, a limited liability company; PH INSTITUTIONAL VENTURES; LADERA RANCH MAINTENANCE CORPORATION; LADERA WNG SENIOR, LLC, a limited liability company; SOUTH COUNTY APARTMENT DEVELOPMENT CO., LLC, a limited liability company AKA SCADC; SOUTH COUNTY APARTMENT CONSTRUCTION COMPANY | CA Superior Court, County of Orange, Civil Complex, 30-2010-00410092-CU-CD-CXC | Construction Defect | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. RELIABLE CONTRACTORS, INC., a California corporation | CA Superior Court, County of Orange, Civil Complex, 30-2010-00410092-CU-CD-CXC | Cross-Complaint | Claim for unspecified damages. |
| DAVID G. ANDERSON and LORETTA J. ANDERSON et al. v. WILLIAM LYON HOMES, INC., a California corporation; PRESLEY HOMES, a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Construction Defect | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. A. L. NORMAN JR., a sole proprietorship | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. ALLIANCE MECHANICAL HEATING AND AIR CONDITIONING, INC. a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. CCPI, INC. fka CENTURY CAST PRODUCTS, INC., and formerly dba CENTURY MARBLE., a dissolved California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. DIAZ CONSTRUCTION COMPANY, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. EDGE METALWORKS, INC., a dissolved California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. FENCEWORKS, INC. dba GOLDEN STATE FENCE COMPANY, a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. INTERIOR DIMENSIONS, INC., a suspended California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. JAYAR MANUFACTURING, INC., a surrendered Texas corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. LARRY METHVIN INSTALLATIONS, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MARSHALL INSTALLATIONS AND WEATHERSTRIP, INC., a dissolved California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MAYER ROOFING, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MIKE SCHEINKER MASONRY, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. PREFERRED FRAMING, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. R.C. WENDT PAINTING, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. RBM CONSTRUCTION, INC., a suspended California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. R.E.M. CONCEPTS, INC. dba ABC WINDOW CO., a dissolved California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. MASCO CONTRACTOR SERVICES OF CALIFORNIA, INC. fka SCHMID INSULATION CONTRACTORS, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. SHOWTIME TILE AND MARBLE, a sole proprietorship | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. STAUFFER'S LANDSCAPE, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. SUN PLUMBING CO., INC., a dissolved California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. 'T' MCGEE ELECTRIC, INC., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. TOMKINS INDUSTRIES, INC., dba LASCO BATHWARE, a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. TUNSTILL PLASTERING, INC., a suspended California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. WALTERS WHOLESALE ELECTRIC CO., a California corporation | CA Superior Court, County of Riverside, RIC 1103527 | Cross-Complaint | Claim for unspecified damages. |
| JAIME MARTI; ROMULO AND SUSANA BALINO; SUSAN BURGES; FERNANDO COTA; JEFFERY AND SHIRLEY ESTANA; RAYMOND AND SOPHIA FLORES; JASON AND ADRIANA GLIHA; MAYRA LOPEZ; EDWARD AND FELGEN MARIFOSQUE; ARNOLD NORTON; KATHLEEN PENDER; JOHN TEEVAN AND KRISTEN LOUPASSAKIS; CHARLES WANG v. RWR HOMES, INC.; OAKWOOD DEVELOPMENT, INC.; PACIFIC COAST COMMUNITIES; PH INSTITUTIONAL VENTURES; LB/L-RWR OTAY 62 LLC; LB/L-RWR OTAY 91, LLC; LB/L-RWR MASTER LLC; RWR II, LLC; OTAY RANCH ONE, LLC; OTAY RANCH TWO, LLC; OTAY PRIMOSE-90LLC; OTAY RANCH I WEST-3, LLC; OTAY R-29, LLC; MCMILLIN CONSTRUCTION SERVICES, LLC; WILLIAM LYON HOMES, INC. (DOE) | CA Superior Court, County of San Diego, Central Division, 37-2001-00092941-CU-CD-CTL | Construction Defect | Claim for unspecified damages. |
| COLLEEN ROBINSON et al. v. William Lyon Homes, Inc., WLH Development, Inc., and 4S LOTS 2 & 8, LLC, | CA Superior Court, County of San Diego, Central Division, 37-2011-00096610 | Construction Defect | Claim for damages in unspecified amount in excess of $1,000,000. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| MARK & JONI BRANHAM; MARIA CULBERTSON; RICK E. ROBLES; ROY A. & BARBARA M. STRIZIC; JEFFREY & MARY WILLIS v. WILLIAM LYON HOMES, INC.; PRESLEY HOMES | CA Superior Court, County of San Diego, 37-2010-00105271 | Construction Defect | Claim for damages for cost of repair in unspecified amount in excess of $50,000 per home and investigation costs. |
| SUSANNE L. KOSTRENICH v. WILLIAM LYON HOMES, INC.; COVENANT HILLS P-30A, LLC; RICHARD ROBINSON | CA Superior Court, County of Orange, Civil Complex Division 30-2009-00306282 (Now pending in judicial reference) | Construction Defect; Fraud (Rescission) | Claim for damages in unspecified amount in excess of $2,000,000, rescission and diminution in value. |
| GREGORY A. STEARNS as trustee of the GREGORY A. AND CINDY STEARNS LIVING TRUST, WILLIAM DON COMBS and JUANITA COMBS; JOHN L. MAURER and KIM MAURER; EDWARD SEGURA v. WILLIAM LYON HOMES, INC., a California corporation | CA Superior Court, County of San Diego, 37-2011-00086438 | Construction Defect | Claim for damages in unspecified amount in excess of $1,000,000 and investigation costs. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| ROGER ECKERT; THUAN & JOHN YAMAMOTO; JUDY FISHER; VIRGIL & ANITA ACACIO; ASHRAF SHAIKH; DUONG DIEN; TOMONARI YAMANAKA; DONG & ANNE KHONG; RONALD SANTOS; DAVID TSAO; CORAZON & FRANCIS PUNTANILLA; DIANA DINH; EMIL & YOLANDA BEBLA; SEYAMAK & PARVIN SULIAMANI; DONNA DEMELLO-MARTIN; ROBERT & KIMBERLY ROOT; WALTER CHANG; RICHARD SMITH; KIRANRAJ KARJERA; SHEELA SUKUMARAN; THANH DO; EDILBERT & MILAGROS ARUCAN; LONG TRINH; RAHUL & NARTAN PATEL; EDWARD FLEIGE; BIKRAM SINGH; VICTOR & HOA NGUYEN; SANDRA HOFFMAN; REMO MARRA; RAYMOND BEHVAND; RANDALL GAST; RAJU & RACHANA REDDY; TAN NGUYEN; VIVEK & LEENA GUPTA; WAEL KAMEL; SATISH MELUKADAVAN; ZHIYI LIU; AMIYA SATAPATHY; TONY & CAROLYN DAVID | CA Superior Court, County of Santa Clara, 110CV173057 | Construction Defect | Claim for damages in unspecified amount in excess of $50,000 per home. |
| REBECCA DONNELL and DAVID DONNELL v. REECE STAIR, INC. | CA Superior Court, County of Sacramento, 34-2009-00058051 | Personal Injury; Loss of Consortium | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. RBF CONSULTING, JAMS | JAMS (Arbitration), Orange County, California, 1200040445 | Breach of Contract | Claim for unspecified damages. |
| MID-CENTURY INSURANCE CO. v. WESTERN POTTERY; WILLIAM LYON HOMES, INC. | CA Superior Court, County of Ventura - Ventura Division, 56-2010-00375251-CU-PO-VTA | Subrogation | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. WP INDUSTRIES, INC. | CA Superior Court, County of Ventura - Ventura Division, 56-2010-00375251-CU-PO-VTA | Subrogation | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. WESTERN POTTERY, LLC | CA Superior Court, County of Ventura - Ventura Division, 56-2010-00375251-CU-PO-VTA | Subrogation | Claim for unspecified damages. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| WILLIAM LYON HOMES, INC. v. WDI INTERNATIONAL Inc. | CA Superior Court, County of Ventura - Ventura Division, 56-2010-00375251-CU-PO-VTA | Subrogation | Claim for unspecified damages. |
| AMANDA WARREN; PAUL WARREN; YVETTE WATSON v. ASBESTOS DEFENDANTS (including William Lyon Homes, Inc.) | CA Superior Court, San Francisco County, ASBESTOS CGC-09-275063 | Wrongful Death - Asbestos | Claim for unspecified damages. |
| STATE FARM GENERAL INSURANCE COMPANY v. BUETLER HEATING AND AIR CONDITIONING, INC; WILLIAM LYON HOMES, INC.; RT/DT, INC. D/B/A THOMAS PLUMBING | CA Superior Court, San Joaquin County, 39-2011-00260916-CL-PO-STK | Subrogation | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. BEUTLER HEATING AND AIR CONDITIONING dba BEUTLER CORPORATION, a California corporation | CA Superior Court, San Joaquin County, 39-2011-00260916-CL-PO-STK | Subrogation | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC. v. RT/DT, INC., a California corporation dba THOMAS PLUMBING | CA Superior Court, San Joaquin County, 39-2011-00260916-CL-PO-STK | Subrogation | Claim for unspecified damages. |
| TIMOTHY VANSANDT; CHERYL VANSANDT; SUSAN VANSANDT; GRACE TERRY; KEVIN VANSANDT v. ASBESTOS DEFENDANTS (INCLUDING WILLIAM LYON HOMES, INC.) | CA Superior Court, San Francisco County, ASBESTOS CGC-10-275467 | Wrongful Death - Asbestos | Claim for unspecified damages. |
| USAA CASUALTY INSURANCE COMPANY v. WILLIAM LYON HOMES, INC.; EXECUTIVE PLUMBING, INC. | CA Superior Court, San Bernardino County, CIVDS1107168 | Subrogation | Claim for unspecified damages. |
| ANNIE ROXINE ROBINSON v. ROSABELLA COMMUNITY ASSOCIATION; WILLIAM LYON HOMES, INC. | CA Superior Court, San Bernardino County, CIVDS 1108922 | Personal Injury | Claim for special damages in the amount of $22,969.91 and general damages in the a mount of $500,000. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| DEBRA VANSLAMBROOK; et al v. WILLIAM LYON HOMES, INC.; MERIT CONCRETE, INC., RIVERA COMPANY; CITY OF CLAYTON; OAKHURST GEOLOGICAL HAZARD ABATEMENT DISTRICT | CA Superior Court, Contra Costa County, C0500837 | Slope failure | Claim pending settlement (William Lyon Homes, Inc. to contribute $500,000). |
| WILLIAM LYON HOMES, INC v. MERIT CONCRETE, INC. | CA Superior Court, Contra Costa County, C0500837 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC v. DMC CONCRETE, INC. | CA Superior Court, Contra Costa County, C0500837 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC v. RIVERA COMPANY | CA Superior Court, Contra Costa County, C0500837 | Cross-Complaint | Claim for unspecified damages. |
| WILLIAM LYON HOMES, INC v. CITY OF CLAYTON & OAKHURST GEOLOGICAL HAZARD ABATEMENT DISTRICT | CA Superior Court, Contra Costa County, C0500837 | Cross-Complaint | Claim for unspecified damages. |
| RICHARD HERNANDEZ v. WILLIAM LYON HOMES, INC. | CA Superior Court, Orange County, PZC00427247 | Workers' Compensation | Claim for unspecified damages. |
| JOSEPH BACA v. WILLIAM LYON HOMES, INC. | CA Superior Court, Sacramento County, PZC00454178 | Workers' Compensation | Claim for unspecified damages. |
| REBECCA DONNELL v. WILLIAM LYON HOMES, INC. | CA Superior Court, Sacramento County, ADJ 7250291 | Workers' Compensation | Claim for unspecified damages. |
| MICHAL CROSBY v. WILLIAM LYON HOMES, INC. | U.S. Equal Employment Opportunity Commission, Phoenix District Office, 540-2011-03370 | Administrative complaint alleging disability discrimination and retaliation | No amount claimed in the EEOC Complaint; $85,000 demanded in prior correspondence. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| STALLION MOUNTAIN HOA v. WILLIAM LYON HOMES, INC. | Clark County District Court, Las Vegas, NV, 451.0022 | Homeowner's Association claims are for civil, streets, gutters, curbs, sidewalks and walls | Claim pending settlement (William Lyon Homes, Inc. to contribute $3,500). |
| RANEY ET AL. v. WILLIAM LYON HOMES, INC. | Clark County District Court, Las Vegas, NV, 451.0035 | Construction Defect | Claim for damages in the amount of $550,000. |
| JAMES LA ROCCA v. WILLIAM LYON HOMES, INC. | Clark County District Court, Las Vegas, NV, 451.0040 | Construction Defect | Claim pending settlement (William Lyon Homes, Inc. to contribute $9,000). |
| GARTH HIRATA v. WILLIAM LYON HOMES, INC. | Clark County District Court, Las Vegas, NV, 451.0060 | Construction Defect | Claim pending settlement (William Lyon Homes, Inc. to contribute $3,750). |
| ROGER SIMON v. WILLIAM LYON HOMES, INC. | Las Vegas, NV | Negligence, Construction Defect | No claim filed; demand letters sent claiming unspecified damages. |
| ALVARADO/CARROLL v. WILLIAM LYON HOMES, INC. | Clark County District Court, Las Vegas, NV, 451.0061 | Construction Defect | Claim for unspecified damages. |
| ADKINS v. WILLIAM LYON HOMES, INC. | Clark County District Court, Las Vegas, NV, 08A576944 | Construction Defect | Claim pending settlement (William Lyon Homes, Inc. to contribute the SIR of $250,000). |
| GUSTAFSON v. WILLIAM LYON HOMES, INC. | Nye County District Court, Las Vegas, NV, CV31376 | Personal Injury - Slip & Fall | Claim for damages in the range of $50,000 to $100,000. |

| Title of Action | Jurisdiction/Location; Case No. | Nature of Proceeding | Amount Claimed |
|---|---|---|---|
| ADAMS et al. v. WILLIAM LYON HOMES, INC. (IRON MOUNTAIN ESTATES/WIRSBO) | Las Vegas, NV | Construction Defect | No claim filed; pre-litigation NRS 40 process. |

2529167

**Plan Exhibit A**

Backstop Commitment Agreement

*Execution Copy*

BACKSTOP COMMITMENT LETTER

As of November 4, 2011

CONFIDENTIAL

William Lyon Homes, Inc.
William Lyon Homes
4490 Von Karman Avenue
Newport Beach, California 92660

Attention: Matthew R. Zaist

You have advised Luxor Capital Partners, LP, Luxor Capital Partners Offshore Master Fund, LP, Luxor Spectrum, LLC, Luxor Spectrum Offshore Master Fund, LP, Luxor Wavefront, LP, OC 19 Master Fund L.P. – LCG, GAM Equity Six, Inc. and their affiliates (collectively, the "*Initial Backstop Party*" and a "*Backstop Party*" and, together with each assignee under *Section VIII* hereof, the "*Backstop Parties*") that William Lyon Homes, a Delaware corporation ("*DE Lyon*") and William Lyon Homes, Inc., a California Corporation ("*CA Lyon*") and their respective subsidiaries (collectively, "*you*" or the "*Company*") intend to effect a restructuring and reorganization of the Company (the "*Restructuring*") pursuant to a "pre-packaged" plan of reorganization under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in chapter 11 cases commenced by the Company in the Bankruptcy Court for the District of Delaware (the "*Chapter 11 Cases*").

The Restructuring will be consummated substantially on the terms set forth in the term sheet attached hereto as *Exhibit A* (the "*Term Sheet*"). Pursuant to the Restructuring, among other things, (a) CA Lyon will issue $75,000,000 in aggregate initial principal amount of 12% (8% cash interest) Senior Second Lien New Offered Securities due 2016 (the "*New Notes*") to holders of the Existing Notes (as defined below)), (b) DE Lyon will issue shares of new Class A Common Stock ("*Class A Common Shares*") initially representing 28.5% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan (as defined in the Term Sheet) or the Warrants (as defined below) to holders of the Existing Notes (together the issuance of New Notes described in (a) above, the "*Exchange*"), (c) DE Lyon will issue to certain holders of Existing Notes shares of new Class C Common Stock ("*Class C Common Shares*") and shares of new Convertible Preferred Stock ("*Preferred Shares*" and together with the Class C Common Shares, the "*New Offered Securities*"), convertible on a one-to-one basis into Class C Common Shares, collectively representing 51.5% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan or the Warrants and after giving effect to the payment of the Backstop Fee), for an aggregate cash purchase price of $60,000,000 ($10,000,000 million for the Class C Common

Shares, and $50,000,000 for the Preferred Shares), which will be offered in a private placement rights offering or a private placement to accredited investors (the "*Rights Offering*"), (d) in connection with the consummation of the Exchange and the Rights Offering and subject to all of the conditions set forth below, the existing equity of DE Lyon will be cancelled, and DE Lyon will issue to the holders of its existing equity, in exchange for a purchase price of $25,000,000 in cash, shares of Class B Common Stock ("*Class B Common Shares*"), initially representing 20.0% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan or the Warrants), (e) in consideration for intrinsic value, DE Lyon will issue to the holders of its existing equity warrants to purchase Class B Common Shares ("*Warrants*") representing an additional 9.1% of the capital stock of DE Lyon on a fully-diluted basis (but before giving effect to the Management Incentive Plan), at a strike price based on a $325,000,000 equity value of DE Lyon, and (f) after giving effect to the issuance of the Warrants, but before giving effect to the Management Incentive Plan, the Class A Common Shares will represent 25.9% of the capital stock of DE Lyon, the Class B Common Shares will represent 27.3% of the Capital Stock of DE Lyon, and the Class C Common Shares (assuming full conversion of the Preferred Shares and the payment of the Backstop Fee to the extent paid in the form of Class C Common Shares) will represent 46.8% of the capital stock of DE Lyon. For purposes of this Backstop Commitment Letter, "*Existing Notes*" shall mean the following notes issued by William Lyons Homes, Inc.: (a) the 7 5/8% Senior Notes due 2012 CUSIP #552075-AE-3, (b) the 10 3/4% Senior Notes due 2013 CUSIP #552075-AA-1, and (c) the 7 1/2% Senior Notes due 2014; and "Restructuring Support Agreement" shall means the Restructuring Support Agreement dated as of November 4, 2011 by and among the company and certain holders of Existing Notes.

This backstop commitment letter agreement (together with all exhibits and schedules hereto, the "*Backstop Commitment Letter*") will confirm the understanding and agreement among the Initial Backstop Party and the Company in connection with the Restructuring with respect to the backstop purchase of the proposed issuance of the New Offered Securities. In connection with the Restructuring, you have requested that the Initial Backstop Party commit to purchase up to $60,000,000 of the New Offered Securities as set forth in more detail in *Section I* below.

I.     The Commitment.

The Initial Backstop Party is pleased to confirm by this Backstop Commitment Letter its commitment (the "*Commitment*") to you to purchase or cause one or more of its affiliates to purchase for cash up to $60,000,000 in the aggregate of the New Offered Securities issued pursuant to the Restructuring as follows: the lesser of (1) $60,000,000 of New Offered Securities and (2) the amount of New Offered Securities that are offered pursuant to the Rights Offering in connection with the Restructuring and not otherwise purchased. The Commitment is subject to the terms and conditions set forth or referred to in this Backstop Commitment Letter.

II.    Conditions.

The commitments and agreements of the Backstop Parties described herein are subject to, and conditioned upon, (i) the negotiation, execution and delivery of definitive documentation with respect to the New Offered Securities, the Rights Offering and the

Restructuring reasonably satisfactory to the Initial Backstop Party, (ii) the absence of any event or occurrence which has resulted in (a) individually or in the aggregate, any material adverse change in the assets, liabilities, business, operations or condition (financial or otherwise) of the Company or its subsidiaries, taken as a whole (*provided, however*, that the Chapter 11 Cases and the events leading to the Chapter 11 Cases or resulting directly or indirectly therefrom shall not, in and of themselves, shall not be deemed to be an event or occurrence under this clause (a)), or (b) could reasonably be expected to result in a material adverse effect on the ability of the Company to complete the Restructuring in accordance with the milestones in the Restructuring Support Agreement; (iii) the accuracy and completeness of in all material respects of all representations that the Company and its respective affiliates make to the Backstop Parties in connection with this Backstop Commitment Letter and the transactions contemplated hereby; (iv) compliance by the Company in all material respects with the terms of this Commitment Letter and the Restructuring Support Agreement; (v) the payment of the Backstop Fee and other fees, costs and expenses hereunder or due in connection herewith on closing date of the Restructuring and the purchase of the New Offered Securities pursuant to the Commitment (the "*Closing Date*"); (vi) the approval by the bankruptcy court pursuant to an order, in form and substance reasonably satisfactory to the Backstop Parties, approving this Backstop Commitment Letter and providing for treatment as a Subordinated Administrative Expense Claim (as defined below) of the Backstop Fee (which shall be payable in cash to the Backstop Parties in the amount of $2,500,000 if the Backstop Parties do not backstop the Rights Offering under the circumstances described in *Section III* or the transactions contemplated by Term Sheet are otherwise not approved by the Bankruptcy Court and consummated by the Company) and reimbursement of expenses and indemnity provisions of the Backstop Party contemplated hereunder, within 20 business days of the commencement of the cases of the Company and its subsidiaries; (vii) the prior or concurrent satisfaction in all material respects of the conditions numbered 1, 2, 3, 5, 6, 7 (with respect to all material consents), 8, 9, 10 and 11 to the Restructuring identified in the Term Sheet beside the heading "*Conditions*"; and (viii) the concurrent consummation of the Restructuring in all material respects in accordance with the terms in the Term Sheet. "*Subordinated Administrative Expense Claim*" shall mean an administrative expense claim allowed pursuant to section 503(b) of the Bankruptcy Code (x) that is subordinated to, and only to, the indefeasible prior payment in full in cash of all Senior Claims (unless the holders of such Senior Claims otherwise consent to a different treatment or the holders of Senior Claims are paid in full and the holders of such subordinated administrative expense claims receive only equity securities in respect of such subordinated claims) and (y) with respect to which the holders of such subordinated administrative expense claims are deemed to consent to such treatment under section 1129(a)(9) of the Bankruptcy Code. "*Senior Claims*" shall mean allowed claims of the lenders and administrative agent under the Loan Agreement dated October 20, 2009, as amended, and under any orders of the bankruptcy court. The phrase "*in all material respects*" when used in the foregoing conditions to qualify a representation, warranty, condition or covenant already qualified by materiality or a term of substantially the same meaning shall be disregarded to the extent of such qualification.

III.    Backstop Fee.

   In consideration of the execution and delivery of this Backstop Commitment Letter by the Backstop Party, you agree to pay the to the Initial Backstop Party a nonrefundable commitment fee (collectively, (a) and (b), the "*Backstop Fee*") equal to either (a) if the New